IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NEXTMEDIA GROUP, INC., *et al.*, | § | Case No. 09-14463 (PJW) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | **Hearing Date: January 22, 2010 at 2:00 p.m. (EST)** |
| | § | **Objection Deadline: January 15, 2010 at 4:00 p.m. (EST)** |

## DEBTORS' APPLICATION FOR ORDER AUTHORIZING (I) THE RETENTION OF ALVAREZ & MARSAL SECURITIES, LLC AS FINANCIAL ADVISOR TO THE DEBTORS PURSUANT TO SECTIONS 327 AND 328(a) OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND (II) WAIVER OF THE REQUIREMENTS UNDER DEL. BANKR. R. 2016-2, EFFECTIVE AS OF THE PETITION DATE

NextMedia Group, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "Debtors" or the "Company"),[1] for their Application (the "Application") For Order Authorizing (i) the Retention of Alvarez & Marsal Securities, LLC ("A&M") as Financial Advisor to the Debtors Pursuant to Sections 327 and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (ii) Waiver of the Requirements under Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Effective as of the Petition Date, respectfully represent:

### JURISDICTION

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of their taxpayer identification numbers, are: NextMedia Group, Inc. ("NM Group") (0791), NextMedia Investors LLC ("NM Investors") (9403), NextMedia Operating, Inc. ("NM OpCo") (5397), NM Licensing LLC (5396), NextMedia Outdoor, Inc. (5398), NM Texas, Inc. (4229), NextMedia Northern Colorado, Inc. (8422), NextMedia Franchising, Inc. (9913) and NextMedia Outdoor, LLC (9700). The Debtors' corporate headquarters are located at 6312 S. Fiddler's Green Circle, #205E, Greenwood Village, Colorado 80111.

2.  Venue in this Court is proper pursuant to 28 U.SC. §§ 1408 and 1409.

**INTRODUCTION**

3.  On December 21, 2009 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their properties as debtors in possession. The Debtors' cases are being jointly administered pursuant to this Court's Order entered on December 22, 2009.

5.  No official committee, trustee or examiner has been appointed.

**BACKGROUND**

6.  The Debtors provide out-of-home media services through radio broadcasting and outdoor advertising.[2] As of the Petition Date, the Debtors operate an aggregate of thirty six (36) AM and FM radio stations in a total of seven (7) rated and unrated small, mid-size and suburban markets, including the Greenville-New Bern-Jacksonville, North Carolina area; the Saginaw-Bay City-Midland, Michigan area; Canton, Ohio; Myrtle Beach, South Carolina; San Jose, California; suburban Chicago; and suburban Dallas. In the majority of these markets, the Debtors own and operate clusters of radio stations and target diverse demographic groups through a broad range of programming formats, including rock, adult contemporary, oldies, sports/news/talk, and country. In each of the radio markets served, the Debtors also provide radio broadcast advertising services to local, regional and national advertising customers.

---

[2] NextMedia Investors LLC has no liabilities or operations. Its only asset is its equity interest in NextMedia Group, Inc. Thus, all references to the Debtors' operations and business do not include NextMedia Investors LLC. NM Texas, Inc., has no assets, liabilities or operations.

7. The Debtors' outdoor advertising business consists of approximately 5,200 display faces in the form of traditional outdoor advertising bulletins and posters affixed to billboard structures, bus stop shelters and building wall displays. While many of the Debtors' outdoor advertising displays are located on leased premises, in certain circumstances a Debtor either owns the premises on which its displays are located, or it relies upon easements to use the property. The Debtors' six (6) outdoor advertising markets consist of the following geographic areas: the surrounding areas of San Francisco, California; Myrtle Beach, South Carolina; Green Bay, Wisconsin; Northern Colorado (including the areas in and around Cheyenne, Wyoming, Western Kansas and Nebraska); and the States of Virginia and North Carolina.

8. The Debtors are headquartered in Greenwood Village, Colorado, and currently have just under 500 employees (part-time and full-time) in at least thirteen (13) markets across the United States.

9. Additional information concerning the Debtors, their capital and debt structure, and the events leading up to the commencement of these chapter 11 cases is contained in the Declaration of Eric W. Neumann In Support of Chapter 11 Petitions and First Day Motions (the "Neumann Declaration"), filed on the Petition Date.

