# EXHIBIT B

**Engagement Letter**



600 Lexington Avenue, 6th Floor
New York, NY 10022
Phone: (212) 759-4433
Fax: (212) 759-5532
www.alvarezandmarsal.com

March 4, 2009

**Personal and Confidential**

Mr. Eric Neumann
Chief Financial Officer
NextMedia Group, Inc.
6312 S. Fiddler's Green Circle, #205E
Greenwood Village, CO 80111

Dear Mr. Neumann:

This letter agreement (the "Agreement") confirms our understanding of the terms and conditions under which NextMedia Group, Inc. (the "Company") shall engage Alvarez & Marsal Securities, LLC ("A&M") to act as its exclusive financial advisor with respect to evaluating and pursuing a potential Restructuring Transaction (as defined below), effective as of the date indicated above (the "Effective Date"). For purposes hereof, the term "Company" shall include affiliates of the Company and any entity that may be formed by the Company or its affiliates to invest in or consummate a Restructuring Transaction and shall include any successor or assignee of all or a portion of the assets and or businesses of the Company whether pursuant to a Plan (as defined below) or otherwise.

1. Description of Services

As part of our engagement, we will, if appropriate and requested, perform the following financial advisory and/or investment banking services:

i. assist with the formulation, evaluation, implementation of various options for a restructuring or reorganization of the Company, or its assets or businesses;

ii. provide financial advisory services to the Company in connection with developing, and seeking approval for, a Restructuring plan (a "Plan"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code");

iii. provide financial advisory services to Company in connection with the structuring of any new securities to be issued under the Plan;

iv. assist the Company in negotiations with creditors, shareholders and other appropriate parties-in-interest; and

v. if necessary, participate in hearings before the bankruptcy court with respect to matters upon which A&M has provided advice, including coordinating with the Company's counsel with respect to testimony in connection therewith.

For the purposes of this Agreement, a "Restructuring Transaction" shall be defined as any single transaction or series of transactions that effectuates any formal modification, amendment to, or change in, any of the Company's indebtedness to its revolving, first and second lien lenders, including interest rate agreements and accrued and/or accreted interest thereon, which are outstanding as of the Effective Date ("Indebtedness"), that is achieved without limitation, through a solicitation of consents from the holders of Indebtedness; a material change in interest rates,

NextMedia Group, Inc.
March 4, 2009
Page 2

settlement, compromise or forgiveness of Indebtedness; conversion of Indebtedness; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or any combination of the foregoing transactions. Each of the foregoing shall include, without limitation, any transaction in which requisite consents to a reorganization or restructuring are obtained pursuant to a tender offer, exchange offer, consent solicitation or other process, or a confirmed plan of reorganization under the United States Bankruptcy Code ("Confirmed Plan of Reorganization"). Notwithstanding the above, a forbearance or waiver ("Simple Forbearance") will not be considered a Restructuring Transaction.

The Company agrees that neither it, its management, controlling shareholders or affiliates will initiate any discussions regarding a Restructuring Transaction during the term of this Agreement, except through A&M. Furthermore, the Company agrees to promptly inform A&M of any inquiry it receives regarding a Restructuring Transaction.

The Company understands that the services to be rendered by A&M may include the preparation of projections and other forward-looking statements regarding the Company and / or its businesses, subsidiaries or affiliates, and numerous factors can affect the actual results of the Company and / or its businesses, subsidiaries or affiliates, which may materially and adversely differ from those projections.

The Company acknowledges that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, PCAOB, SEC or other state or national professional or regulatory body.

A&M makes no representation or guarantee that an appropriate Restructuring Transaction can be formulated, that any Restructuring Transaction in general or any transaction in particular is the best course of action for the Company or, if formulated, that the execution of any proposed Restructuring Transaction will, if required, be accepted or approved by the Board of Directors (including any special committee of the Board of Directors) or the Company's stockholders and other constituents. Further A&M assumes no responsibility for the selection and approval of any strategic alternative presented to the Company or the Company's Board of Directors (including any special committee of the Board of Directors), which determination shall rest with the Company and the Board.

George Varughese of A&M will be responsible for the overall engagement with the Company. He will be assisted by other A&M personnel, as appropriate.

In connection with A&M's engagement, the Company will furnish A&M with all information concerning the Company which A&M reasonably deems appropriate and will provide A&M with access to the Company's officers, directors, employees, accountants, counsel and other representatives (collectively, the "Representatives"), it being understood that A&M will rely solely upon such information supplied by the Company and its Representatives without assuming any responsibility for independent investigation or verification thereof. The Company represents and warrants that any financial projections provided to A&M have been, or will be, prepared on bases reflecting the best currently available estimates and judgments of the future financial results and condition of the Company. The Company will, in writing, promptly notify A&M of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to A&M or any interested party.

