

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NEXTMEDIA GROUP, INC., *et al.*,[1] | § | Case No. 09-14463 (PJW) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |
| | § | **Re: Docket No. 11** |

## FINAL ORDER AUTHORIZING AND APPROVING (1) DEBTOR IN POSSESSION FINANCING PURSUANT TO SECTIONS 364(C) AND 364(D) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(c), (2) THE USE OF SECOND LIEN LENDERS' CASH COLLATERAL AND THE GRANT OF ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001(b) AND (3) MODIFICATION OF THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

Upon the motion, dated December 21, 2009 (the "Motion"), of NextMedia Operating, Inc. (the "Borrower"), NextMedia Group, Inc. ("NM Group") and the Borrower's subsidiaries (together with NM Group, the "Guarantors"), each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned cases (the "Cases") commenced on December 21, 2009 (the "Petition Date") for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking:

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of their taxpayer identification numbers, are: NextMedia Group, Inc. ("NM Group") (0791), NextMedia Investors LLC ("NM Investors") (9403), NextMedia Operating, Inc. ("NM OpCo") (5397), NM Licensing LLC (5396), NextMedia Outdoor, Inc. (5398), NM Texas, Inc. (4229), NextMedia Northern Colorado, Inc. (8422), NextMedia Franchising, Inc. (9913) and NextMedia Outdoor, LLC (9700). The Debtors' corporate headquarters are located at 6312 S. Fiddler's Green Circle, #205E, Greenwood Village, Colorado 80111.

(I)     authorization for (a) the Borrower to obtain up to $20,000,000 in aggregate principal amount of postpetition financing (the "DIP Loans") from funds and affiliates of funds managed by Strategic Value Partners LLC or its affiliates and funds and affiliates of funds managed by Angelo, Gordon & Co., L.P. or its affiliates (such funds, the "Lead DIP Lenders", and together with any other financial institution or entity acceptable to the Lead DIP Lenders, the "DIP Lenders") on the terms and conditions set forth in the interim order with respect thereto entered by this Court on December 22, 2009 (the "Interim Order"), the Final Order (as defined below), the term sheet attached to the Interim Order as Exhibit A (together with the DIP Commitment Letter (as defined below), and as may be amended, supplemented or otherwise modified from time to time, the "DIP Term Sheet"), the DIP Credit Agreement and the other DIP Documents (each as defined below) and (b) the Guarantors to guarantee on a secured basis the Borrower's obligations in respect of the DIP Loans;

(II)    authorization for the Debtors to execute and deliver final documentation consistent with the DIP Term Sheet and to perform such other and further acts as may be necessary or appropriate in connection therewith, which final documents shall include (a) a Credit and Guaranty Agreement among the Borrower, the Guarantors and the DIP Lenders, substantially in the form filed with the Court on January 15, 2010 (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement") and (b) other agreements, documents and instruments delivered or executed in connection with the DIP Credit Agreement, all of which shall be in

2

form and substance acceptable to the Borrower, the Guarantors and the Lead DIP Lenders, shall incorporate the terms and conditions of the DIP Term Sheet (such documentation, as may be amended, supplemented or otherwise modified from time to time, together with the DIP Term Sheet and the DIP Credit Agreement, the "DIP Documents");

(III)   authorization for the Debtors to (a) use the Cash Collateral (as defined below) pursuant to section 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined below) and (b) provide adequate protection to the lenders (the "Second Lien Lenders") under the Second Lien Credit and Guaranty Agreement, dated as of November 15, 2005 (as amended, supplemented or otherwise modified as of the Petition Date, the "Second Lien Credit Agreement"; and together with any other security, pledge or guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified as of the Petition Date, the "Second Lien Documents"), among the Borrower, the Guarantors, the Second Lien Lenders and Nexbank, SSB, as administrative agent and collateral agent for the Second Lien Lenders (in such capacities, the "Second Lien Agent");

(IV)   authorization for the Lead DIP Lenders, on behalf of the DIP Lenders, to exercise remedies upon the occurrence and continuance of an Event of Default (as defined below), including without limitation, upon the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code in respect of the Debtors' assets having a value in excess of $100,000;

