# Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NEXTMEDIA GROUP, INC., *et al.*, | § | Case No. 09-14463 (PJW) |
| | § | |
| Debtors. | § | Jointly Administered |


# DEBTORS' MODIFIED AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

# TABLE OF CONTENTS

**PAGE**

ARTICLE I DEFINITIONS AND INTERPRETATION ..................................................1

    1.1    Definitions. .................................................................................1

    1.2    Rules of Interpretation and Construction. ...................................9

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS.........................................10

    2.1    Administrative Expense Claims. .................................................10

    2.2    Fee Claims. ...............................................................................10

    2.3    Priority Tax Claims. ...................................................................11

    2.4    DIP Claims. ...............................................................................11

ARTICLE III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS..............11

ARTICLE IV TREATMENT OF CLAIMS AND EQUITY INTERESTS......................13

    4.1    Class 1 – Priority Non-Tax Claims. ...........................................13

    4.2    Classes 2a and 2b – First Lien Claims.......................................13

    4.3    Classes 3a and 3b – Second Lien Claims. ..................................13

    4.4    Class 4 – Other Secured Claims. ................................................14

    4.5    Class 5 – General Unsecured Claims. .........................................14

    4.6    Class 6 – Equity Interests in NM OpCo, NM Outdoor, NM Northern Colorado and NM Licensing .........................................14

    4.7    Class 7 – Equity Interests in NM Group. ...................................14

    4.8    Class 8 – Equity Interests in NM Investors. ..............................15

    4.9    Class 9 – Equity Interests in NM Texas. ....................................15

    4.10    Class 10 – Equity Interests in Outdoor LLC. .............................15

    4.11    Class 11 – Equity Interests in NM Franchising............................15

ARTICLE V IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES ...............15

    5.1    Classes Entitled to Vote..............................................................15

    5.2    Class Acceptance Requirement. ..................................................15

    5.3    Cramdown ..................................................................................16

ARTICLE VI MEANS OF IMPLEMENTATION AND POST-EFFECTIVE DATE GOVERNANCE............................................................................16

    6.1    Substantive Consolidation. .........................................................16

    6.2    Continued Separate Existence. ....................................................16

| | | |
|---|---|---|
| 6.3 | Restructuring and Other Corporate Actions and Transactions. | 16 |
| 6.4 | Issuance of New Securities. | 19 |
| 6.5 | Release of Liens. | 19 |
| 6.6 | Preservation of Rights of Action; Settlement of Litigation Claims. | 19 |
| 6.7 | Effectuating Documents; Further Transactions. | 19 |
| 6.8 | Cancellation of Agreements. | 20 |
| 6.9 | Dissolution of Statutory Committees and Cessation of Fee and Expense Payments. | 20 |

ARTICLE VII DISTRIBUTIONS ......20

| | | |
|---|---|---|
| 7.1 | Date of Distributions. | 20 |
| 7.2 | Sources of Cash for Plan Distributions. | 20 |
| 7.3 | Disbursing Agent. | 21 |
| 7.4 | Rights and Powers of Disbursing Agent. | 21 |
| 7.5 | Record Date for Distributions. | 21 |
| 7.6 | Recipients of Distributions. | 21 |
| 7.7 | Delivery of Distributions. | 22 |
| 7.8 | Means of Payment. | 22 |
| 7.9 | Fractional Shares. | 22 |
| 7.10 | Setoffs and Recoupment. | 22 |
| 7.11 | Distributions After Effective Date. | 23 |
| 7.12 | Withholding and Reporting Requirements. | 23 |
| 7.13 | No Postpetition Interest. | 23 |
| 7.14 | Time Bar to Payments. | 23 |

ARTICLE VIII PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS ......23

| | | |
|---|---|---|
| 8.1 | Objections to Claims. | 23 |
| 8.2 | No Distributions Pending Allowance. | 24 |
| 8.3 | Distributions After Allowance. | 24 |
| 8.4 | Disallowance of Late Filed Claims and Equity Interests. | 24 |

ARTICLE IX TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......24

| | | |
|---|---|---|
| 9.1 | Assumption of Contracts and Leases. | 24 |
| 9.2 | Inclusiveness. | 25 |

DAL:753541.13

| 9.3 | Payments Related to Assumption of Contracts and Leases....................... 25 |
|---|---|
| 9.4 | Rejected Contracts and Leases. ................................................................. 25 |
| 9.5 | Claims Based on Rejection of Executory Contracts or Unexpired Leases.25 |
| 9.6 | Compensation and Benefit Plans. ............................................................. 26 |
| 9.7 | Insurance Policies. .................................................................................... 26 |

ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION AND
EFFECTIVENESS OF THE PLAN ....................................................... 26

| 10.1 | Conditions to Confirmation of Plan. ........................................................ 26 |
|---|---|
| 10.2 | Conditions to Effective Date of Plan. ....................................................... 27 |
| 10.3 | Waiver of Conditions Precedent. .............................................................. 27 |
| 10.4 | Effect of Failure of Conditions. ................................................................ 27 |
| 10.5 | Reservation of Rights. ............................................................................... 28 |
| 10.6 | Substantial Consummation. ....................................................................... 28 |

ARTICLE XI EFFECT OF CONSUMMATION ............................................................. 28

| 11.1 | Revesting of Assets. .................................................................................. 28 |
|---|---|
| 11.2 | Discharge of the Debtors. .......................................................................... 28 |
| 11.3 | Exculpation. .............................................................................................. 28 |
| 11.4 | Releases by the Debtors. ........................................................................... 29 |
| 11.5 | Third Party Release. .................................................................................. 29 |
| 11.6 | Injunction and Stay. .................................................................................. 30 |
| 11.7 | Indemnification Obligations. .................................................................... 30 |
| 11.8 | Preservation of Claims. ............................................................................. 31 |
| 11.9 | Compromise of Controversies. .................................................................. 31 |

ARTICLE XII RETENTION OF JURISDICTION ........................................................... 31

ARTICLE XIII MISCELLANEOUS ................................................................................. 33

| 13.1 | Payment of Statutory Fees. ....................................................................... 33 |
|---|---|
| 13.2 | Filing of Additional Documents. .............................................................. 33 |
| 13.3 | Schedules and Exhibits Incorporated. ...................................................... 33 |
| 13.4 | Intercompany Claims. ............................................................................... 33 |
| 13.5 | Amendment or Modification of the Plan. .................................................. 33 |
| 13.6 | Inconsistency. ........................................................................................... 33 |
| 13.7 | Exemption from Certain Transfer Taxes. .................................................. 34 |
| 13.8 | Expedited Tax Determination. .................................................................. 34 |

13.9     Ordinary Course. ....................................................................................... 34

13.10   Binding Effect. ........................................................................................ 34

13.11   Severability. ............................................................................................ 35

13.12   No Admissions. ....................................................................................... 35

13.13   No Payment of Attorneys' Fees. ............................................................. 35

13.14   Notices. ................................................................................................... 35

13.15   Governing Law. ...................................................................................... 36

DAL:753541.13

NextMedia Investors LLC, NextMedia Group, Inc., NextMedia Operating, Inc., NM Licensing LLC, NextMedia Outdoor, Inc., NM Texas, Inc., NextMedia Northern Colorado, Inc., NextMedia Franchising, Inc. and NextMedia Outdoor, LLC, hereby propose the following Modified Amended Joint Chapter 11 Plan of Reorganization pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

**1.1** *Definitions.*

For the purpose of this Plan, the following terms shall have the respective meanings set forth below:

*Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases Allowed under and in accordance with, as applicable, sections 503(b), 507(a) and 507(b) of the Bankruptcy Code including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' estates, (b) any Fee Claims, (c) any fees or charges assessed against the Debtors' Estates under 28 U.S.C. § 1930, (d) all costs and expenses, including any recording fees, transfer taxes and the like, arising out of or related to the transfer of any of the Debtors' assets under the Plan; and (e) other Administrative Expense Claims as may be ordered and Allowed by the Bankruptcy Court.

*Agents* means the First Lien Agent and the Second Lien Agent.

*Allowed* means, with reference to any Claim or Equity Interest, (a) any Claim or Equity Interest (i) as to which no objection thereto has been interposed on or before the Effective Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; *provided, however,* that such period may not exceed sixty (60) days after the Effective Date, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Equity Interest as to which the liability of the Debtors and the amount thereof are determined by Final Order of a court of competent jurisdiction other than the Bankruptcy Court or (c) any Claim or Equity Interest expressly allowed hereunder.