## RELIEF REQUESTED

10. By this Application, and effective as of the Petition Date, the Debtors seek to retain A&M as their financial advisor, pursuant to sections 327 and 328(a) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, as more particularly described within the terms and conditions provided for in the engagement letter dated March 4, 2009 and incorporated and attached hereto as Exhibit "B" (the "Engagement Letter"). In addition, the Debtors seek waiver of the time keeping requirements set forth in Local Rule 2016-2 (c) and (d).

## BASIS FOR RELIEF

11. Pursuant to sections 327 and 328 of the Bankruptcy Code, a trustee, debtor in possession, or committee appointed under section 1102 of the Bankruptcy Code may employ one or more professionals. Specifically, section 327(a) of the Bankruptcy Code provides that:

> The [Debtors] with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are "disinterested persons" to represent or assist the [Debtors] in carrying out the [Debtors'] duties.

11. U.S.C. § 327(a).

12. Section 101(14) of the Bankruptcy Code provides that a "disinterested person":

   i. is not a creditor, an equity security holder, or an insider;

   ii. is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

   iii. does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

13. A&M is not: (i) a creditor, an equity security holder or insider; (ii) a director, officer or employee; nor (iii) does it have an interest materially adverse to the estate or the Debtors. This assertion is further corroborated by the Declaration of George Varughese in Support of Application for Order Authorizing the Retention of Alvarez & Marsal Securities, LLC as Financial Advisor to the Debtors, Effective as of the Petition Date (the "Varughese Declaration") attached hereto as Exhibit "A." A&M satisfies the criteria set forth under section 101(14) of the Bankruptcy Code, and qualifies as a "disinterested person."

4

14. In addition to the above, Bankruptcy Rule 2014 requires that an application for retention include:

    i. [S]pecific facts showing the necessity for the employment,

    ii. the name of the [firm] to be employed,

    iii. the reasons for the selection, the professional services to be rendered,

    iv. any proposed arrangement for compensation, and,

    v. to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, and any other party in interest, their respective attorneys and accountants, the United States Trustee, or any other person employed in the office of the United States Trustee.

Fed. R. Bankr. 2014.

15. Criteria (ii) and (v) have been previously discussed above. Criteria: (i) necessity, (iii) A&M's qualifications/services provided and (iv) compensation are described below.

## NECESSITY

16. The fast-pace nature of this case necessitates that immediate attention and resources be focused on Debtors' restructuring matters. As such, and having worked with the Debtors for over nine (9) months, A&M has already established itself as a dedicated professional who understands the intricate and idiosyncratic characteristics of the Debtors' businesses.

17. Moreover, and as previously indicated, Debtors entered into an Engagement Letter with A&M prior to the filing of the chapter 11 cases. As a result of prepetition work performed on behalf of the Debtors, A&M acquired significant knowledge of the Debtors and their business and is now intimately familiar with the Debtors' financial affairs, debt structure, operations and related matters. Likewise, in providing prepetition services to the Debtors, A&M's professionals have worked closely with the Debtors' management and their other advisors. Accordingly, A&M has developed relevant experience and expertise regarding the

5

Debtors that will assist it in providing effective and efficient services to the Debtors in these chapter 11 cases.

18.     In light of the circumstances surrounding these cases, it is necessary to the Debtors' estates that the professionals working alongside the Debtors understand that these matters are extremely time-sensitive, and it would be detrimental to the Debtors' estates to waste the valuable time, knowledge and experience A&M has gained by providing prepetition services to the Debtors.

## QUALIFICATIONS

19.     A&M and its affiliates comprise a global professional services firm, specializing in providing turnaround management, restructuring and corporate advisory services.

20.     A&M provides a range of financial advisory services to clients involved in mergers and acquisitions, restructurings, debt and equity transactions and other complex situations requiring sophisticated financial expertise. *See, e.g., Dunmore Homes, Inc.*, Case No. 07-13533 (Bankr. S.D.N.Y.); *In re Global Power Equip. Group Inc.*, Case No. 06-11045 (Bankr. D. Del.); *In re TSLC I, Inc.*, Case No. 04-24134 (Bankr. M.D. Fla.); *In re Adventure Parks Group, LLC*, Case No. 06-70659 (Bankr. M.D. Ga.); *In re Wild Adventures Valdosa, LLC*, Case No. 06-70660 (Bankr. M.D. Ga.); *In re Cypress Gardens Adventure Park, LLC*, Case No. 06-70661 (Bankr. M.D. Ga.); *In re Comfort Co., Inc.*, Case No. 08-12305 (Bankr. D. Del.); *In re USI Senior Holdings, Inc.*, Case No. 08-11150 (Bankr. D. Del.), *In re Arclin US Holdings Inc.*, Case No. 09-12628 (Bankr. D. Del.).