It is understood and agreed that A&M's services hereunder will not include providing any tax advice or developing any tax strategies for the Company. It is further understood and agreed that A&M's services hereunder will not include the preparation of a due diligence report, presentation or otherwise for the Company. If you should request additional services not otherwise contemplated by this letter agreement, the Company and A&M will enter into an additional letter

2


ALVAREZ & MARSAL

NextMedia Group, Inc.
March 4, 2009
Page 3

agreement which will set forth the nature and scope of the services, appropriate compensation and other customary matters, as mutually agreed upon by the Company.

If during the period of A&M's engagement hereunder, the Company decides to pursue a sale or financing transaction(s) unrelated to the transactions contemplated herein, then A&M will have the right of first refusal to act as the Company's financial advisor pursuant to separate agreement to be mutually agreed upon by A&M and the Company. The transaction fee(s) for sale or financing transaction(s) will be negotiated in good faith between A&M and the Company.

2. Compensation

As compensation for our services hereunder, the Company agrees to pay A&M as follows:

    a) Monthly Fees. In addition to the other fees provided for herein, A&M will receive a non-refundable cash fee of $100,000 per month (the "Monthly Fee"). Monthly Fees will be payable in advance at the beginning of each month. Each Monthly Fee shall be earned upon A&M's receipt thereof.

    b) Restructuring Transaction Fee(s). In addition to the other fees provided for herein, upon the earlier to occur of: (a) the closing of any out-of-court Restructuring Transaction(s); or (b) the effective date of a Confirmed Plan of Reorganization under Chapter 11 of the Bankruptcy Code, which constitutes a Restructuring Transaction, A&M shall earn, and the Company shall immediately pay to A&M, a transaction fee of $1,250,000 ("Restructuring Transaction Fee").

    c) Simple Forbearance Transaction Fee(s). In the case of a Simple Forbearance or series of Simple Forbearances, the Company and A&M will negotiate a success fee in good faith, which will be payable at close of the Simple Forbearance transaction(s) or termination of this Agreement, whichever is earlier. All Simple Forbearance Transaction Fee(s) will be 100 percent credited towards the Restructuring Transaction Fee(s) under paragraph 2(b) above.

3. Term

The Agreement may be terminated at any point by either party without cause by giving 30 days' written notice to the other party. This Agreement shall have an initial term of one (1) month and thereafter, shall be automatically extended on a monthly basis. In the event of any such termination, any fees and expenses due to A&M shall be remitted to A&M promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination).

The Company may immediately terminate A&M's services hereunder for Cause (as defined below) by giving written notice to A&M. For purposes of this agreement, "Cause" shall mean a breach by A&M of any of its material obligations hereunder not cured within 5 days after the Company has given written notice of such breach to A&M describing in reasonable detail the nature of the alleged breach.

A&M shall be entitled to immediately terminate its services hereunder for Good Reason. For purposes of this agreement, termination for "Good Reason" shall mean A&M's resignation caused by a breach by the Company of any of its material obligations under this agreement that is not cured within 5 days after A&M has given written notice of such breach to the Company describing in reasonable detail the nature of the alleged breach.


ALVAREZ & MARSAL

NextMedia Group, Inc.
March 4, 2009
Page 4

If, within eighteen (18) months of the expiration of this Agreement, or the termination of this Agreement for any reason other than A&M's resignation, the Company consummates, or enters into an agreement in principle to engage in, a Restructuring Transaction, financing transaction or sale transaction(s), which subsequently closes at any time, with any party, or any affiliate, employee, investor in such party, A&M shall be entitled to receive its Restructuring Transaction Fee(s) upon the consummation of such Restructuring Transaction and a fee for the sale or financing transaction(s) as specified in Section 1 upon the consummation of the sale or financing transaction(s), as if no expiration or termination had occurred.

No expiration or termination of this Agreement shall affect (a) the Company's indemnification, reimbursement, contribution or other obligations as set forth in this Agreement, (b) A&M's right to receive, and the Company's obligation to pay, any and all fees and expenses due, whether or not any Restructuring Transaction is consummated prior to or subsequent to the effective date of termination of this Agreement.

4. Expenses

In addition to the fees described above, and regardless of whether or not any transaction contemplated by this Agreement shall be proposed or consummated, the Company agrees to promptly reimburse A&M, on a monthly basis, for all out-of-pocket expenses reasonably incurred by A&M in connection with the matters contemplated by this Agreement, including, without limitation, reasonable fees of counsel in connection with the negotiation, implementation and enforcement of this Agreement. All fees and expenses will be payable within ten days of receipt of the bill therefore.