3

(V)  authorization to grant liens to the DIP Lenders on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

(VI)  the waiver by the Debtors of any right to seek to surcharge against the Prepetition Collateral or the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code;

(VII)  to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the Interim Order (a) authorizing the Borrower, on an interim basis, to borrow under the DIP Term Sheet up to $5,000,000 of the DIP Loans to be used for working capital and general corporate purposes of the Debtors in accordance with Debtors' budget attached to the Interim Order as Exhibit B (including the variances thereto permitted under the DIP Documents and as such budget may be supplemented, modified or replaced in accordance with the terms of the DIP Documents, the "Budget") and to authorize the Guarantors to guarantee on a secured basis the obligations of the Borrower with respect to the DIP Loans, (b) authorizing the Debtors to use the Cash Collateral and the other Prepetition Collateral and (c) granting adequate protection to the Second Lien Agent and the Second Lien Lenders; and

(VIII)  to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of this Final Order authorizing the Borrower, on a final basis, to borrow under the DIP Credit Agreement the

4

balance of the DIP Loans and to continue to use the Cash Collateral and the other Prepetition Collateral and to authorize the Guarantors to guarantee, on a secured basis, the obligations of the Borrower with respect to the DIP Loans, and authorizing and approving, on a final basis, the relief requested in the Motion.

The Interim Hearing having been held by this Court on December 22, 2009, and the Final Hearing having been held by this Court on January 22, 2010, and upon the record made by the Debtors at the Interim Hearing and the Final Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Jurisdiction*. This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice*. Notice of the Motion, the relief requested therein and the Final Hearing was served by the Debtors on their thirty largest unsecured creditors (on a consolidated basis), the Lead DIP Lenders, the First Lien Agent (as defined below), the Second Lien Agent and the United States Trustee for the District of Delaware (the "U.S. Trustee"). Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3. *Debtors' Stipulations*. Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 17 and 18 below) the Debtors admit, stipulate, and agree that:

(a)     as of the Petition Date, the Debtors were truly and justly indebted to the Second Lien Agent and the Second Lien Lenders, without defense, counterclaim or offset of any kind, in the aggregate amount of not less than $89.6 million (including accrued and unpaid interest) in respect of loans made by the Second Lien Lenders pursuant to the Second Lien Documents, plus any fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Second Lien Documents (collectively, the "Second Lien Obligations");

(b)     the liens and security interests granted by the Debtors to the Second Lien Agent, for the benefit of itself and the Second Lien Lenders, to secure the Second Lien Obligations are (i) valid, binding, perfected (except with respect to NM Texas, Inc.), enforceable, second priority liens on and security interests (subject to the First Lien Priority Liens (as defined in paragraph 19 below) and other permitted exceptions under the Second Lien Credit Agreement) in the personal and real property of such Debtors constituting "Collateral" under, and as defined in, the Second Lien Documents in respect of the Second Lien Obligations (together with the Cash Collateral, the "Prepetition Collateral"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) after giving effect to this Final Order, the Carve Out (as defined below) and the liens and security interests granted to secure the DIP Loans and the Adequate Protection Obligations (as defined below), (B) valid, perfected and unavoidable liens permitted under the Second Lien Documents to the extent such permitted liens are senior to the liens securing the Second Lien Obligations and (C) the First Lien Priority Liens;

(c)     (i) no portion of the Second Lien Obligations is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Debtors do not have, and hereby forever release, any claims,

6

counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the Second Lien Agent and the Second Lien Lenders, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors.

4.      *Findings Regarding The DIP Loans.*

(a)      Good cause has been shown for the entry of this Final Order.

(b)      The Debtors have the need to obtain the DIP Loans and to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes of the Debtors. The Debtors' access to the DIP Loans and their continued use of the Prepetition Collateral (including the Cash Collateral) is, therefore, necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.

(c)      The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting the priming DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below), in each case (x) on the terms and conditions set forth in this Final Order and the DIP Documents and (y) subject to the First Lien Priority Liens and the First Lien Superpriority Claims (as defined in paragraph 19 below).