*Angelo, Gordon* means certain funds and affiliates of funds managed by Angelo, Gordon & Co, L.P. or its affiliates.

*Bankruptcy Code* means title 11 of the United States Code, as amended from time to time.

*Bankruptcy Court* means the United States Bankruptcy Court for the District of Delaware or any other court of the United States having jurisdiction over the Chapter 11 Cases.

*Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

**Bar Date** means the last date to file proofs of claim or interest against the Debtors, which is March 29, 2010 for all creditors except Governmental Units, and June 21, 2010 for Governmental Units.

**Business Day** means any day other than a Saturday, Sunday or "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

**Cash** means legal tender of the United States of America.

**Chapter 11 Cases** means the above-captioned jointly administered chapter 11 bankruptcy cases of the Debtors.

**Claim** means a claim against a Debtor within the meaning of section 101(5) of the Bankruptcy Code.

**Class** means any group of substantially similar Claims or Equity Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**Collateral** means any property or interest in property of the Estates of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state or federal law.

**Commitment Letter** means the commitment letter dated as of December 10, 2009 among NM Group, NM OpCo, SVP and Angelo, Gordon, a copy of which was attached to the Restructuring Agreement and shall be filed as part of the Plan Supplement, pursuant to which SVP and Angelo, Gordon, severally and not jointly, committed to provide the New Term Loan on the terms and conditions set forth therein, as the same may be amended, supplemented or otherwise modified from time to time.

**Committee** means any official committee of unsecured creditors appointed in the Chapter 11 Cases by the Office of the United States Trustee, as such official committee may be reconstituted from time to time.

**Confirmation Date** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**Confirmation Hearing** means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**Cure** means the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or

DAL:753541.13

unexpired lease of the Debtors and (ii) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

*Debtor* means any one of the Debtors, as the context may require.

*Debtors* means NM Group, NM Investors, NM OpCo, NM Licensing, NM Outdoor, NM Texas, NM Northern Colorado, NM Franchising, and Outdoor LLC, collectively, in their capacities as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

*DIP Claims* means any Claim arising under or in connection with the DIP Facility.

*DIP Facility* means the secured post-petition financing facility approved pursuant to the DIP Orders, and any amendments, supplements or other modifications thereto.

*DIP Lenders* means the lenders under the DIP Facility.

*DIP Orders* means the interim order entered by the Bankruptcy Court on December 22, 2009 [Docket No. 32], and the final order entered by the Bankruptcy Court on January 22, 2010 [Docket No. 118], authorizing and approving the DIP Facility and the agreements related thereto, and any further orders entered by the Bankruptcy Court approving subsequent extensions and modifications of the DIP Facility.

*Disbursing Agent* means the Debtors or any party designated by the Debtors, in their sole discretion, and approved by the Bankruptcy Court if other than the Debtors, to serve as a disbursing agent under section 7.3 hereof.

*Disclosure Statement* means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

*Disputed Claim* means, with respect to a Claim, any such Claim (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a proof of claim for payment has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest have interposed a timely objection or request for estimation prior to the Confirmation Date in accordance with the Plan, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

*Disputed Equity Interest* means, with respect to an Equity Interest, any such Equity Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a proof of interest for payment has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation prior to the Confirmation Date in

3

accordance with the Plan, or the Bankruptcy Rules, which objection or request for estimation have not been withdrawn or determined by a Final Order.

***Distribution Date*** means the date, occurring on or as soon as practicable after the Effective Date, on which the Disbursing Agent first makes distributions to holders of Allowed Claims and Allowed Equity Interests as provided in the Plan.

***Distribution Record Date*** means the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Equity Interests, which shall be a date to be mutually agreed to among the Debtors and the Second Lien Lead Investors.

***Effective Date*** means the first Business Day on which all the conditions precedent to the effectiveness of the Plan specified in section 10.2 hereof shall have been satisfied or waived as provided in section 10.3 hereof; *provided, however*, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect.

***Equity Interest*** means any "equity security" of the Debtors, as that term is defined in section 101(16) of the Bankruptcy Code.

***Equity Investment*** means the $55 million cash investment to be made under the Plan by the Second Lien Lead Investors on the terms and conditions set forth in (i) that certain Equity Investment Term Sheet and (ii) the Subscription Agreement, both of which will be filed as part of the Plan Supplement.

***Estates*** means the estates of the Debtors as created under section 541 of the Bankruptcy Code.

***Exit Financing*** means the exit financing to be entered into by the Reorganized Debtors, on the Effective Date, consisting of (i) a term loan in an aggregate amount of no less than $127.5 million and up to $135 million, arranged by Credit Suisse Securities (USA) LLC and Banc of America Securities LLC or other financial institutions reasonably acceptable to the Second Lien Lead Investors, on market terms and conditions reasonably satisfactory to the Second Lien Lead Investors and that, taken as a whole, are equal to or more favorable to the Debtors than the terms and conditions of the New Term Loan; *provided, however*, that if such financing cannot be obtained by the Debtors by the Effective Date, then the New Term Loan shall be the term loan component of the Exit Financing and (ii) a senior revolving credit facility in an aggregate amount of up to $10 million as contemplated by the term sheet for the New Term Loan attached as an exhibit to the Commitment Letter.

***Existing Employee Agreements*** means the employment agreements between the Debtors and certain members of the Debtors' senior management existing as of the Petition Date.

***FCC*** means the Federal Communication Commission.

***FCC Approval*** means the grant of an initial order by the FCC approving the transfer of all of the Debtors' radio stations consistent with the transactions contemplated in the Plan, which initial order shall have become a final order under applicable FCC rules and

regulations (the "FCC Order"); *provided, however,* that with respect to the grandfathered stations in Chicago, IL and Greenville-New Bern-Jacksonville, NC, if the FCC has not approved the transfer of such grandfathered stations to the Reorganized Debtors, the FCC Order shall (i) include conditions requiring the future transfer of one or more of such stations to a third party and/or (ii) include a provision requiring the concurrent transfer of one or more of such stations to a trust.

*Fee Claim* means any Claim by a Professional Person under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses in the Chapter 11 Cases.

*Final Order* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari,* or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari,* stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari,* or move for a stay, new trial, reargument or rehearing shall have expired; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

*First Lien Agent* means Wilmington Trust FSB, as successor to General Electric Capital Corporation, in its capacity as administrative agent and collateral agent to the First Lien Lenders and the other holders of First Lien Claims.

*First Lien Claims* means the Claims arising out of the First Lien Credit Agreement, in the aggregate Allowed amount of $162,400,426.13, plus an additional $2,949,674.68 in secured interest rate swap obligations plus all accrued and unpaid contractual interest at the default rate (if any), and all accrued and unpaid costs and expenses, including reasonable fees and expenses incurred by the First Lien Agent's and First Lien Lenders' attorneys and all fees and expenses owing to the First Lien Agent's financial advisor under its consulting agreement with the First Lien Agent, as amended.

*First Lien Credit Agreement* means that certain Credit and Guaranty Agreement dated as of November 15, 2005, among NM OpCo, NM Group, the First Lien Agent, and the First Lien Lenders, and any related security documents and agreements and any hedge agreements executed in connection therewith, each as amended, supplemented or otherwise modified from time to time.

*First Lien Lenders* means the lenders from time to time party to the First Lien Credit Agreement.

DAL:753541.13

**General Unsecured Claim** means any Claim against Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim or a Secured Claim.

**Governmental Unit** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**Local Bankruptcy Rules** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**Management Incentive Plan** means the management retention and incentive plan to be adopted by the Reorganized Debtors upon the Effective Date which shall provide for the award of non-qualified options to designated members of senior management of the Reorganized Debtors to acquire up to 14% of the fully diluted shares of New NextMedia Common Stock, on the terms set forth in the Plan Supplement.

**New Board** means the Board of Directors of Reorganized NM Group as of the Effective Date, as identified in the Plan Supplement.

**New Employment Agreements** means the employment agreements to be entered into among certain members of the Debtors' senior management and Reorganized NM Group, on or prior to the Effective Date, incorporating the terms and provisions set forth in the Plan Supplement.

**New NextMedia Class A Common Stock** means the new (i) class A voting common stock of Reorganized NM Group, par value $0.01 per share and (ii) class A limited-voting common stock of Reorganized NM Group, par value $0.01 per share, to be issued by Reorganized NM Group on the Effective Date under and pursuant to the Plan.