21.     A&M has over twenty-five years experience, and is highly regarded in its field both on a national and international level. Furthermore, the services offered by A&M are essential to maximize the value of the Debtors' estate and to successfully reorganize the same.

22. Based on the foregoing, the Debtors believe that A&M is well qualified and able to advise the Debtors in a cost effective, efficient and timely manner.

## SCOPE OF SERVICES

23. The Debtors' prepetition engagement letter (the "Engagement Letter") with A&M is attached hereto as Exhibit "B", the terms of which shall govern the Debtors' retention of A&M except as otherwise explicitly set forth herein or in any order granting this Application.

24. The Debtor contemplates that A&M will provide the following services:

    i. assist with the formulation, evaluation, implementation of various options for a restructuring or reorganization of the Debtors, or their assets or businesses;

    ii. provide financial advisory services to the Debtors in connection with developing, and seeking approval for, a chapter 11 restructuring plan (the "Plan");

    iii. provide financial advisory services to the Debtors in connection with the structuring of any new securities to be issued under the Plan;

    iv. assist the Debtors in negotiations with creditors, shareholders and other appropriate parties in interest; and

    v. if necessary, participate in hearings before the Court with respect to matters upon which A&M has provided advice, including coordinating with the Debtors' counsel with respect to testimony in connection therewith.

    vi. such other and additional services as may be requested by the Debtors.

## COMPENSATION

25. Pursuant to section 328(a) of the Bankruptcy Code, and upon approval by the Court, A&M will be paid in accordance with terms of the Engagement Letter as reproduced below:

    i. <u>Monthly Fees</u>. In addition to the other fees provided for in the Engagement Letter, Debtors shall pay to A&M a monthly fee equal to $100,000 per month, which shall be paid in advance at the beginning of each month;

ii. <u>Restructuring Transaction Fee(s)</u>. Upon the earlier to occur of: (a) the closing of any out-of-court Restructuring Transaction (as defined in the Engagement Letter); and (b) the effective date of a confirmed plan of reorganization under chapter 11 of the Bankruptcy Code, which constitutes a Restructuring Transaction, A&M shall earn, and the Debtors shall promptly pay to A&M, a transaction fee of $1,250,000;

iii. <u>Simple Forbearance Transaction Fee(s)</u>. The Debtors and A&M will negotiate a success fee in good faith, which will be payable at close of any Simple Forbearance (as defined in the Engagement Letter) transaction(s) or termination of the Engagement Letter, whichever is earlier. All Simple Forbearance transaction fees will be 100 percent credited towards the Restructuring Transaction fee(s) under subsection (ii) *supra*.

26. Notwithstanding the foregoing, the Debtors understand that it is not the general practice of the investment banking firms to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis or maintain time on a "project category basis." The Debtors are informed that if A&M was required to keep detailed time entries or keep time records on a "project category" basis as required by the rules of this Court, it would be unduly burdensome and time consuming to A&M. Thus, given that the nature of A&M Fee Structure is not based upon the amount of time spent providing financial advisory services, the Debtors and A&M request that the local rules of this Court be modified with respect to A&M as to allow A&M to submit its billing records to the court in a summary format which sets forth only a general description of the services rendered by A&M.

27. Given the numerous issues that A&M may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth herein are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

28. A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, third party duplications, messenger and telephone charges. All fees and expenses due to A&M will be billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules and local rules of this Court.

29. Section 328(a) of the Bankruptcy Code states:

> The Debtor, with the courts' approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on a hourly basis on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a).

30. Section 328(a) of the Bankruptcy Code permits the Court to approve the compensation arrangement outlined herein and further described in the Engagement Letter.