5. Conflicts

A&M is not currently aware of any relationship that would create a conflict of interest with Company or those parties-in-interest of which you have made us aware, but as you are aware, A&M's affiliate has been engaged to provide financial analyses and other services to Andrews Kurth, LLP as Company's defense counsel in connection with a shareholder litigation action against the Company. This relationship does not preclude our ability to undertake this engagement. Because A&M is a consulting firm that serves client on a national basis in numerous cases, both in and out of court, it is possible that A&M may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company.

6. Bankruptcy Court Approval

In the event that the Company is, or becomes, a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (i) this Agreement, including the attached indemnification, and (ii) A&M's retention by the Company under the terms of this Agreement and subject to the standard of review of Section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall supply A&M with a draft of such application and any proposed order authorizing A&M's retention sufficiently in advance of the filing of such application and proposed order to enable A&M and its counsel to review and comment thereon. A&M shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless A&M's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court



NextMedia Group, Inc.
March 4, 2009
Page 5

no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to A&M in all respects. A&M acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, A&M's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders provided however, that A&M shall not be required to maintain time records and, provided further, that A&M shall not be required to maintain receipts for expenses in amounts less than $75. In the event that the Company becomes a debtor under the Bankruptcy Code and A&M's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of A&M hereunder as promptly as possible in accordance with the terms of this Agreement, the order of the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with A&M to promptly file any and all necessary applications regarding such fees and expenses wit the Bankruptcy Court. If the order authorizing the employment of A&M is not obtained, or is later reversed or set aside for any reason, A&M may terminate this Agreement, and the Company shall reimburse A&M for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders.

With respect to A&M's retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that A&M's restructuring expertise, as well as its capital markets knowledge, financial skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of A&M's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of A&M's services hereunder could not be measured merely by reference to the number of hours expended by A&M professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of A&M and its professionals hereunder over the term of the engagement, and in light of the fact that such commitment may foreclose other opportunities for A&M and that actual time and commitment required of A&M and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for A&M. In addition, given the numerous issues which A&M may be required to address in the performance of its services hereunder, A&M's commitment to the variable level of time necessary to address all such issues as they arise, and the market prices for A&M's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including Monthly Fee and the various Transaction Fees) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

7. Relationship of the Parties

The parties intend that an independent contractor relationship will be created by this Agreement in order to provide the services described above to the Company. Neither A&M nor any of its personnel or subcontractors is acting as a fiduciary of the Company, the security holders or creditors of the Company or any other persons in connection with this engagement. Furthermore, neither A&M nor any of its personnel or subcontractors is to be considered an employee of the Company and the personnel and subcontractors of A&M are not entitled to any of the benefits that the Company provides for the Company's employees.

8. Other Services

In the event that A&M is requested by the Company to perform any financial advisory or investment banking services outside the scope of this Agreement, fees for such services shall be mutually agreed upon by A&M and the Company, in writing, in advance, and shall be in addition


ALVAREZ & MARSAL

NextMedia Group, Inc.
March 4, 2009
Page 6

to the fees and expenses described above. Notwithstanding the foregoing, if A&M is required to render services directly or indirectly relating to the subject matter of this Agreement, the Company shall pay A&M's then-current hourly rates for the A&M professionals involved for the time expended in rendering such services, including, but not limited to, time for meetings, conferences, preparation and travel, and all related reasonable out-of-pocket costs and expenses, including without limitation, the reasonable legal fees and expenses of A&M's legal counsel in connection therewith.

9. No Third Party Beneficiary

The Company acknowledges that all advice (written or oral) given by A&M to the Company in connection with this engagement is intended solely for the benefit and use of the Company in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

10. Confidentiality/Non-Solicitation

A&M shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

The Company shall not solicit, recruit or hire any employees of A&M from the date of this agreement and continuing for a period of two years subsequent to the termination of this engagement. Should the Company extend offers of employment to any A&M employee and should such an offer be accepted, A&M will be entitled to a fee from the Company based upon such individual's hourly rates multiplied by an assumed annual billing of 2,000 hours. This fee would be payable at the time of the individual's acceptance of employment from the Company.

11. Indemnification

The Company agrees to provide indemnification, contribution, and reimbursement to A&M in accordance with, and the Company further agree to be bound by the provisions set forth in, Schedule A attached hereto, which Schedule A is incorporated herein and made a part hereof. Termination of this engagement shall not affect these indemnification provisions, which shall remain in full force and effect.