(d)     The terms of the DIP Loans and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Final Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Borrower, the Guarantors, the Lead DIP Lenders, the Second Lien Agent and the Second Lien Lenders, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Loans, including without limitation, (i) all loans made to the Borrower as contemplated and authorized by the Interim Order and this Final Order and (ii) all other obligations of the Debtors under the DIP Documents and the Interim Order and this Final Order paid to any DIP Lenders, including, without limitation, any fees provided for in the DIP Commitment Letter (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

5.     *Authorization Of The DIP Loans And The DIP Documents.*

(a)     The Debtors are hereby authorized to enter into and perform under the DIP Documents, and the terms of the DIP Credit Agreement and the accompanying Pledge and Security Agreement are hereby approved.

(b)     Subject to entry of a final order providing for the Debtors' use of the First Lien Lenders' cash collateral on terms and conditions satisfactory to the Lead DIP Lenders, (i)

8

the Borrower is hereby authorized to borrow under the DIP Documents the remainder of the DIP Loans, up to an aggregate principal amount of $20,000,000 (inclusive of the DIP Loans made pursuant to the Interim Order), for working capital and other general corporate purposes of the Debtors, including without limitation, to pay interest, fees and expenses in connection with the DIP Loans, in accordance with the Budget and this Final Order and (ii) the Guarantors are hereby authorized to guarantee the obligations of the Borrower under the DIP Documents, in accordance with the terms of the DIP Documents without the need for approval of this Court, provided that the Debtors' use of proceeds from the DIP Loans shall only be in accordance with the DIP Credit Agreement, the Budget and this Final Order.

(c)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts (to the extent such acts were authorized by the Interim Order and have already occurred, such acts are hereby ratified) and to execute and deliver all instruments and documents that the Lead DIP Lenders determine to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents, including the DIP Credit Agreement;

(ii)     the execution, delivery and performance of the guarantees by the Guarantors of the obligations of the Borrower;

(iii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors and the Lead DIP Lenders may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and

under the DIP Documents (and any fees paid in connection therewith) that do not materially and adversely affect the Debtors or which do not (A) shorten the maturity of the DIP Loans, (B) increase the commitments under the DIP Credit Agreement or the rate of interest payable on the DIP Loans under the DIP Credit Agreement, or (C) modify any Event of Default to be materially more restrictive on the Debtors; provided, however, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee);

(iv)   the non-refundable payment to the DIP Lenders, as the case may be, of the fees set forth in the DIP Documents and referred to in the commitment letter, dated December 17, 2009, among NM Group, the Borrower and the Lead DIP Lenders (the "DIP Commitment Letter"); and

(v)   the performance of all other acts required under or in connection with the DIP Documents.

(d)   Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Final Order and the DIP Documents. No obligation, payment, transfer or grant of liens on and security by the Debtors under the DIP Documents or this Final Order shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.   *Superpriority Claims.*

10

(a)     Except to the extent expressly set forth in this Final Order in respect of the Carve Out and subject to the First Lien Superpriority Claims, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative claims (the "DIP Superpriority Claims") against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.  Except to the extent expressly set forth in this Final Order with respect to the fees, expenses and interest to be paid to the DIP Lenders pursuant hereto and the terms of the DIP Documents, the DIP Lenders shall not receive or retain any payments, property (other than the liens and security interests granted hereby) or other amounts in respect of the DIP Superpriority Claims unless and until all amounts owed under the First Lien Cash Collateral Order and the First Lien Credit Agreement (each as defined in paragraph 19 below; such amounts, the "First Lien Obligations") shall have been indefeasibly paid in full in cash.

(b)     For purposes hereof, the "Carve Out" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code (the "Section 1930 Fees") and (ii) after the occurrence and during the continuance of an Event of Default, the payment of accrued and unpaid professional fees and expenses incurred by the Debtors and allowed by this Court, in an aggregate amount not exceeding $750,000 (plus all unpaid professional fees and expenses

11

allowed by this Court that were incurred prior to the occurrence of such Event of Default), provided that (A) the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lenders, the Second Lien Lenders or the Second Lien Agent, (B) so long as no Event of Default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by this Court and payable under sections 330 and 331 of the Bankruptcy Code and (C) nothing in this Final Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.