**New NextMedia Class B Common Stock** means the new (i) class B voting common stock of Reorganized NM Group, par value $0.01 per share and (ii) class B limited voting common stock of Reorganized NM Group, par value $0.01 per share, to be issued by Reorganized NM Group on the Effective Date under and pursuant to the Plan.

**New NextMedia Common Stock** means the New NextMedia Class A Common Stock and the New NextMedia Class B Common Stock, together.

**New NextMedia Governing Documents** means (i) the certificate of incorporation and bylaws of each of the Recognized Debtors (which shall be their current charters and bylaws, as amended as necessary to implement the Plan including to, *inter alia*, prohibit the issuance of non-voting equity securities as required by section 1123(a)(6) of the Bankruptcy Code (other than any warrants), subject to further amendment as permitted by applicable law), and (ii) any other governing corporate document with respect to the Reorganized Debtors as may be contemplated by the Plan or otherwise, the forms of which will be filed as part of the Plan Supplement.

6

***New Shareholders Agreement*** means the shareholders agreement governing the holders of New NextMedia Common Stock, in form and substance reasonably satisfactory to the Second Lien Lead Investors, which shall be filed as part of the Plan Supplement.

***New Term Loan*** means the $127.5 million term loan facility among Reorganized NM OpCo as borrower, Reorganized NM Group and each of Reorganized NM OpCo's direct and indirect present and future subsidiaries, as guarantors, committed to on a several and not joint basis by SVP and Angelo, Gordon, and having the terms described in the term sheet attached as an exhibit to the Commitment Letter, which shall be filed as part of the Plan Supplement.

***NM Franchising*** means NextMedia Franchising, Inc.

***NM Group*** means NextMedia Group, Inc.

***NM Investors*** means NextMedia Investors LLC.

***NM Investors Agreement*** means the Third Amended and Restated Limited Liability Company Agreement, dated as of August 1, 2005, by and among NM Investors and the members signatory, thereto as the same has been amended from time to time.

***NM Licensing*** means NM Licensing LLC.

***NM Northern Colorado*** means NextMedia Northern Colorado, Inc.

***NM OpCo*** means NextMedia Operating, Inc.

***NM Outdoor*** means NextMedia Outdoor, Inc.

***NM Texas*** means NM Texas, Inc.

***Other Secured Claim*** means a Secured Claim that is not a First Lien Claim or a Second Lien Claim.

***Outdoor LLC*** means NextMedia Outdoor, LLC.

***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

***Petition Date*** means December 21, 2009, the date on which each Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

***Plan*** means this Modified Amended Joint Chapter 11 Plan of Reorganization proposed by the Debtors, as the same may be amended, supplemented or otherwise modified, including the exhibits and schedules hereto.

***Plan Supplement*** means the compilation of documents and forms of documents, schedules and exhibits to be filed in one or more parts or volumes, no later than five (5) Business

Days prior to the Voting Deadline, as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules, comprising, without limitation, the following documents: the New Shareholders Agreement; the New NextMedia Governing Documents; the Registration Rights Agreement, the Commitment Letter, the Subscription Agreement, the Management Incentive Plan and the New Employment Agreements.

*Prepetition Lenders* means, collectively, the First Lien Lenders and the Second Lien Lenders.

*Priority Non-Tax Claim* means any Claim that is entitled to priority in payment pursuant to sections 507(a)(4), (5), (6) or (7) of the Bankruptcy Code and that is not an Administrative Expense Claim or a Priority Tax Claim.

*Priority Tax Claim* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*Professional Person* means any Person retained or to be compensated by the Debtors pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

*Registration Rights Agreement* means a registration rights agreement substantially in the form to be filed as part of the Plan Supplement, and in form and substance reasonably satisfactory to the Second Lien Lead Investors, obligating the Reorganized Debtors to register for resale certain shares of New NextMedia Common Stock under the Securities Act in accordance with the terms set forth in such agreement.

*Reorganized Debtors* means the Debtors, as reorganized under and pursuant to the Plan from and after the Effective Date, except NM Investors, NM Texas, NM Franchising and Outdoor LLC, which shall each be dissolved; or, if the term Reorganized is used with respect to an individual Debtor, such individual Debtor as reorganized under and pursuant to the Plan, from and after the Effective Date, except NM Investors, NM Texas, NM Franchising and Outdoor LLC, which shall each be dissolved.

*Restructuring Agreement* means the Restructuring Support Agreement dated as of December 21, 2009, among the Debtors, the Second Lien Lead Investors and the other Second Lien Lenders signatories thereto, including all schedules, exhibits and annexes thereto, each as amended, modified or supplemented from time to time.

*Second Lien Agent* means NexBank, SSB, in its capacity as administrative agent and collateral agent to the Second Lien Lenders.

*Second Lien Claims* means the Claims arising out of the Second Lien Credit Agreement, in the aggregate Allowed amount of $89,403,737.74 in principal and accrued but unpaid interest (plus certain additional fees and expenses).

*Second Lien Credit Agreement* means that certain Second Lien Credit and Guaranty Agreement dated as of November 15, 2005, among NM OpCo, NM Group, the Second

Lien Agent and the Second Lien Lenders, and any related security documents or agreements, each as amended, supplemented or otherwise modified from time to time.

**Second Lien Lead Investors** means SVP and Angelo, Gordon or any assignee thereof, as may be identified by SVP or Angelo, Gordon.

**Second Lien Lenders** means the lenders under the Second Lien Credit Agreement.

**Secured Claim** means a Claim that is secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by the Debtor in question and the holder of such Claim.

**Securities Act** means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, or any similar federal, state or local law.

**Subscription Agreement** means a subscription agreement, substantially in the form to be filed as part of the Plan Supplement, in a form and substance reasonably satisfactory to the Second Lien Lead Investors, setting forth the terms and conditions on which the Second Lien Lead Investors will make the Equity Investment.

**SVP** means certain funds and affiliates of funds managed by Strategic Value Partners LLC, or its affiliates.

**Voting Deadline** means the date set by the Bankruptcy Court by which ballots for accepting or rejecting the Plan must be received, which is March 19, 2010.

## 1.2 *Rules of Interpretation and Construction.*

(a) <u>Interpretation</u>. Unless otherwise specified herein, all section, article and exhibit references in the Plan are to the respective section in, article of, and exhibit to, the Plan, as the same may be amended, waived or modified from time to time. All headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

(b) <u>Construction and Application of Bankruptcy Code Definitions</u>. Unless otherwise defined herein, words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan. Words or terms used but not defined herein shall have the meanings ascribed to such terms or words, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

(c) <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan.

9

(d) <u>Time</u>. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

### 2.1 *Administrative Expense Claims.*

All Administrative Expense Claims against the Debtors shall be treated as follows:

(a) <u>Time for Filing</u>. All holders of Administrative Expense Claims arising from the Petition Date through the Effective Date, other than Professional Persons holding Fee Claims, shall file with the Bankruptcy Court a request for payment of such Claims within thirty (30) days after the Effective Date. Any such request must be served on the Debtors, their counsel, counsel to any Committee and counsel to the Second Lien Lead Investors, and must, at a minimum, set forth (i) the name of the holder of the Claim; (ii) the amount of the Claim; and (iii) the basis for the Claim. A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its holder forever barred from asserting such Administrative Expense Claim against the Debtors.

(b) <u>Allowance</u>. An Administrative Expense Claim for which a request for payment has been properly filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is thirty (30) days after such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

(c) <u>Payment</u>. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment of such Claim, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full satisfaction of such Claim, Cash in an amount equal to the Allowed amount of such Claim on the later of (A) the Effective Date or (B) ten (10) days after entry of an order by the Bankruptcy Court allowing such Administrative Expense Claim.

### 2.2 *Fee Claims.*

Every Professional Person holding a Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable rules and regulations contained in the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The last date to object to any final fee application shall be the twenty-fourth (24th) day after such fee application has been filed with the Bankruptcy Court. All final fee applications shall be set for hearing on the same day, as the Bankruptcy Court's calendar permits, after consultation with counsel for the Debtors. Allowed

Fee Claims shall be paid in full in Cash by the Debtors on the later of (A) the Effective Date or (B) ten (10) days after entry of an order by the Bankruptcy Court allowing such Fee Claim.