31. The compensation structure reflects A&M's restructuring expertise, and knowledge of capital markets, financial skills and other capabilities, some or all of which may be required during the Debtors' chapter 11 cases. The Debtors further believe that the level and scope of potential services required of A&M are fully reasonable considering the complexity and anticipated length of this case.

32. Notwithstanding the approval of the terms of compensation laid out in the Engagement Letter, all of A&M's fees shall be subject to Court approval, pursuant to sections 330 and 331 of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code, however, provides that the Court may not reconfigure the parties' agreed terms of compensation unless "such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).

33. Accordingly, upon approval of this Application, the Court should uphold the compensation structure set forth in the Engagement Letter.

## INDEMNIFICATION PROVISIONS

34. Further, if the Application is granted, the Debtors will, as further described in the Engagement Letter, indemnify and hold A&M harmless against liabilities arising out of or in connection with its retention by the Debtors, except to the extent any such liability for losses, claims, damages, liabilities or costs to the extent that such loss, claim, damage, liability or cost is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted from A&M's or other indemnified party's gross negligence or willful misconduct in the performance of its duties under the Engagement Letter.

35. As a material part of the consideration for which the A&M professionals have agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions in paragraph 11 of the Engagement Letter. Notwithstanding the foregoing, the Debtors and A&M have agreed to modify such provisions as follows, during the pendency of these Chapter 11 cases as follows:

    (a) A&M shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court;

    (b) The Debtors shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from A&M's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual

10

dispute in which the Debtors allege the breach of A&M contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&M's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which A&M should not receive indemnity, contribution or reimbursement under the terms of the Agreement as modified by this Order; and

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, A&M believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Application), including without limitation the advancement of defense costs, A&M must file an application therefor in this Court, and the Debtors may not pay any such amounts to A&M before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by A&M for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to

11

indemnify A&M. All parties in interest shall retain the right to object to any demand by A&M for indemnification, contribution or reimbursement.

36. The Debtors respectfully submit that such indemnification provisions contained in Schedule A of the Engagement Letter are fair and reasonable and should be upheld. *In re Joan & David Halpern, Inc.*, 248 B.R. 43, 45-47 (Bankr. S.D.N.Y. 2000), *aff'd*, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000) (finding that the Bankruptcy Code does not expressly permit or forbid an indemnity agreement; however, the common law does not allow fiduciaries to be indemnified for gross negligence, bad faith, or reckless misconduct) *See, e.g., In re FLY, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. 2005) (order authorizing retention of Miller Buckfire on substantially the same terms); *In re Foamex Int'l Inc.*, Case No. 05-12685 (PJW) (Bankr. D. Del. 2005) (same); *In re Oakwood Homes Corp.*, Case No. 02-13396 (PJW) (Bankr. D. Del. 2002) (same); *In re United Artists Theatre Co.*, Case No. 00-3514 (SLR) (Bankr. D. Del. 2000) (order authorizing indemnification of Houlihan Lokey by debtors).

37. The indemnification provisions in this matter are also similar to other indemnification provisions that have been approved by bankruptcy courts elsewhere. *See, e.g., In re Comdisco, Inc.*, Case No. 01-24795 (BWB) (Bankr. N.D. Ill. 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors).

## NOTICE

38. Notice of this Motion has been provided to the office of the United States Trustee for the District of Delaware, the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, counsel to the agents under the Debtors' prepetition credit facilities, counsel to the Second Lien Lead Investors (as defined in the Neumann Declaration),

and other parties requesting notice. The Debtors respectfully submit that no other or further notice need be provided.

## NO PRIOR REQUEST

39. No prior request for the relief requested herein has been made to this Court or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order (i) approving the retention and employment of A&M, effective as of the Petition Date, as financial advisor to the Debtors; (ii) approving the terms of employment set forth in the Engagement Letter, pursuant to the provisions of section 327(a) of Bankruptcy Code and Bankruptcy Rule 2014; (iii) approving the compensation of A&M at the expense of the Debtors' estate on the terms set forth in the Engagement Letter, pursuant to the provisions of section 328(a) of Bankruptcy Code; and (iv) granting such other and further relief as may be just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Respectfully submitted this 23rd day of December, 2009.

                              **NEXTMEDIA GROUP, INC. AND ITS RELATED ENTITIES, DEBTORS AND DEBTORS IN POSSESSION**

                              Eric W. Neumann
                              Chief Financial Officer