ALVAREZ & MARSAL

NextMedia Group, Inc.
March 4, 2009
Page 7

12. Miscellaneous

No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement, and any claim related directly or indirectly to this agreement, shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements executed and to be fully performed therein without regard to principles of conflicts of laws that would defer to the laws of another jurisdiction. The parties hereby irrevocably and unconditionally submit (to the extent permitted by law) to the exclusive jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York for any legal action or proceeding arising out of this Agreement, and agree to bring (to the extent permitted by law) any such action or proceeding in such courts. Each of the parties hereby irrevocably consents to service of process in any such action or proceeding by certified or registered mail at the address for such party set forth above. The parties waive all right to trial by jury in any action or proceeding (whether based upon contract, tort or otherwise) related to or arising out of this Agreement. This Agreement may not be assigned nor may the obligations of a party hereunder be delegated without the prior written consent of the other party hereto. The obligations of this Agreement shall be binding upon and shall only inure to the benefit of the parties hereto, the Indemnified Parties (as defined in Schedule A attached hereto) and any of their successors, permitted assigns, heirs and personal representatives.

The Company acknowledges that A&M may, at its option and expense, place announcements and advertisements or otherwise publicize its services to the Company hereunder (which may include the reproduction of the Company's corporate logo). A&M will provide the Company a draft of any contemplated announcement prior to its publication and make reasonable modifications to such announcement as requested by the Company. Furthermore, if requested by A&M, the Company shall include a mutually acceptable reference to A&M in any press release or other public announcement made by the Company regarding the matters described in this letter.

The invalidity or unenforceability of any provision in this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

The Company agrees that it will be solely responsible for ensuring that any Restructuring Transaction complies with applicable law. The Company understands that A&M is not undertaking to provide any legal, regulatory, accounting, insurance, tax or similar professional advice.

This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against A&M because this Agreement was drafted by A&M, and the parties waive any statute or rule of law to such effect.

The Company has the requisite power and authority to enter into this Agreement and the transactions contemplated hereby. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties relating to the subject matter hereof.

A&M is delighted to accept this engagement and looks forward to working with you on this assignment. If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge


ALVAREZ & MARSAL

NextMedia Group, Inc.
March 4, 2009
Page 8

your agreement with its terms and return an executed copy of this agreement, whereupon, after execution by A&M, it shall become a binding agreement between the parties hereto. A telecopy of a signed original of this Agreement shall be sufficient to bind the parties whose signatures appear hereon.

Very truly yours,

ALVAREZ & MARSAL SECURITIES, LLC

By: _____
Name: George Varughese
Title: Managing Director


Accepted and agreed to as of the date first written above:

NEXTMEDIA GROUP, INC.

By: _____
Name: Eric Neumann
Title: Chief Financial Officer

8

ALVAREZ & MARSAL

NextMedia Group, Inc.
March 4, 2009
Page 9

## Schedule A

This Schedule is made part of an agreement dated March 4, 2009 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") by and between Alvarez & Marsal Securities, LLC ("A&M") and NextMedia Group, Inc. (collectively, the "Company") for services to be rendered by A&M to the Company.

A. The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses (collectively, "Losses"), including, without limitation, the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any pending or threatened claim, investigation, action, suit or proceeding (collectively "Claims"), whether or not in connection with actual or threatened litigation, as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) A&M's engagement under the Agreement; provided, however, such indemnity shall not apply to any such Loss to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent of any such liability for losses, claims, damages, liabilities or expenses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct. The Company further agrees that it will not, without the prior consent of an Indemnified Party (which consent shall not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened Claim in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such Claim) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all Losses arising out of such Claim.

B. These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C. If any Claim is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company promptly after becoming aware thereof; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such Claim. The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in


ALVAREZ & MARSAL

NextMedia Group, Inc.
March 4, 2009
Page 10

defending, participating in, or settling any Claim in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such Claim or otherwise. Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined in a final judgment by a court of competent jurisdiction (not subject to further appeal), that such Indemnified Party is not entitled to be indemnified therefor. If any such Claim in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, at no cost to such Indemnified Party, provided such counsel is reasonably satisfactory to such Indemnified Party; provided, further, however, that if such counsel or counsel to the Indemnified Party shall determine that, due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company, such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use a single separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.  In order to provide for just and equitable contribution if a claim for indemnification pursuant to these Indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the Losses giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all Losses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.  Termination of the Agreement shall not affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

F.  The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

ALVAREZ & MARSAL SECURITIES, LLC

By: _____
Name: George Varughese
Title: Managing Director

ALVAREZ & MARSAL

NextMedia Group, Inc.
March 4, 2009
Page 11

Accepted and agreed to as of the date first written above:

NEXTMEDIA GROUP, INC.

By: *[signature]* _____

Name: Eric Neumann
Title: Chief Financial Officer

ALVAREZ & MARSAL