7.     *DIP Liens.*  As security for the DIP Obligations, effective and perfected as of the date of the Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lenders of any property, the following security interests and liens are hereby granted to the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), in each case subject only to (i) the Carve Out and (ii) the First Lien Priority Liens (all such liens and security interests granted to the DIP Lenders pursuant to the Interim Order and this Final Order, the "DIP Liens"):

(a)     Senior Liens On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code and subject to applicable law and subject and subordinate to the First Lien Replacement Liens (as defined in paragraph 19 below), a valid, binding, continuing, enforceable, fully-perfected senior lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on or as of the Petition

12

Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property and the proceeds of all of the foregoing, provided that the Unencumbered Property shall not include the Avoidance Actions and any assets upon which a lien or security interest may not be lawfully granted, but Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions.

(b)     Liens Junior To Certain Existing Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code and subject and subordinate to the First Lien Prepetition Liens (as defined in paragraph 19 below), a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtors (other than the property described in paragraph 7(c), as to which the DIP Liens will be as described in such paragraph), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Lenders shall be junior to such valid, perfected and unavoidable liens.

(c)     Liens Priming Second Lien Lenders' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code and subject and subordinate to the First Lien Priority Liens, a valid,

13

binding, continuing, enforceable, fully-perfected, senior priming lien on, and security interest in, all Prepetition Collateral. The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Second Lien Agent and the Second Lien Lenders (including, without limitation, the Adequate Protection Liens (as defined in paragraph 13(a) below)), but shall be junior to any valid, perfected and unavoidable security interests in and liens on the Prepetition Collateral that were senior to the liens of the Second Lien Agent and the Second Lien Lenders as of the Petition Date, including as permitted by section 546(b) of the Bankruptcy Code.

(d)     <u>Liens Senior To Certain Other Liens</u>. Other than the First Lien Priority Liens, the DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

8.      *Remedies After Event of Default*. The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the Lead DIP Lenders, on behalf of the DIP Lenders, to exercise, five (5) business days following written notice to the Debtors and the Second Lien Agent after the occurrence of any of the events listed in section 8.1 of the DIP Credit Agreement or paragraph 16(b) of this Final Order (each an "Event of Default"; the five business days following written notice of such Event of Default, provided such Event of Default has not been cured or waived during such five business day period, the "<u>Termination Date</u>"), all rights and remedies provided for in this Final Order and the DIP Documents. Upon the Termination Date, (i) the DIP Obligations shall become immediately

14

due and payable and (ii) the Lead DIP Lenders, on behalf of the DIP Lenders, may exercise the rights and remedies available under the DIP Documents, this Final Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the DIP Collateral in order to collect the DIP Obligations. The actions described in clauses (i) and (ii) above may be taken without further order of or application to the Court as the Lead DIP Lenders shall, in their discretion, elect. Subject to prior payment of the First Lien Obligations, the payments or proceeds of the DIP Collateral shall be applied in accordance with the provisions of the DIP Loan Documents, and in no event shall the DIP Lenders be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Obligations or the DIP Collateral. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the DIP Lenders under this Final Order shall survive the Termination Date. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by the Debtors in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing. Any delay or failure to exercise rights and remedies under the DIP Documents or this Final Order shall not constitute a waiver of the DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Credit Agreement. Notwithstanding anything in this Final Order or the DIP Credit Agreement to the contrary, and notwithstanding the occurrence or continuation of an Event of Default or the Termination Date, upon receipt by the DIP Lenders of a borrowing request delivered by the Borrower in accordance with the terms and conditions set forth in the DIP Credit Agreement (such request to be made no later than five (5) business days after the Termination Date), the DIP Lenders shall make DIP Loans in an aggregate amount not to exceed $750,000 to fund the Carve-Out in full, provided

15

that to the extent any amount of the Carve-Out is not used for the payment of (i) accrued and unpaid professional fees and expenses incurred by the Debtors after the occurrence of an Event of Default and allowed by the Bankruptcy Court and (ii) Section 1930 Fees, such excess amounts shall be refunded to the DIP Lenders and applied towards repayment of the DIP Obligations in accordance with the terms of the DIP Credit Agreement; provided further that the DIP Lenders shall not be required to fund any amounts pursuant to the foregoing to the extent such funding would result in the aggregate principal amount outstanding under the DIP Credit Agreement to exceed $20 million.