## 2.3 *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim has agreed or agrees to a different treatment of such Claim, each holder of an Allowed Priority Tax Claim shall receive on the Effective Date, at the option of the Debtors, in consultation with the Second Lien Lead Investors: (i) Cash in an amount equal to the Allowed amount of such Claim, or (ii) regular installment payments of Cash (a) having a total value, as of the Effective Date, equal to the Allowed amount of the Claim, (b) over a period ending not later than five (5) years after the Petition Date and (c) in a manner not less favorable than the most favored nonpriority Allowed General Unsecured Claims provided for by the Plan (other than Cash payments made to a class of creditors under section 1122(b) of the Bankruptcy Code). To the extent interest is required to be paid on any Priority Tax Claim, the rate of such interest shall be the rate determined under applicable nonbankruptcy law, as set forth in section 511 of the Bankruptcy Code. To the extent the holder of an Allowed Priority Tax Claim has a Lien on the Debtors' property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full. On and after the Effective Date, the Reorganized Debtors will pay all *ad valorem* property taxes as they become due, in the ordinary course of business.

## 2.4 *DIP Claims.*

On the Effective Date, all Allowed DIP Claims shall be paid in full in Cash. Upon payment and satisfaction in full of all Allowed DIP Claims, all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Cases or otherwise, shall be terminated and of no further force or effect.

## ARTICLE III

## CLASSIFICATION OF CLAIMS
## AND EQUITY INTERESTS

The Plan is premised upon the substantive consolidation of certain of the Debtors for purposes of the Plan only. Accordingly, for purposes of the Plan, the assets and liabilities of the Debtors (except NM Investors, NM Texas, NM Franchising and Outdoor LLC) are deemed the assets and liabilities of a single, consolidated entity.

All Claims against, and Equity Interests in, the Debtors are classified for all purposes, including voting, confirmation, and distribution, pursuant to the Plan as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | No | No (deemed to accept) |
| Class 2a | First Lien Claims Against All Debtors Except Outdoor LLC | No | No (deemed to accept) |
| Class 2b | First Lien Claims Against Outdoor LLC | No | No (deemed to accept) |
| Class 3a | Second Lien Claims Against All Debtors Except Outdoor LLC | Yes | Yes |
| Class 3b | Second Lien Claims Against Outdoor LLC | Yes | Yes |
| Class 4 | Other Secured Claims | No | No (deemed to accept) |
| Class 5 | General Unsecured Claims | No | No (deemed to accept) |
| Class 6 | Equity Interests in NM OpCo, NM Outdoor, NM Northern Colorado and NM Licensing | No | No (deemed to accept) |
| Class 7 | Equity Interests in NM Group | Yes | Yes |
| Class 8 | Equity Interests in NM Investors | Yes | Yes |
| Class 9 | Equity Interests in NM Texas | Yes | No (deemed to reject) |
| Class 10 | Equity Interests in Outdoor LLC | Yes | No (deemed to reject) |
| Class 11 | Equity Interests in NM Franchising | Yes | No (deemed to reject) |

Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting or receiving distributions under the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code. Instead, all such Claims shall be treated separately as unclassified claims on the terms previously set forth in Article II of the Plan.

DAL:753541.13

# ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1 *Class 1 – Priority Non-Tax Claims.*

Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, payment in full in Cash on the later of (A) the Effective Date or (B) ten (10) days after entry of an order by the Bankruptcy Court allowing such Priority Non-Tax Claim.

### 4.2 *Classes 2a and 2b – First Lien Claims.*

On the Effective Date, except to the extent that a holder of an Allowed First Lien Claim agrees to less favorable treatment, each holder of an Allowed First Lien Claim in Classes 2a and 2b shall receive, in full satisfaction of such Claim, Cash in an amount equal to such holder's Allowed First Lien Claim (including, without limitation, interest on the obligations under the First Lien Credit Agreement accrued and unpaid through the Effective Date at the default rate set forth in the First Lien Credit Agreement). Upon such payment, the First Lien Claims shall be deemed satisfied in full and discharged, and the First Lien Credit Agreement and all Liens securing the obligations thereunder shall be terminated and of no further force or effect.

### 4.3 *Classes 3a and 3b – Second Lien Claims.*

(a) On the Effective Date, each holder of an Allowed Second Lien Claim in Classes 3a and 3b shall receive its *pro rata* share of an initial allocation of 95% of the New NextMedia Common Stock, in the form of shares of New NextMedia Class A Common Stock, subject to dilution through the issuance of shares of (i) New NextMedia Class B Common Stock to the Second Lien Lead Investors (in exchange for their Equity Investment) and (ii) New NextMedia Class A Common Stock pursuant to the Management Incentive Plan. Upon the Effective Date, all Second Lien Claims shall be deemed satisfied in full and discharged, and the Second Lien Credit Agreement and all Liens securing the obligations thereunder shall be terminated and of no further force or effect.

(b) Each holder of an Allowed Second Lien Claim shall, on the ballot to be provided to such holder to vote to accept or reject the Plan, indicate its election to receive its *pro rata* share of New NextMedia Class A Common Stock in the form of either (i) class A voting common stock or (ii) class A limited-voting common stock. If any holder of an Allowed Second Lien Claim fails to make such an election on its ballot, such holder shall be deemed to have elected, and shall receive, class A limited-voting common stock. Notwithstanding any election made by any holder of an Allowed Second Lien Claim to the contrary, the Debtors may, in the exercise of their reasonable business judgment, after consultation with the Second Lien Agent, issue class A limited-voting common stock to any holder of an Allowed Second Lien Claim as may be necessary to comply with applicable FCC rules and regulations.

13

**4.4    *Class 4 – Other Secured Claims.***

On the Effective Date, except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, each holder of an Allowed Other Secured Claim shall, at the Debtors' option, in consultation with the Second Lien Lead Investors: (i) be reinstated or otherwise rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of an event of default, (ii) be paid in the ordinary course of business in accordance with the course of practice between the Debtors and such holder with respect to such Allowed Other Secured Claim, or (iii) receive the Collateral securing such Allowed Other Secured Claim.

**4.5    *Class 5 – General Unsecured Claims.***

Each holder of an Allowed General Unsecured Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, at the Debtors option, in consultation with the Second Lien Lead Investors: (i) to the extent such Allowed General Unsecured Claim is due and owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such Claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such holder; (ii) to the extent such Allowed General Unsecured Claim is not due and owing on the Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the holder of such Claim.

**4.6    *Class 6 – Equity Interests in NM OpCo, NM Outdoor, NM Northern Colorado and NM Licensing***

On the Effective Date, each holder of an Equity Interest in NM OpCo, NM Outdoor, NM Northern Colorado and NM Licensing shall retain its Equity Interest.

**4.7    Class 7 – *Equity Interests in NM Group.***

On the Effective Date, the Equity Interests in NM Group shall be cancelled and extinguished, and the holder of the Equity Interests in NM Group shall receive 5% of the New NextMedia Common Stock, in the form of shares of New NextMedia Class A Common Stock, subject to dilution through the issuance of shares of (i) New NextMedia Class B Common Stock to the Second Lien Lead Investors (in exchange for the Equity Investment) and (ii) New NextMedia Class A Common Stock pursuant to the Management Incentive Plan. NM Investors (as the holder of the Equity Interests in NM Group) shall immediately distribute its shares of New NextMedia Class A Common Stock to the holders of the Equity Interests in NM Investors in accordance with the terms of the NM Investors Agreement.

DAL:753541.13

**4.8    Class 8 – Equity Interests in NM Investors.**

On the Effective Date, all Equity Interests in NM Investors shall be cancelled and extinguished. Each holder of an Equity Interest in NM Investors shall receive, via distribution from NM Investors, a number of shares of New NextMedia Class A Common Stock distributed to NM Investors pursuant to section 4.7 hereof, as calculated pursuant to the terms of the NM Investors Agreement.

**4.9    Class 9 – Equity Interests in NM Texas.**

On the Effective Date, all Equity Interests in NM Texas shall be cancelled and extinguished, and the holder of such Equity Interests shall neither receive nor retain any property on account of such Equity Interests under the Plan.

**4.10    Class 10 – Equity Interests in Outdoor LLC.**

On the Effective Date, all Equity Interests in Outdoor LLC shall be cancelled and extinguished, and the holders of such Equity Interests shall neither receive nor retain any property on account of such Equity Interests under the Plan.

**4.11    Class 11 – Equity Interests in NM Franchising.**

On the Effective Date, all Equity Interests in NM Franchising shall be cancelled and extinguished, and the holder of such Equity Interests shall neither receive nor retain any property on account of such Equity Interests under the Plan.