9. *Limitation On Charging Expenses Against Collateral.* Except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Lead DIP Lenders or the Second Lien Agent, as the case may be, and no such consent shall be implied from any other action or inaction by the DIP Lenders, the Second Lien Agent or the Second Lien Lenders.

10. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Lenders or the Second Lien Agent on behalf of the Second Lien Lenders pursuant to the provisions of this Final Order or any subsequent order of this Court shall be received free and clear of any claim, charge, interest, assessment or other liability.

11. *The Cash Collateral.* To the extent any of the Debtors' cash constitutes, including without limitation (a) any cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any Second Lien Lender or (b) any cash proceeds of the

16

disposition of any Prepetition Collateral, such cash is cash collateral of the Second Lien Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

12.     *Use Of Prepetition Collateral (including Cash Collateral).*  The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date for working capital and general corporate purposes in accordance with the Budget and the terms and conditions of this Final Order, provided that, (a) the Second Lien Lenders and the Second Lien Agent are granted adequate protection as hereinafter set forth and (b) except on the terms of this Final Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

13.     *Adequate Protection.*  The Second Lien Agent and the Second Lien Lenders are entitled, pursuant to sections 361, 363(c)(2) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, the priming by the DIP Liens of the liens on the Prepetition Collateral for the benefit of the Second Lien Agent and the Second Lien Lenders, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations").  As adequate protection, the Second Lien Agent and the Second Lien Lenders are hereby granted the following:

(a)     Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, the Second Lien Agent (for itself and for the benefit of the Second Lien Lenders) is hereby granted (effective and perfected as of the date of the Interim Order and

17

without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the First Lien Priority Liens, (ii) the DIP Liens, and (iii) the Carve Out.

(b)     Section 507(b) Claim. The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve Out, (ii) the First Lien Superpriority Claims and (iii) the DIP Superpriority Claims. Except to the extent of the Adequate Protection Obligations, the Adequate Protection Liens and the fees and expenses set forth in the next succeeding subparagraph, the Second Lien Agent and the Second Lien Lenders shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the First Lien Obligations and the DIP Obligations shall have been indefeasibly paid in full in cash. In addition and notwithstanding anything to the contrary contained herein, the Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the Cases in the manner set forth in such plan if holders of more than 66 2/3% in amount and 50% in number of the Adequate Protection Obligations consent to such treatment, regardless of their status as 507(b) Claims.

(c)     Fees And Expenses. The Debtors shall pay to the Second Lien Agent and the Second Lien Lead Investors (as defined in the Motion) all reasonable fees and expenses in connection with these Cases, including without limitation, the prepetition and postpetition reasonable fees and disbursements of the Second Lien Agent and the Second Lien Lead Investors

DAL:755494.5

and their respective advisors (it being understood that the Second Lien Agent's advisors for purposes of this paragraph 13(c) are Broadpoint Capital, Inc., Dechert LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP (solely as FCC counsel), as well as one local counsel). None of the fees and expenses payable pursuant to this paragraph 13(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Debtors shall pay the fees and expenses provided for in this paragraph 13(c) promptly after receipt of invoices therefor, and the Debtors shall promptly provide copies of such invoices to the Office of the United States Trustee.

(d)     <u>Information</u>. The Debtors shall promptly provide to the Second Lien Agent any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Lenders.