## ARTICLE V

### IMPAIRMENT; ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES

**5.1    Classes Entitled to Vote.**

The holders of Claims in Classes 1, 2a, 2b, 4 and 5, and holders of Equity Interests in Class 6 are unimpaired, conclusively deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. Holders of Claims in Classes 3a and 3b, and holders of Equity Interests in Classes 7 and 8 are impaired and entitled to vote to accept or reject the Plan. Holders of Equity interests in Classes 9, 10 and 11 are impaired, will neither receive nor retain any property under the Plan on account of such Equity Interests, are not entitled to vote, and are deemed to have rejected the Plan.

**5.2    Class Acceptance Requirement.**

A Class of impaired Claims shall have accepted the Plan if the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in such Class who have voted on the Plan have voted to accept the Plan. A Class of impaired Equity Interests shall have accepted the Plan if at least two-thirds (2/3) in amount of Equity Interests in such Class who have voted on the Plan have voted to accept the Plan.

15

### 5.3    *Cramdown*

If any Class (except for Classes 3a or 3b) fails to accept the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtors hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE VI

## MEANS OF IMPLEMENTATION
## AND POST-EFFECTIVE DATE GOVERNANCE

### 6.1    *Substantive Consolidation.*

The Plan is premised upon the substantive consolidation of the Debtors (other than NM Investors, NM Texas, NM Franchising and Outdoor LLC, which are to be dissolved under the Plan) for purposes of the Plan only. Accordingly, on the Effective Date, and other than with respect to the Debtors to be dissolved under the Plan, all of the Debtors and their Estates shall, for purposes of the Plan only, be deemed merged and (i) all assets and liabilities of such Debtors shall be treated as though they were merged, (ii) all guarantees of such Debtors of payment, performance or collection of obligations of any other of such Debtors shall be eliminated and cancelled, (iii) all joint obligations of such Debtors and all multiple Claims against such entities on account of such joint obligations, shall be considered a single claim against such Debtors, and (iv) any Claim filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date. Such substantive consolidation shall not (other than for purposes of voting, treatment, and distribution under the Plan) affect (x) the legal and/or corporate structures of the Debtors (other than with respect to those Debtors to be dissolved under the Plan) or (y) any intercompany claims.

### 6.2    *Continued Separate Existence.*

Subject to the transactions contemplated by the Plan, and except as provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate legal entity, with all the powers afforded to it under applicable law in the jurisdiction in which such Debtor is organized and pursuant to the organizational documents in effect with respect to such Debtor prior to the Effective Date, except to the extent such organizational documents are amended by, or are to be amended pursuant to, the Plan or otherwise, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

### 6.3    *Restructuring and Other Corporate Actions and Transactions.*

(a)    Exit Financing. Upon the Effective Date, the Reorganized Debtors shall enter into the Exit Financing. The proceeds thereof (along with the proceeds of the Equity Investment, Cash on hand and any additional financing that may be necessary in an amount to be determined (subject to the terms and conditions of the Exit Financing (including any limitations therein on the incurrence of additional debt and liens)) shall be used to pay all First Lien Claims and all other Claims that are to be paid in Cash as set forth in the Plan.

(b)     Equity Investment. Upon the Effective Date, the Second Lien Lead Investors shall, severally and not jointly, make the Equity Investment and, in exchange therefor, receive shares of New NextMedia Class B Common Stock, which shall represent 66.67% of the shares of New NextMedia Common Stock, subject to dilution only by the shares of New NextMedia Class A Common Stock to be issued pursuant to the Management Incentive Plan. Each Second Lien Lead Investor shall elect to receive its *pro rata* share of New NextMedia Class B Common Stock in the form of either (i) class B voting common stock or (ii) class B limited-voting common stock by so-indicating on the Subscription Agreement. Notwithstanding any election made by any Second Lien Lead Investor to the contrary, the Debtors may, in the exercise of their reasonable business judgment, issue class B limited-voting common stock to any Second Lien Lead Investor as may be necessary to comply with applicable FCC rules and regulations.

(c)     Management Incentive Plan. Upon the Effective Date, Reorganized NM Group shall adopt the Management Incentive Plan. The Management Incentive Plan shall provide for the award of non-qualified options to designated members of senior management of the Reorganized Debtors to acquire up to 14% of the fully diluted shares of New NextMedia Common Stock (after giving effect to the Equity Investment, the issuance of New NextMedia Common Stock to holders of Allowed Second Lien Claims and the holder of the Equity Interests NM Group). The Management Incentive Plan shall incorporate the principal terms and conditions set forth in the Plan Supplement.

(d)     Management Employment Agreements. The Debtors' senior management shall continue in their positions following the Effective Date, subject to such individuals waiving certain terms of their Existing Employment Agreements. On or prior to the Effective Date (effective as of the Effective Date), each member of the Debtors' senior management shall enter into a New Employment Agreement with Reorganized NM Group. Upon the Effective Date, such New Employment Agreements shall supersede and replace the Existing Employment Agreements, and the Existing Employment Agreements shall be deemed null, void, terminated and of no further force or effect.

(e)     New Shareholders Agreement. Upon the Effective Date, or as soon thereafter as may be practicable, all holders of New NextMedia Common Stock (including, without limitation holders of options issued under the Management Incentive Plan) shall enter into the New Shareholders Agreement.

(f)     Registration Rights Agreement. Upon the Effective Date, or as soon thereafter as may be practicable, all holders of New NextMedia Common Stock shall have the right to enter into the Registration Rights Agreement.

(g)     Dissolution of NM Investors and Distribution of Stock to Equity Holders. Upon the Effective Date, pursuant to section 4.7 hereof, NM Investors shall distribute to its Equity Interest holders the shares of New NextMedia Class A Common Stock distributed to NM Investors hereunder. As soon as practicable thereafter, NM Investors shall be dissolved and shall cease to exist as a limited liability company.

DAL:753541.13

(h)     Dissolution of NM Texas, NM Franchising and Outdoor LLC. On the Effective Date, or as soon as practicable thereafter, NM Texas, NM Franchising and Outdoor LLC shall be dissolved and shall cease to exist as legal entities.

(i)     Tax Elections. None of the Reorganized Debtors shall change its entity classification for U.S. federal income tax purposes on or prior to the Effective Date.

(j)     Other Transactions. On or as of the Effective Date, or as soon as practicable thereafter, and without the need for any further action other than approval by the New Board, the Reorganized Debtors may (i) cause any or all of the Reorganized Debtors or to be merged into one or more of the Reorganized Debtors, dissolved or otherwise consolidated, (ii) cause the transfer of assets between or among the Reorganized Debtors, or (iii) engage in any other transaction in furtherance of the Plan.

(k)     General Corporate Actions. Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) adoption or assumption, as applicable, of the New Employment Agreements, (ii) selection of the directors and officers of the Reorganized Debtors, (iii) the distribution of New NextMedia Common Stock, (iv) the adoption of the Management Incentive Plan, and (v) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by any holders of Equity Interests or New NextMedia Common Stock, the managing members, directors or officers of the Debtors or the Reorganized Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors. Such authorizations and approvals shall be effective notwithstanding any requirements under non-bankruptcy law.

(l)     New NextMedia Governing Documents. Upon the Effective Date, the New NextMedia Governing Documents shall become effective in accordance with their terms and shall be filed with the appropriate Governmental Unit.

(m)     Boards of Directors of the Reorganized Debtors. The identities of and compensation to be provided to the individuals serving on New Board will be set forth in the Plan Supplement. After the Effective Date, the New Board shall consist of five (5) members, one (1) of whom shall be the chief executive officer of Reorganized NM Group. Three (3) members of the New Board shall be designated by SVP and one (1) member of the New Board shall be designated by representatives of the holders of Allowed Second Lien Claims. For so long as SVP shall own not less than 39% of the outstanding New NextMedia Common Stock, SVP shall have the right to designate the majority of the New Board. The tenure of each member of the New Board, and the tenure and manner of selection of subsequent directors for each of the Reorganized Debtors shall be as provided in the New NextMedia Governing Documents and the New Shareholders Agreement

18

(n)     Officers the Reorganized Debtors. The officers of the respective Reorganized Debtors immediately prior to the Effective Date shall serve as the initial officers of each of the respective Reorganized Debtors on and after (as may be determined by the New Board) the Effective Date and in accordance with any employment agreement entered into with the Reorganized Debtors and applicable non-bankruptcy law.

**6.4    *Issuance of New Securities.***

As of the Effective Date, the issuance by Reorganized NM Group of the New NextMedia Common Stock to the Persons and in the amounts set forth herein is hereby authorized without the need for any further corporate action. Pursuant to section 1145 of the Bankruptcy Code, the issuance and allocation of shares of New NextMedia Common Stock hereunder (and any options to purchase the same) shall be exempt from registration under the Securities Act and any state or local law requiring registration for offer or sale of a security.