14.     *Reservation of Rights of Second Lien Lenders.* Based upon the consent of the Second Lien Lenders, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Second Lien Agent and the Second Lien Lenders; <u>provided that</u> notwithstanding any other provision hereof, the grant of adequate protection to the Second Lien Agent and the Second Lien Lenders pursuant hereto is without prejudice to the right of the Second Lien Agent or the Second Lien Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection and without prejudice to the rights of the Debtors or any other party in interest to contest any such modification. Except as expressly provided herein, nothing contained in this Final Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Second Lien Agent or any

DAL:755494.5

Second Lien Lender including, without limitation, under the Second Lien Documents and the Intercreditor Agreement (as defined in the Second Lien Credit Agreement). The consent of the Second Lien Agent and the Second Lien Lenders to the priming of their liens on the Prepetition Collateral by the DIP Liens is limited to the DIP Obligations.

15. *Perfection Of DIP Liens And Adequate Protection Liens.*

(a) The Lead DIP Lenders and the Second Lien Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens and the Adequate Protection Liens granted to them hereunder. Whether or not the Lead DIP Lenders or the Second Lien Agent shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens and the Adequate Protection Liens, such DIP Liens and the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of the Interim Order.

(b) A copy of the Interim Order or this Final Order may, in the discretion of the Lead DIP Lenders or the Second Lien Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order or this Final Order for filing and recording.

(c) The Debtors shall execute and deliver to the Lead DIP Lenders and the Second Lien Agent, as the case may be, all such agreements, financing statements, instruments

20

and other documents as the Lead DIP Lenders or the Second Lien Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

16. *Preservation Of Rights Granted Under This Final Order.*

(a)     Other than the First Lien Superpriority Claims and the First Lien Priority Liens, no claim or lien having a priority senior to or *pari passu* with those granted by this Final Order to the DIP Lenders, the Second Lien Agent or the Second Lien Lenders, shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof) or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default hereunder and under the DIP Documents and a termination of the right to use the Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modification of this Final Order without the prior written consent of the Lead DIP Lenders and the Second Lien Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lenders or the Second Lien Agent or (ii) an order converting or dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (A) the DIP Superpriority Claims, the 507(b) Claims, the other administrative claims granted pursuant to this Final Order, the DIP Liens and the Adequate

21

Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and all Adequate Protection Obligations shall have been paid and satisfied in full (and that the DIP Superpriority Claims, the 507(b) Claims, such other administrative claims granted pursuant to this Final Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (B) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (A) above.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Lead DIP Lenders or the Second Lien Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Debtors to the DIP Lenders, the Second Lien Agent or the Second Lien Lenders, as the case may be, prior to the actual receipt of written notice by the DIP Lenders and the Second Lien Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the DIP Lenders, the Second Lien Agent and the Second Lien Lenders, shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, all DIP Obligations and all Adequate Protection Obligations.

(d)     Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the DIP Lenders, the Second Lien Agent and the Second Lien Lenders, granted by this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, (ii) the appointment of a chapter 11 trustee with plenary power in any of the Cases or (iii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the DIP Superpriority Claims, the Section 507(b) Claims, the other administrative Claims granted pursuant to this Final Order, and all other rights and remedies of the DIP Lenders, the Second Lien Agent and the Second Lien Lenders granted by this Final Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and all Adequate Protection Obligations are indefeasibly paid in full in cash.

17.     *Effect Of Stipulations On Third Parties*.  The stipulations and admissions contained in this Final Order, including without limitation, in paragraphs 3 and 11 of this Final Order, shall be binding solely upon the Debtors under all circumstances.  The stipulations and admissions contained in this Final Order, including without limitation, in paragraphs 3 and 11 of

this Final Order, shall be binding upon all other parties in interest in these chapter 11 cases, unless (a) any party-in-interest with standing to do so has filed an adversary proceeding or contested matter (subject to the terms of this Final Order) by no later than the date that is 75 days from the date of the entry of the Interim Order (*i.e.*, March 8, 2010), (A) challenging the validity, enforceability, priority or extent of the Second Lien Obligations or the liens on the Prepetition Collateral securing the Second Lien Obligations or (B) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Second Lien Agent or any of the Second Lien Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Second Lien Obligations or the Prepetition Collateral and (b) an order is entered and becomes final in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is timely filed in respect of the Second Lien Obligations, (x) the Second Lien Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the Second Lien Obligations shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(b), not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Second Lien Obligations, the Second Lien Agent and the Second Lien Lenders, as the case may be, and the liens on the Prepetition Collateral granted to secure the Second Lien Obligations shall not be subject to any other or further challenge by any party-in-interest, and such parties-in-interest shall be enjoined from seeking to exercise the rights of the

24

Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraphs 3 and 11 of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on all parties-in-interest, except as to any such findings and admissions that were successfully challenged in such adversary proceeding or contested matter.