**6.5    *Release of Liens.***

Except as otherwise provided herein, upon the occurrence of the Effective Date, any Lien securing a Secured Claim, including without limitation, the First Lien Claims and the Second Lien Claims, shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtors. As of the Effective Date, the Reorganized Debtors shall be authorized to file on behalf of holders of Secured Claims form UCC-3s or such other forms as may be necessary to implement the provisions of this section.

**6.6    *Preservation of Rights of Action; Settlement of Litigation Claims.***

Except as otherwise provided herein or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may, without the need for any further Bankruptcy Court approval, enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person or entity. The Reorganized Debtors or their successor(s) may pursue such retained Claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their successor(s) who hold such rights.

**6.7    *Effectuating Documents; Further Transactions.***

The New Board, the chairman of the board of directors, president, chief financial officer, any vice-president, or any other appropriate officer of each Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan. The secretary or assistant

19

secretary of the appropriate Debtor shall be authorized to certify or attest to any of the foregoing actions.

**6.8    Cancellation of Agreements.**

As of the Effective Date, except to the extent otherwise provided herein, the First Lien Credit Agreement and the Second Lien Credit Agreement shall be deemed cancelled, and the obligations of the Debtors thereunder shall be deemed satisfied in full and discharged; *provided, however,* that the First Lien Credit Agreement and the Second Lien Credit Agreement shall continue in effect solely to the extent necessary to allow the Agents and the Prepetition Lenders to receive distributions from the Debtors under the Plan.

**6.9    Dissolution of Statutory Committees and Cessation of Fee and Expense Payments.**

Any Committee appointed in the Debtors' Chapter 11 Cases shall be dissolved on the Effective Date. The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by any Committee after the Effective Date. After the Effective Date, the Debtors shall not be responsible for paying any fees or expenses of the advisors to (i) the Second Lien Lead Investors, (ii) the Agents or (iii) the Prepetition Lenders, except as may otherwise be provided in any then-applicable and effective agreements.

## ARTICLE VII

## DISTRIBUTIONS

**7.1    Date of Distributions.**

Unless otherwise provided herein, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as soon as practicable thereafter. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**7.2    Sources of Cash for Plan Distributions.**

Except as otherwise provided herein or in the Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the Debtors' and the Reorganized Debtors' operations and Cash on hand, the proceeds of the Exit Financing and the Equity Investment; *provided, however,* that nothing herein shall be deemed to limit or prohibit the Reorganized Debtors from entering into one or more post-Effective Date credit facilities, subject to the terms and conditions of the Exit Financing (including any limitations therein on the incurrence of additional debt and liens), to fund additional payments or liquidity requirements of the Reorganized Debtors.

DAL:753541.13

### 7.3  *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond, surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### 7.4  *Rights and Powers of Disbursing Agent.*

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 7.5  *Record Date for Distributions.*

At the close of business on the Distribution Record Date, the transfer ledgers or registers for the Debtors' existing Equity Interests and all indebtedness under the First Lien Credit Agreement and the Second Lien Credit Agreement shall be closed, and there shall be no further changes in the record holders of such Equity Interests and indebtedness. The Reorganized Debtors and the Disbursing Agent shall have no obligation to recognize any transfer of any of the foregoing occurring after the Distribution Record Date, and shall be entitled instead to recognize for all purposes hereunder, including to effect distributions hereunder, only those record holders stated on the transfer ledgers or registers maintained by the Debtors and the Agents as of the close of business on the Distribution Record Date.

### 7.6  *Recipients of Distributions.*

All distributions to holders of Allowed Claims and Allowed Equity Interests under the Plan (except to holders of First Lien Claims and the Second Lien Claims) shall be made to the holder of the Claim or Equity Interest as of the Distribution Record Date. Changes as to the holder of a Claim or Equity Interest after the Distribution Record Date shall only be valid and recognized for distribution if notice of such change is filed with the Bankruptcy Court, in accordance with Bankruptcy Rule 3001 (if applicable) and served upon the Debtors and their counsel.

Distributions on account of Allowed First Lien Claims and Allowed Second Lien Claims shall initially be made to the respective Agents, who shall then be responsible for making the appropriate distributions to the respective Prepetition Lenders in accordance with the Agents' respective books and records, pursuant to the terms of the First Lien Credit Agreement and Second Lien Credit Agreement, as applicable. In connection therewith, the Agents shall neither have nor assume any liability for making distributions to the Prepetition Lenders greater than that provided for in the First Lien Credit Agreement or the Second Lien Credit Agreement, as applicable. The Disbursing Agent shall not have or incur any liability for making any distributions to any individual Prepetition Lender.

### 7.7 Delivery of Distributions.

Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made at the address of each holder of an Allowed Claim or Allowed Equity Interest as set forth in the books and records of the Debtors, unless the applicable Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address on file with the Debtors for such holder. If any distribution to the holder of an Allowed Claim or Allowed Equity Interest is returned as undeliverable, no distribution to such holder shall be made unless and until the Reorganized Debtors are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred eighty (180) days after the Effective Date. After such date, all unclaimed property or interest in property shall revert to the Reorganized Debtors, and the Claim or Equity Interest of any holder with respect to such property or interest in property shall be discharged and forever barred, notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

### 7.8 Means of Payment.

All distributions made pursuant to the Plan shall be in Cash unless stated otherwise.

### 7.9 Fractional Shares.

No fractional shares of New NextMedia Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional shares. When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed Equity Interest would otherwise result in the issuance of a number of shares of New NextMedia Common Stock that is not a whole number, the actual distribution of shares of New NextMedia Common Stock shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New NextMedia Common Stock to be distributed hereunder shall be adjusted as necessary to account for the foregoing rounding.

### 7.10 Setoffs and Recoupment.

The Debtors may, but shall not be required to, setoff against or recoup from any Claim any claims of any nature whatsoever that any of the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by any of the Debtors or the Reorganized Debtors of any such claim they may have against such claimant.

**7.11** *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

**7.12** *Withholding and Reporting Requirements.*

In connection with the Plan and all instruments issued in connection therewith and distributed thereunder, any party issuing any instrument or making any such distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Allowed Equity Interest that is entitled to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any applicable tax obligations, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan to any holder of any Allowed Claim or Allowed Equity Interest has the right, but not the obligation, to not issue such instrument or make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

**7.13** *No Postpetition Interest.*

Unless otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

**7.14** *Time Bar to Payments.*

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six (6) months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to whom such check was originally issued. Any Claim in respect of such voided check shall be made on or before the first anniversary of the Effective Date. After such date, all Claims in respect of void checks shall be discharged and forever barred.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**8.1** *Objections to Claims.*

Except insofar as a Claim is Allowed under the Plan or pursuant to Final Order of the Bankruptcy Court, the Debtors, the Reorganized Debtors or any other party in interest shall be entitled to object to Claims. Any objections to Claims shall be served and filed (i) on or before the ninetieth (90th) day following the later of (x) the Effective Date and (y) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or

on behalf of a holder of such Claim, or (ii) such later date as ordered by the Bankruptcy Court. Any Claim as to which an objection is timely filed shall be a Disputed Claim.

**8.2    *No Distributions Pending Allowance.***

If the Debtors object to any Claim, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**8.3    *Distributions After Allowance.***

To the extent that a Disputed Claim or Disputed Equity Interest ultimately becomes an Allowed Claim or Allowed Equity Interest, respectively, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Equity Interest, respectively, in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Equity Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

**8.4    *Disallowance of Late Filed Claims and Equity Interests.***

Unless otherwise provided in a Final Order of the Bankruptcy Court, any Claim or Equity Interest for which a proof of claim or interest, as applicable, is filed after the applicable Bar Date shall be deemed disallowed. The holder of a Claim or Equity Interest that is disallowed pursuant to this section 8.4 shall not receive any distribution on account of such Claim or Equity Interest, as applicable, and neither the Debtors, the Reorganized Debtors nor the Distribution Agent shall need to take any affirmative action for such Claim or Equity Interest to be deemed disallowed.

## ARTICLE IX

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**9.1    *Assumption of Contracts and Leases.***

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Confirmation Date, or (iv) is set forth in schedule 9.1 hereto, as an executory contract or unexpired lease to be rejected; *provided, however,* that the Existing Employment Agreements shall neither be assumed nor rejected, and shall be treated as set forth in section 6.3(c) hereof. The Confirmation Order shall constitute an order of the Bankruptcy

Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

**9.2    *Inclusiveness.***

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on such schedule.