18. *Limitation On Use Of DIP Loans And DIP Collateral.* The Debtors shall use the DIP Loans and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Final Order and the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no DIP Loans, no DIP Collateral, no Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Second Lien Documents or the liens or claims granted under this Final Order, the DIP Documents or the Second Lien Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Lenders, the Second Lien Agent or the Second Lien Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Lenders' or the Second Lien Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Second Lien Documents or this Final Order, (d) seek to modify any of the rights granted to the DIP Lenders, the Second Lien Agent or the Second Lien Lenders hereunder or under the DIP Documents or the Second Lien Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e)

DAL:755494.5

pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) permitted under the DIP Documents.

19.     *First Lien Lenders' Cash Collateral Order.*  The Debtors, certain financial institutions (the "First Lien Lenders") and Wilmington Trust FSB, as the administrative agent for the First Lien Lenders (the "First Lien Agent") are party to that first lien Credit and Guaranty Agreement, dated as of November 15, 2005 (as amended, modified or otherwise supplemented as of the Petition Date, the "First Lien Credit Agreement"), in respect of which the First Lien Agent, for the ratable benefit of the First Lien Lenders, was granted a first priority lien (the "First Lien Prepetition Liens") on substantially all of the Debtors' prepetition property.   Upon motion from the Debtors, this Court has concurrently entered the "Final Order Authorizing and Approving (a) the Use of First Lien Lenders' Cash Collateral and the Grant of Adequate Protection Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(B) and (b) Modification of the Automatic Stay Under Section 362 of the Bankruptcy Code" (the "First Lien Cash Collateral Order") authorizing the use of the First Lien Lenders' prepetition collateral, including cash collateral, and granting adequate protection to the First Lien Agent and the First Lien Lenders by, among other things, granting replacement liens (the "First Lien Replacement Liens," together with the First Lien Prepetition Liens, the "First Lien Priority Liens") and superpriority claims (the "First Lien Superpriority Claims") to the extent of any diminution in value of the First Lien Lenders' prepetition collateral.  Nothing in this Final Order shall be construed to (i) affect the prepetition or postpetition priority of or (ii) grant DIP Liens, Adequate Protection Liens, DIP Superpriority Claims or 507(b) Claims, and/or other liens or claims that prime or otherwise are senior to or *pari passu* with, the First Lien Priority Liens or the First Lien Superpriority Claims.  Nothing herein or in the DIP Documents shall impair or

26

modify any rights, claims or defenses granted to the First Lien Agent or First Lien Lenders under the First Lien Cash Collateral Order.

20. *Order Governs.* Except as specifically amended, supplemented or otherwise modified by this Final Order, all of the provisions of the Interim Order shall remain in full force and effect and hereby ratified by this Final Order. In the event of any inconsistency between the provisions of this Final Order, the Interim Order and the DIP Documents, the provisions of this Final Order shall govern.

21. *Binding Effect; Successors And Assigns.* The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent, the Second Lien Lenders, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Lenders, the Second Lien Agent, the Second Lien Lenders and the Debtors and their respective successors and assigns, provided that, except to the extent expressly set forth in this Final Order, the DIP Lenders, the Second Lien Agent and the Second Lien Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of any Debtor.

22. *Limitation Of Liability.* Subject to paragraph 17 hereof, nothing in this Final Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lenders, the Second Lien Agent or the Second Lien Lenders any

27

liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

23. *Effectiveness.* This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof as of the Petition Date, and there shall be no stay of execution of effectiveness of this Final Order.


Dated: January 2, 2010
       Wilmington, Delaware

                                   HONORABLE PETER J. WALSH
                                   UNITED STATES BANKRUPTCY JUDGE

28