**9.3    *Payments Related to Assumption of Contracts and Leases.***

Any monetary amounts by which any executory contract and unexpired lease to be assumed hereunder are in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors upon assumption thereof. If there is a dispute regarding the nature or amount of any Cure, then Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

**9.4    *Rejected Contracts and Leases.***

Except as otherwise provided herein or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, none of the executory contracts and unexpired leases to which the Debtors are a party shall be rejected hereunder; *provided, however,* that the Debtors reserve the right, at any time prior to the Confirmation Date, to seek to reject any executory contract or unexpired lease to which any Debtor is party.

**9.5    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

All Claims arising out of the rejection of executory contracts and unexpired leases (if any) must be served upon the applicable Debtor and its counsel within thirty (30) days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Effective Date; *provided, however,* that any such Claim arising out of the rejection of an executory contract or unexpired lease that is filed after the Effective Date shall be served on the

DAL:753541.13

Reorganized Debtors. Any Claims not filed within such time shall be forever barred from assertion against the Debtors, their Estates and their property.

**9.6    *Compensation and Benefit Plans.***

Except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and employee benefit plans of the Debtors, including employee benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code (if any), but excluding the Existing Employment Agreements, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the Plan. The Debtors' obligations under such plans and programs shall survive confirmation of the Plan, except for (i) executory contracts or benefit plans specifically rejected pursuant to the Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code) and (ii) such executory contracts or employee benefit plans as have previously been rejected, are the subject of a motion to reject as of the Confirmation Date, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

**9.7    *Insurance Policies.***

Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, shall be continued. Nothing contained in this section shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' insurance policies.

**ARTICLE X**

**CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN**

**10.1    *Conditions to Confirmation of Plan.***

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived:

(a)    The Restructuring Agreement shall be in full force and effect and shall not have been terminated;

(b)    An order, in a form and substance reasonably satisfactory to the Debtors and the Second Lien Lead Investors, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered;

(c)    The Plan Supplement shall have been filed with the Bankruptcy Court at least five (5) Business Days prior to the Voting Deadline; and

26

(d)    The Confirmation Order shall be in a form and substance reasonably satisfactory to the Debtors and the Second Lien Lead Investors.

## 10.2    *Conditions to Effective Date of Plan.*

The Effective Date of the Plan shall not occur until each of the following conditions precedent have been satisfied or waived:

(a)    <u>Confirmation Order</u>. The clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Cases and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto. The Confirmation Order in the Chapter 11 Cases shall be in form and substance reasonably satisfactory to the Debtors and to the Second Lien Lead Investors;

(b)    <u>Execution and Delivery of Other Documents</u>. All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, including, but not limited to, the Exit Financing documents, the Management Incentive Plan documents, the New Shareholders Agreement, the Registration Rights Agreement, and the documents relating to the Equity Investment and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein; and

(c)    <u>FCC Approval</u>. The Debtors shall have obtained FCC Approval of the transactions contemplated by the Plan.

## 10.3    *Waiver of Conditions Precedent.*

Any of the foregoing conditions (with the exception of the conditions set forth in sections 10.1(b), 10.2(a) and 10.2(c)) may be waived by the Debtors in accordance with the terms and conditions set forth in the Restructuring Agreement, in each case without notice to or order of the Bankruptcy Court. The failure to satisfy or waive any condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right will be deemed an on-going right that may be asserted at any time.

## 10.4    *Effect of Failure of Conditions.*

If the foregoing conditions have not been satisfied or waived in the manner provided in section 10.2 hereof, then (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Debtors and all holders of Claims against and Equity Interests in the Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unaffected by the Plan; (v) nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors; and (vi) the Plan shall be deemed withdrawn. Upon such occurrence, the

27

Debtors shall file a written notification with the Bankruptcy Court and serve it upon counsel to the Second Lien Lead Investors, counsel to the Agents, counsel to any Committee and the Office of the United States Trustee.

## 10.5   *Reservation of Rights.*

The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtors or any other party with respect to any Claims or Equity Interests or any other matter.

## 10.6   *Substantial Consummation.*

Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

## ARTICLE XI

## EFFECT OF CONSUMMATION

## 11.1   *Revesting of Assets.*

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates shall vest in the Reorganized Debtors as set forth herein, free and clear of all Claims, Liens, encumbrances, charges and other interests, except as otherwise provided herein.

## 11.2   *Discharge of the Debtors.*

Except as otherwise expressly provided herein, upon the Effective Date, and in consideration of the distributions to be made hereunder, each holder (as well as any trustees or agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date, regardless of whether or not (i) a proof of Claim or Equity Interest has been filed, (ii) such Claim or Equity Interest was Allowed, or (iii) the holder of such Claim or Equity Interest has voted to accept or reject the Plan. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Reorganized Debtors.

## 11.3   *Exculpation.*

The Debtors, the Disbursing Agent, the DIP Lenders, the Second Lien Lead Investors, the Agents, the Prepetition Lenders, and each of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys, or agents, or any of their successors or assigns, shall not have or incur any

28

liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of approval of the Disclosure Statement, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be deemed to have acted in good faith in connection therewith and entitled to the protections of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, this section 11.3 shall not exculpate any party from any liability based upon gross negligence or willful misconduct.

## 11.4   *Releases by the Debtors.*

On the Effective Date, effective as of the Confirmation Date, the Debtors shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, in law, equity or otherwise, including any claims or causes of action under Chapter 5 of the Bankruptcy Code or other applicable law, which they have or may have against any of their respective members, managers, officers or directors, the DIP Lenders, the Second Lien Lead Investors, the Agents or the Prepetition Lenders, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates, funds, and representatives and their respective property.

## 11.5   *Third Party Release.*

*Upon the Effective Date, except as otherwise provided herein and except for the right to enforce the Plan, all Persons who have voted to accept the Plan or who are entitled, directly or indirectly, to receive a distribution hereunder, shall be deemed to forever release, waive and discharge the Debtors, the Reorganized Debtors, any Committee appointed in the Chapter 11 Cases, the DIP Lenders, the Second Lien Lead Investors, the Agents, the Prepetition Lenders, the members of the Debtors' respective boards of directors and boards of managers, and each of their respective constituents, principals, officers, directors, employees, agents, representatives, attorneys, professionals, advisors, affiliates, funds, successors, predecessors, and assigns of and from any and all Liens, claims, obligations, suits, judgments, damages, rights, remedies, causes of action, liabilities, encumbrances, security interests, Equity Interests or charges of any nature or description whatsoever relating to the Debtors, the Chapter 11 Cases or affecting property of the Debtors' Estates, whether known or unknown, discovered or undiscovered, scheduled or unscheduled, contingent, fixed, unliquidated or disputed, matured or unmatured, contingent or noncontingent, senior or subordinated, whether assertable directly or derivatively by, through, or related to the Debtors, against successors or assigns of the Debtors and the individuals and entities listed above, whether at law, in equity or otherwise, based upon any condition, event, act, omission, occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in any way arising out of,*

*relating to or connected with the operation of the Debtors' businesses or the Chapter 11 Cases, all regardless of whether (a) a proof of Claim or Equity Interest has been filed or is deemed to have been filed, (b) such Claim or Equity Interest is Allowed or (c) the holder of such Claim or Equity Interest has voted to accept or reject the Plan, except for willful misconduct or gross negligence; provided, however, that nothing in this section shall be deemed to be, or act as a bar or injunction with respect to, the FCC's enforcement of its regulatory authority under applicable FCC rules and regulations.*

**11.6   *Injunction and Stay.***

(a)    *Except as otherwise expressly provided herein, all Persons or entities who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any Reorganized Debtor or other entity released, discharged or exculpated hereunder, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor, or against the property or interests in property of any Reorganized Debtor, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Reorganized Debtor, or against the property or interests in property of any Reorganized Debtor with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to section 11.5 hereof.*

(b)    Unless otherwise provided, all injunctions or stays arising under or entered during the Debtors' Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**11.7   *Indemnification Obligations.***

Notwithstanding anything to the contrary herein, subject to the occurrence of the Effective Date, the obligations of the Debtors as provided in the Debtors' respective certificates of formation, certificates of incorporation, bylaws, limited liability company agreements or other organizational documents, applicable law or other applicable agreement as of the Petition Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of members, managers, directors, or officers who were members, managers, directors or officers of the Debtors at any time prior to the Effective Date, respectively, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Plan, remain unaffected thereby after the Effective Date and not be discharged, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation, or limitation is owed in connection with an event occurring before or after the Petition Date.  Any Claim based on the Debtors' obligations herein shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

**11.8   Preservation of Claims.**

Except as otherwise provided herein, including sections 11.4, 11.5 and 11.6 hereof, as of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, Claim, and demand whatsoever, whether known or unknown, in law, equity, or otherwise (collectively, "Causes of Action") accruing to the Debtors shall become assets of the Reorganized Debtors, and the Reorganized Debtors shall have the authority to commence and prosecute such Causes of Action for the benefit of the Debtors or the Estates. After the Effective Date, the Reorganized Debtors shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon, or dismiss all such Causes of Action without approval of the Bankruptcy Court.

**11.9   Compromise of Controversies.**

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

## ARTICLE XII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Debtors' Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)      To hear and determine pending applications for the assumption, assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b)      To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Cases and grant or deny any application involving the Debtors that may be pending on the Effective Date or that are retained and preserved by the Reorganized Debtors under sections 6.6 and 11.8 hereof;

(c)      To ensure that distributions to holders of Allowed Claims are effected as provided in the Plan;

(d)      To hear and determine any timely objections to Administrative Expense Claims or to proofs of claim and equity interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim or Disputed Equity Interest, in whole or in part;

(e)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)     To take any action and issue such orders as may be necessary to construe, enforce, implement execute and consummate the Plan or maintain the integrity of the Plan following consummation;

(g)     To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)     To hear and determine all requests for payment of Fee Claims;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the documents that are ancillary to and aid in effectuating the Plan, any transactions or payments contemplated by the Restructuring Agreement including the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing; *provided, however*, that any dispute arising under or in connection with any document included in the Plan Supplement shall be determined in accordance with the governing law set forth in such document;

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(k)     To hear any other matter not inconsistent with the Bankruptcy Code;

(l)     To hear and determine all disputes involving the existence, scope, and nature of the discharges granted under section 11.2 hereof;

(m)     To hear and determine all disputes involving or in any manner implicating the exculpation provisions granted under section 11.3 hereof;

(n)     To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan; and

(o)     To enter a final decree(s) closing the Chapter 11 Cases.

# ARTICLE XIII

## MISCELLANEOUS

**13.1  *Payment of Statutory Fees.***

All fees payable under section 1930, chapter 123, title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

**13.2  *Filing of Additional Documents.***

The Debtors or the Reorganized Debtors, as applicable, may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including the filing of the Plan Supplement.

**13.3  *Schedules and Exhibits Incorporated.***

All exhibits and schedules to the Plan and the Plan Supplement are incorporated into and are a part of the Plan as if fully set forth herein.

**13.4  *Intercompany Claims.***

Notwithstanding anything to the contrary herein, on or after the Effective Date, any debts held by a Debtor against another Debtor will be adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid, continued, or discharged to the extent reasonably determined appropriate by the Debtors taking into account the economic condition of the applicable Reorganized Debtor.

**13.5  *Amendment or Modification of the Plan.***

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, and subject further to the terms and conditions of the Restructuring Agreement, alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to or after the Confirmation Date. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided, however,* that any such alteration, amendment, or modification shall comply with the terms and conditions of the Restructuring Agreement; and *provided, further, however*, that any holders of Claims who were deemed to accept the Plan because such Claims were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims continue to be unimpaired.

**13.6  *Inconsistency.***

In the event of any inconsistency among the Plan, the Plan Supplement, the Disclosure Statement, any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern. Notwithstanding anything in the Plan to the

contrary, the rights of all parties under the Restructuring Agreement are expressly preserved and nothing herein shall modify, or shall be deemed to have modified, the Restructuring Agreement in any respect.

### 13.7 *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. All sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan, and thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 13.8 *Expedited Tax Determination.*

The Reorganized Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

### 13.9 *Ordinary Course.*

From and after the Confirmation Date, and subject to any FCC approval that may be required, the Debtors are authorized to and may enter into all transactions including, but not limited to, the retention of professionals, and pay and fees and expenses incurred thereby and in connection therewith, in the ordinary course of business, without the need for Bankruptcy Court approval. Moreover, from and after the Confirmation Date, the Debtors and the Reorganized Debtors are authorized to, and may enter into, all transactions necessary or appropriate to implement the Exit Financing, including, but not limited to, the payment of any fees, expenses or indemnification obligations incurred thereby and in connection therewith, which shall be entitled to administrative priority and which shall be binding on the Debtors or the Reorganized Debtors without the need for Bankruptcy Court approval.

### 13.10 *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors

34

and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

### 13.11  *Severability.*

If the Bankruptcy Court determines that any provision in this Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Debtors may modify this Plan in accordance with section 13.5 hereof so that such provision shall not be applicable to the holder of any Claim or Equity Interest.   Any such determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provisions of this Plan; or (ii) require the resolicitation of any acceptance or rejection of this Plan unless otherwise ordered by the Bankruptcy Court.

### 13.12  *No Admissions.*

If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against, or any interests in, any Debtor, (b) prejudice in any manner the rights of any Debtor or any other party in interest, or (c) constitute an admission of any sort by any Debtor or other party in interest.

### 13.13  *No Payment of Attorneys' Fees.*

Except for the fees of Professional Persons and the professionals of the Agents, the Second Lien Lead Investors and the Prepetition Lenders (as required pursuant to the terms of the Restructuring Agreement and/or applicable Bankruptcy Court orders), no attorneys' fees shall be paid by the Debtors with respect to any Claim or Equity Interest unless otherwise specified herein, the Confirmation Order or other Final Order of the Bankruptcy Court.

### 13.14  *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> NEXTMEDIA GROUP, INC.
> 6312 South Fiddlers Green Circle, Suite 205E
> Greenwood Village, Colorado 80111
> Attention:  Eric W. Neumann
> Telephone:  (303) 694-4511
> Facsimile:  (801) 346-9775

DAL:753541.13

with a copy to:

ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Attention: Jason S. Brookner and John E. Quattrocchi
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

-- and--

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Attention: Paul N. Heath
Telephone:  (302) 651-7590
Facsimile:  (302) 498-7590

## 13.15  *Governing Law.*

(a)     Except to the extent that the Bankruptcy Code or other federal law is applicable, including but not limited to the Communications Act of 1934, as amended, and the written rules, regulations and policies promulgated by the FCC, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

(b)     Notwithstanding anything herein to the contrary, the Reorganized Debtors shall comply with the Communications Act of 1934, as amended, and the written rules, regulations and orders promulgated thereunder by the FCC.  No transfer of control to the Reorganized Debtors of any federal license issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such transfer of control pursuant to applicable FCC regulations.  The FCC's rights and powers to take any action pursuant to its regulatory authority over the transfer of control to the Reorganized Debtors including, but not limited to, imposing any regulatory conditions on such transfer, are fully preserved and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

DAL:753541.13

Dated: March 18, 2010
      Wilmington, Delaware

**NEXTMEDIA INVESTORS LLC**

By: /s/ Eric Neumann
    its: Chief Financial Officer

**NEXTMEDIA GROUP, INC.**

By: /s/ Eric Neumann
    its: Vice President

**NEXTMEDIA OPERATING, INC.**

By: /s/ Eric Neumann
    its: Vice President

**NM LICENSING LLC**

By: /s/ Eric Neumann
    its: Vice President

**NEXTMEDIA OUTDOOR, INC.**

By: /s/ Eric Neumann
    its: Vice President

**NM TEXAS, INC.**

By: /s/ Eric Neumann
    its: Vice President

**NEXTMEDIA NORTHERN COLORADO, INC.**

By: /s/ Eric Neumann
    its: Vice President

**NEXTMEDIA FRANCHISING, INC.**

By: /s/ Eric Neumann
    its: Vice President


**NEXTMEDIA OUTDOOR, LLC**

By: /s/ Steven Dinetz
    its: Manager


**ANDREWS KURTH LLP**
Jason S. Brookner
Texas State Bar No. 24033684
Monica S. Blacker
Texas State Bar No. 00796534
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

--and--

**RICHARDS, LAYTON & FINGER, P.A.**
Paul N. Heath (Bar No. 3704)
Michael J. Merchant (Bar No. 3854)
Chun I. Jang (Bar No. 4790)One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7590
Facsimile: (302) 498-7590

**ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION**

## SCHEDULE 9.1

None.