

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NEXTMEDIA GROUP, INC., *et al.*, | § | Case No. 09-14463 (PJW) |
| | § | |
| Debtors.[1] | § | Jointly Administered |
| | § | |
| | § | **Re: Docket Nos. 192, 243, 254, 255** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING**
**DEBTORS' MODIFIED AMENDED JOINT CHAPTER 11 PLAN**
**OF REORGANIZATION**

Upon the Amended Joint Chapter 11 Plan of Reorganization filed by NextMedia Group, Inc. and its affiliated debtors in the above-referenced chapter 11 cases (collectively, the "Debtors"), on February 17, 2010 [Docket No. 192], as modified on March 18, 2010 [Docket No. 255] (the "Plan"),[2] and the plan supplement filed on March 12, 2010 [Docket No. 243] as supplemented on March 18, 2010 [Docket No. 254] (the "Plan Supplement"); and this court (the "Court") having entered, after due notice and a hearing, orders [Docket No. 187] (the "Disclosure Statement Order") and Docket No. 191 (the "Solicitation Order")] dated February 17, 2010, (i) approving the Amended Disclosure Statement for Debtors' Plan (the "Disclosure Statement"); (ii) approving the procedures to solicit acceptances of the Debtors' Plan, and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of their taxpayer identification numbers, are: NextMedia Group, Inc. ("NM Group") (0791); NextMedia Investors LLC ("NM Investors") (9403); NextMedia Operating, Inc. ("NM OpCo") (5397); NM Licensing LLC ("NM Licensing") (5396); NextMedia Outdoor, Inc. ("NM Outdoor") (5398); NM Texas, Inc. ("NM Texas") (4229); NextMedia Northern Colorado, Inc. ("NM Northern Colorado") (8422); NextMedia Franchising, Inc. ("NM Franchising") (9913); and NextMedia Outdoor, LLC ("Outdoor LLC") (9700). The Debtors' corporate headquarters are located at 6312 S. Fiddler's Green Circle, #205E, Greenwood Village, Colorado 80111.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

(iii) scheduling a hearing and establishing notice and objection procedures for confirmation of the Debtors' Plan; and the Disclosure Statement and Plan having been distributed or made available to holders of Claims against and Equity Interests in the Debtors and other parties in interest as provided in such Disclosure Statement Order and Solicitation Order; and upon the hearing to consider confirmation of the Plan conducted on March 22, 2010 (the "Confirmation Hearing"); and good and sufficient notice of the Plan and the Confirmation Hearing having been provided to holders of Claims against and Equity Interests in the Debtors in accordance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the orders of this Court, as established by the affidavits of service, mailing, and/or publication filed with the Court (the "Notice Affidavits"),[3] and such notice being sufficient under the circumstances and no other or further notice being required; and after full consideration of (i) the Debtors' Memorandum of Law in Support of Confirmation of the Plan, dated March 18, 2010 [Docket No. 258], (ii) the declarations in support of confirmation of the Plan, each filed on March 18, 2010 by Eric W. Neumann [Docket No. 257] (the "Neumann Declaration") and George Varughese [Docket No. 256] (the "Varughese Declaration"); and (iii) the declaration filed by the Debtors' Court-appointed voting and solicitation agent, BMC Group, Inc. ("BMC"), dated March 19, 2010, regarding the methodology applied to the tabulation of the voting results with respect to Plan [Docket No. 278] (the "BMC Declaration"); and all objections to confirmation of the Plan having been withdrawn, resolved, or otherwise overruled or addressed as set forth herein or by separate further order of the Court; and the entire record of these Chapter 11 Cases, the record made at the Confirmation Hearing and the arguments of counsel and all of the evidence adduced thereat; and the Court

---

[3]   *See* Docket Nos. 204 (Aff. of Mailing of Solicitation Packages), 234 (Aff. of Publication Notice), 247 (Aff. of Mailing for Plan Supplement).

having determined, based upon all of the foregoing, that the Plan should be confirmed; and after due deliberation and good cause appearing therefor, the Court hereby

### FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:

A.   <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record at the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### JURISDICTION AND VENUE

B.   <u>Exclusive Jurisdiction, Venue, Core Proceeding</u>.   This Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(a), (l) and (o), and this Court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### CHAPTER 11 CASES

C.   <u>Commencement of the Chapter 11 Cases</u>.  On December 21, 2009 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  By order of the Court dated December 22, 2009, the Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered.  The Debtors have been operating their businesses and managing their properties

as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee, trustee or examiner has been appointed in these Chapter 11 Cases.

D.  <u>Judicial Notice</u>.  The Court takes judicial notice of (i) as appropriate, Proofs of Claims filed in the Debtors' Chapter 11 Cases and (ii) the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and pleadings reflected therein including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

## SOLICITATION AND NOTICE

E.  <u>Solicitation and Notice</u>.  On February 17, 2010, the Court entered (i) the Disclosure Statement Order, approving the Disclosure Statement and finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code and (ii) the Solicitation Order which, among other things, established procedures for the Debtors' solicitation of votes on the Plan.  The following materials (collectively, the "<u>Solicitation Materials</u>") were served upon parties in interest in compliance and in accordance with the Bankruptcy Rules, the Disclosure Statement Order and the Solicitation Order, as applicable:

- the Plan;
- the Disclosure Statement;
- the Disclosure Statement Order;
- the Ballots (as defined in the Solicitation Order);
- the Confirmation Hearing Notice (as defined in the Solicitation Order); and
- Notices of Non-Voting Status (as defined in the Solicitation Order).

As described in the BMC Declaration and the Notice Affidavits (a) the service of the Solicitation Materials was adequate and sufficient under the circumstances of these Chapter 11 Cases and

4

(b) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Solicitation Order was timely provided in compliance with the Bankruptcy Rules, the Disclosure Statement Order and the Solicitation Order.

        F.    <u>Voting</u>. Votes on the Plan were solicited after disclosure to holders of Claims against and Equity Interests in the Debtors of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the BMC Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

        G.    <u>Plan Supplement</u>. On March 12, 2010, as supplemented on March 18, 2010, the Debtors filed the Plan Supplement in accordance with the terms of the Plan, which includes the following documents:

- New NextMedia Governing Documents;
- Commitment Letter;
- New Employment Agreements;
- New Shareholders Agreement (labeled as "Stockholders Agreement");
- Warrant Agreement;
- Management Stockholders Agreement;
- Subscription Agreement;
- Registration Rights Agreement;
- Management Incentive Plan (labeled as "Management Stock Option Agreement");
- Non-Qualified Stock Option Agreement; and
- Disclosure of Members of New Board.

All such materials comply with the terms of the Plan, and the filing and notice of such documents was good, proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is or shall be required.

## COMPLIANCE WITH THE REQUIREMENTS OF
## SECTION 1129 OF THE BANKRUPTCY CODE

H.      Burden of Proof.  The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.

I.      Bankruptcy Rule 3016(a).  The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

J.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Expense Claims, Priority Tax Claims and DIP Claims, which need not be classified, Article III of the Plan designates eleven (11) Classes (inclusive of sub-Classes) of Claims against and Equity Interests in the Debtors.  As required by section 1122(a) of the Bankruptcy Code, the Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.   Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not effect unfair discrimination between holders of Claims and Equity Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)      Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Articles III and V of the Plan specify that Classes 1, 2a, 2b, 4, 5 and 6 are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

RLF1 3551545v.1

(iii)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III and V of the Plan specify that Classes 3a, 3b, 7, 8, 9, 10 and 11 are impaired and Article IV of the Plan sets forth the treatment of such impaired Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)    No Discrimination (11 U.S.C. § 1123(a)(4)). Article IV of the Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment in respect of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents contained in the Plan Supplement provide for adequate and proper means for implementation of the Plan, including, without limitation (a) the continued corporate existence of the Debtors; (b) the corporate constituent documents that will govern the Reorganized Debtors after the Effective Date including, without limitation, the New NextMedia Governing Documents; (c) the entry into, and incurrence of new indebtedness under, the Exit Financing; (d) consummation of the transactions contemplated by the Restructuring Agreement, including consummation of the Equity Investment, adoption of the Management Incentive Plan, entry into the Management Employment Agreements, and entry into the Subscription Agreement, Warrant Agreement, the New Shareholders Agreement and Registration Rights Agreement by the parties thereto; (e) the cancellation of the Equity Interests in NM Investors, NM Texas, NM Franchising and Outdoor LLC, and the dissolution of such entities; (f) the issuance of New NextMedia Common Stock; (g) the cancellation of certain existing agreements, obligations, instruments, and interests; (h) the vesting of the assets of the Debtors' estates in the

Reorganized Debtors; and (i) the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents related to the foregoing, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The New NextMedia Governing Documents prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code (other than any warrants) and provide for an appropriate distribution of power among voting classes. The definition of *"New NextMedia Governing Documents"* in the Plan also specifically defines such documents as including the 1123(a)(6) prohibition (other than with respect to any warrants). As a result, section 1123(a)(6) of the Bankruptcy Code is satisfied.

(vii)    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Reorganized Debtors' initial directors and officers are set forth in the Plan Supplement and the New NextMedia Governing Documents set out procedures for the selection of subsequent directors and officers of each Reorganized Debtor. These matters are also addressed by sections 6.3(m) and (n) of the Plan. Such procedures are consistent with the interests of creditors and equity holders and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

K.    Additional Plan Provisions (11 U.S.C. § 1123(b)). The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

(i)    Impairment/Unimpairment of Any Class of Claims or Interests (§ 1123(b)(1)). Pursuant to the Plan, Classes 1, 2a, 2b, 4, 5 and 6 are unimpaired and Classes 3a, 3b, 7, 8, 9, 10 and 11 are impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

RLF1 3551545v.1

(ii)     Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)).  Article IX of the Plan provides for the assumption of the Debtors' executory contracts and unexpired leases, effective as of the Effective Date, except for any executory contract or unexpired lease that (a) was previously assumed, assumed and assigned or rejected pursuant to an Order of the Bankruptcy Court entered on or before the Effective Date, (b) previously expired or terminated by its own terms, (c) is the subject of a motion to assume, assume and assign or reject filed on or prior to the Effective Date or (d) is designated in Schedule 9.1 to the Plan as an executory contract or unexpired lease to be rejected.

(iii)     Other Appropriate Provisions (11 U.S.C. § 1123(b)(2)).   The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code including, without limitation, provisions for (a) distributions to holders of Claims and Equity Interests, (b) approval of and authorization to enter into the Exit Financing, (c) retention of, and right to enforce, sue on, settle, or compromise (or refuse to do any of the foregoing with respect to) certain claims and causes of action against third parties, to the extent not waived and released under the Plan, (d) resolution of Disputed Claims, (e) allowance of certain Claims, (f) indemnification obligations, (g) releases by Debtors of certain parties, (h) releases by holders of Claims and Equity Interests, and (i) exculpations of certain parties.

L.     Cure of Defaults (11 U.S.C. § 1123(d)).  Section 9.3 of the Plan provides for the satisfaction of any monetary amounts by which any executory contract or unexpired lease to be assumed pursuant to the Plan is in default, in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

RLF1 3551545v.1

M.     The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtors have complied with the applicable provisions of the Bankruptcy Code.  Specifically:

(a)     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code;

(b)     The Debtors have complied with all provisions of the Bankruptcy Code and Bankruptcy Rules, except as otherwise provided or permitted by orders of this Court; and

(c)     The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in transmitting the Plan, the Disclosure Statement, the Ballots, the Election Forms (as defined in the Election Procedures Motion), and related documents and notices and in soliciting and tabulating the votes on the Plan.

N.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have proposed the Plan (including the documents contained in the Plan Supplement and all other documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and the other proceedings in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors.  The Plan was negotiated at arms' length among representatives of the Debtors, the Second Lien Lead Investors, the DIP Lenders, the Agents and the Debtors' Prepetition Lenders.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms' length, are consistent with sections 105, 1122, 1123(b)(6),

1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization.

O.     <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

P.     <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after confirmation of the Plan have been fully disclosed in the Plan and in the Plan Supplement or in the record at the Confirmation Hearing, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy.  The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have also been fully disclosed in the Plan Supplement.

Q.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction.

R.     <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  Classes 3a, 3b, 7, 8, 9, 10 and 11 are impaired under the Plan.  The liquidation analysis provided in the Disclosure Statement (and as testified to in the

Varughese Declaration and the Neumann Declaration (i) is credible, (ii) has not been controverted by other evidence, (iii) is based on reasonable and sound assumptions, and (iv) provides a reasonable estimate of the liquidation values of the Debtors' estates upon conversion to a case under chapter 7 of the Bankruptcy Code. Each holder of (x) a Claim or Equity Interest in Classes 3a, 3b, 7 and 8 either has accepted the Plan, or will receive or retain under the Plan on account of its Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the applicable Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date and (y) an Equity Interest in Classes 9, 10 and 11 will receive or retain under the Plan an account of its Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the applicable Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. Accordingly, the Plan satisfies the "best interest of creditors" test with respect to each of Classes 3a, 3b, 7, 8, 9, 10 and 11 under section 1129(a)(7) of the Bankruptcy Code.

S.    Acceptance by/Unimpairment of Certain Classes (11 U.S.C. § 1129(a)(8)). Classes 1, 2a, 2b, 4, 5 and 6 are unimpaired by the Plan and holders of Claims in such Classes are thus conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 3a, 3b, 7, 8, 9, 10 and 11 are impaired by the Plan. With respect to Classes 3a, 3b, 7 and 8, each of which is impaired by and entitled to vote to accept or reject the Plan, such Classes have accepted the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, as applicable, as established by the BMC Declaration. Section 1129(a)(8) of the Bankruptcy Code has, therefore, been satisfied with respect to Classes 1, 2a, 2b, 3a, 3b, 4, 5, 6, 7 and 8. Holders of Equity Interests in Classes 9, 10 and 11 will neither receive nor retain any

property under the Plan on account of such Equity Interests and are thus conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. As a result, section 1129(a)(8) of the Bankruptcy Code cannot be met with respect to Classes 9, 10 and 11. Section 1129(b) of the Bankruptcy Code must therefore be met with respect to Classes 9, 10 and 11.

T.    Treatment of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and DIP Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and DIP Claims pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

U.    Acceptance By At Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). Classes 3a, 3b, 7, 8, 9, 10 and 11 are impaired. Classes 3a and 3b have voted to accept the Plan without including any acceptance of the Plan by any Insider. The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

V.    Feasibility (11 U.S.C. § 1129(a)(11)). The evidence proffered or adduced at the Confirmation Hearing and set forth in the Neumann Declaration and the Varughese Declaration (i) is credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their businesses in the ordinary course, and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

W.    Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees due and payable pursuant to section 1930 of chapter 123 of title 28, United States Code, as determined by the

Court, have been or will be paid by the Debtors on the Effective Date pursuant to section 13.1 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

X.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtors do not pay any "retiree benefits," as defined in section 1114 of the Bankruptcy Code and section 1129(a)(13) of the Bankruptcy Code is thus inapplicable in these Chapter 11 Cases.

Y.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Z.     Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA.     No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  The Debtors are each moneyed, business, or commercial corporations, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  Classes 9, 10 and 11 are deemed to reject the Plan.  Accordingly, in order for the Plan to be confirmed with respect to such Classes, the Plan must not discriminate unfairly, and must be fair and equitable with respect to such Classes.  The Plan does not discriminate unfairly with respect to Classes 9, 10 and 11 because such Classes are being treated substantially equally with other Classes of equal rank in NM Texas, Outdoor LLC and NM Franchising, respectively.  Indeed, each of Class 9, 10 and 11 is the most junior Class of each of NM Texas, Outdoor LLC and NM

Franchising, respectively. The Plan is also fair and equitable with respect to Classes 9, 10 and 11 as no holder of any interest junior to the Equity Interests in such Classes will receive or retain under the Plan on account of such junior interest any property. Section 1129(b) of the Bankruptcy Code has, therefore, been satisfied, and the Plan may be confirmed over the deemed rejection of the Plan by Classes 9, 10 and 11.

CC. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan filed in these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code has been satisfied.

DD. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

EE. <u>Not Small Business Cases (11 U.S.C. § 1129(e))</u>. These Chapter 11 Cases are not small business cases and accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

## PLAN MODIFICATIONS

FF. The modifications filed on March 18, 2010 [Docket No. 255] including, without limitation, the modification to the definition of "Exit Financing," do not materially and adversely affect or change the treatment of any holder of a Claim or Equity Interest. Accordingly, pursuant to Bankruptcy Rule 3019, such modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of acceptances or rejections under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast votes on the Plan. The filing of the modifications and disclosure of same on the record at the Confirmation Hearing

constitute due and sufficient notice thereof under the circumstances of these Chapter 11 Cases, and no other or further notice was or is required.

## COMPLIANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE

GG.     Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record before the Court in these Chapter 11 Cases, the Debtors, the DIP Lenders, the Second Lien Lead Investors, the Agents, the Prepetition Lenders and each of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys, agents, successors and assigns, and all other persons involved in the solicitation process, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities arising out of, relating to or connected with the administration of the Chapter 11 Cases, the negotiation and pursuit of approval of the Disclosure Statement, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan and the property to be distributed under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

## PLAN IMPLEMENTATION

HH.     The terms of the Plan including, without limitation, the documents contained in the Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications of any of the foregoing (collectively, the "Plan Documents") are incorporated by reference and are, except as

addressed herein or in any future order of the Court contemplated by this Confirmation Order, proper in all respects, and constitute an integral part of this Confirmation Order.

II.     The Plan and the Plan Documents have been negotiated in good faith and at arms' length and shall, on and after the Effective Date, constitute legal, valid, binding and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.

JJ.     Pursuant to section 1142(a) of the Bankruptcy Code, except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Confirmation Order, the Plan and the Plan Documents will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.  The Debtors, the DIP Lenders, the Second Lien Lead Investors, the Agents, the Prepetition Lenders and all of their respective members, managers, officers, directors, agents, advisors, attorneys, employees, equity holders, partners, affiliates, funds, agents and representatives will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, transfers and documentation contemplated thereby or by the Plan Documents and (ii) take any actions authorized and directed by this Confirmation Order.

KK.     <u>Exit Financing</u>.  The availability and funding of the proceeds under the Exit Financing are necessary to the consummation of the Plan, the closing of the transactions contemplated by the Plan, and the operation of the Reorganized Debtors.[4]  The terms and conditions of the Exit Financing are fair and reasonable under the circumstances.  The Debtors

---

[4]     For the avoidance of doubt, the term "Exit Financing" includes the financing described in the definition of "Exit Financing" in the Plan, and any financing obtained pursuant to the engagement or similar letter to be entered into among NM OpCo, Credit Suisse Securities (USA) LLC ("<u>CS</u>") and Banc of America Securities LLC ("<u>BoA</u>"), or any other engagement or similar letter the Debtors may enter into with a potential agent for Exit Financing (an "<u>Exit Financing Letter</u>").  CS and BoA, together, or any other agent engaged pursuant to an Exit Financing Letter shall be referred to herein as an "<u>Exit Agent</u>."

provided sufficient and adequate notice of the Exit Financing. The execution, delivery, and performance by the Debtors or Reorganized Debtors, as the case may be, of any documents in connection with the Exit Financing (including entry into any engagement or similar letters with potential Exit Agents), the payment of any fees or reimbursement of any expenses in connection therewith, and performance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Plan or this Confirmation Order. The financial accommodations to be extended pursuant to the Exit Financing are being extended in good faith, for legitimate business purposes, are supported by reasonably equivalent value and fair consideration and reflect the Debtors' exercise of reasonable business judgment and shall not be subject to recharacterization for any purposes whatsoever. Moreover, the Exit Financing has been negotiated in good faith and at arms' length, and shall not constitute a preferential transfer or fraudulent conveyance under the Bankruptcy Code or any other applicable non-bankruptcy law or otherwise constitute an avoidable transfer, and each party thereto may rely on the provisions of this Confirmation Order in closing the Exit Financing. The security interests and Liens granted in accordance with the Exit Financing shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law, or otherwise constitute an avoidable transfer.

LL. <u>Equity Investment</u>. The Equity Investment and all transactions, agreements and documents related thereto including, but not limited to, the Subscription Agreement, the New Shareholders Agreement, the Warrant Agreement and the Registration Rights Agreement (collectively, the "<u>Equity Investment Documents</u>") are essential elements of the Plan and entry into the Equity Investment Documents and consummation of the Equity

18

Investment pursuant thereto are in the best interests of the Debtors, their estates, their creditors and their equity holders. The Debtors have provided all interested parties with sufficient and adequate notice of, and an opportunity to be heard with respect to, the Equity Investment Documents. The terms and provisions of the Equity Investment Documents are approved pursuant to this Confirmation Order and shall, upon entry into such documents, be valid, binding, and enforceable in accordance with their terms and shall not be in conflict with any federal or state law.

MM. <u>Management Incentive Plan and New Employment Agreements</u>. The Debtors exercised sound business judgment in adopting the Management Incentive Plan and the New Employment Agreements. The Debtors have provided sufficient and adequate notice of the Management Incentive Plan and the New Employment Agreements to all parties in interest.

NN. <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

OO. <u>Issuance of Securities</u>. Pursuant to section 1145 of the Bankruptcy Code, the offer, issuance and distribution under the Plan of New NextMedia Common Stock is exempt from the requirements of the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder, and all other applicable securities laws.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

PP.     The Debtors have exercised sound business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases pursuant to Article IX of the Plan. Each assumption or rejection of an executory contract or unexpired lease as provided in section 9.1 of the Plan and Schedule 9.1 annexed to the Plan shall be legal, valid, and binding upon the applicable Reorganized Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies the requirements of section 365 of the Bankruptcy Code including, without limitation, section 365(d)(4).

## EXCULPATIONS, INJUNCTIONS AND RELEASES

QQ.     The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the exculpation, injunctions, stays and releases set forth in section 11.3, 11.4, 11.5 and 11.6 of the Plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the unopposed releases and injunctions set forth in sections 11.3, 11.4, 11.5 and 11.6 of the Plan if, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest, as reflected in the Restructuring Agreement, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable and reasonable, and (iv) are in the best interests of the Debtors, their estates, and parties in interest. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors and their estates, creditors and equity holders. The

releases of non-Debtors under the Plan (including the Agents, the Prepetition Lenders and the Second Lien Lead Investors) are fair to holders of Claims and Equity Interests and are necessary to the proposed reorganization, thereby satisfying the requirements of *In re Continental Airlines, Inc.*, 203 F.3d 203, 214 (3d Cir. 2000). Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the releases, exculpation, and injunctions provided for in sections 11.3, 11.4, 11.5 and 11.6 of the Plan. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunctions, exculpation, and releases set forth in Article XI of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunctions, exculpation and releases would seriously impair the Debtors' ability to confirm the Plan and reorganize.

## OTHER FINDINGS

RR. <u>Conditions Precedent to Confirmation</u>. The Debtors have satisfied all conditions precedent to confirmation set forth in section 10.1 of the Plan.

SS. <u>Retention of Jurisdiction</u>. This Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

TT. <u>Objections</u>. All parties have had a full and fair opportunity to litigate all issues raised by objections to confirmation of the Plan, or which might have been raised, and the objections to confirmation have been resolved or otherwise fully and fairly litigated.

## THE PLAN SATISFIES CONFIRMATION REQUIREMENTS

UU. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and shall be confirmed.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. <u>Confirmation</u>. The Plan shall be, and hereby is, confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan Documents are incorporated by reference into and are an integral part of the Plan and this Confirmation Order. A full and correct copy of the Plan confirmed by this Confirmation Order (including any modifications thereto made on the record at the Confirmation Hearing) is attached hereto as <u>Exhibit "A"</u>

2. <u>Solicitation and Notice</u>. Notice of the Confirmation Hearing and the solicitation of votes on the Plan complied with the terms of the Solicitation Order, were appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3. <u>Objections</u>. All objections, responses, statements, and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein or addressed by this Confirmation Order or any future order of the Court contemplated by this Confirmation Order, are overruled.

4. <u>Binding Effect</u>. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against or Equity Interest in the Debtors and such holder's respective successors and assigns, whether or not such

RLF1 3551545v.1

Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

5.    Limited Substantive Consolidation.  On the Effective Date, and other than with respect to the Debtors to be dissolved under the Plan, all of the Debtors and their Estates shall, for purposes of the Plan only, be deemed merged and (i) all assets and liabilities of such Debtors shall be treated as though they were merged, (ii) all guarantees of such Debtors of payment, performance or collection of obligations of any other of such Debtors shall be eliminated and cancelled, (iii) all joint obligations of such Debtors and all multiple Claims against such entities on account of such joint obligations, shall be considered a single Claim against such Debtors, and (iv) any Claim filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date.  Such substantive consolidation shall not (other than for purposes of voting, treatment, and distribution under the Plan) affect (x) the legal and/or corporate structures of the Debtors or the Reorganized Debtors (other than with respect to those Debtors to be dissolved under the Plan) or (y) any intercompany claims.

6.    Continued Corporate Existence.  Subject to the transactions contemplated by the Plan, and except as provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate legal entity, with all the powers afforded to it under applicable law in the jurisdiction in which such Debtor is organized and pursuant to the applicable New NextMedia Governing Documents, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date and without further order of this Court.

RLF1 3551545v.1

7. <u>Vesting of Assets (11 U.S.C. § 1141(b), (c))</u>. As set forth in section 11.1 of the Plan, as of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates shall vest in the applicable Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan or this Confirmation Order. The vesting, on the Effective Date, of the property of the Debtors' estates in the Reorganized Debtors does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

8. <u>Claims of Prepetition Lenders</u>. On the Confirmation Date, (i) the First Lien Lenders shall be deemed to have an Allowed First Lien Claim in the aggregate amount of $165,350,100.81, in principal, accrued but unpaid interest and the unpaid swap obligation (plus certain additional fees and expenses), subject to reduction by any payments made by the Debtors prior to the Effective Date, and (ii) the Second Lien Lenders shall be deemed to have an Allowed Second Lien Claim in the amount of $89,403,737.74 in principal and accrued but unpaid interest (plus certain additional fees and expenses), which respective Claim amounts shall not subject to any avoidance, recharacterization, disallowance, subordination, recoupment, setoff, defense or counterclaim. Upon satisfaction of the Allowed First Lien Claim and the Allowed Second Lien Claim as contemplated by Article IV of the Plan and herein, such Claims shall be deemed satisfied in full and discharged and all Liens, mortgages, deeds of trust and other security interests granted to secure such Claims shall be deemed cancelled, terminated, released, discharged, and extinguished and shall be of no further force or effect. The Debtors, the Reorganized Debtors or their designees are authorized to make such filings or releases as necessary to effectuate the provisions of this paragraph. To the extent that either of the Agents or any of the Prepetition Lenders (each a "<u>Filing Lender</u>") have filed or recorded publicly any

Liens, financing statements and/or security interests to secure the Debtors' obligations under the First Lien Credit Agreement or the Second Lien Credit Agreement, as the case may be, such Filing Lender shall promptly take any and all commercially reasonable steps as may be reasonably requested by the Debtors (at the expense of the Debtors) that are necessary to cancel, terminate, release, discharge and/or extinguish such publicly-filed Liens, financing statements and/or security interests.

9.    DIP Claims.  On the Effective Date, all DIP Claims shall be indefeasibly repaid in full in cash, as contemplated by section 2.4 of the Plan.  Upon payment of the DIP Claims, all mortgages, deeds of trust, Liens, and other security interests granted to secure the amounts advanced under the DIP Facility shall be deemed cancelled, terminated, released, discharged and extinguished and shall be of no further force or effect.  The Debtors, the Reorganized Debtors or their designees are authorized to make such filings or releases as necessary to effectuate the provisions of this paragraph.  To the extent any of the DIP Lenders have filed or recorded publicly any Liens, financing statements and/or security interests to secure the Debtors' obligations under the DIP Facility, such DIP Lender shall promptly take any and all commercially reasonable steps requested by the Debtors (at the expense of the Debtors) that are necessary to cancel, terminate, release, discharge and/or extinguish such publicly-filed Liens, financing statements and/or security interests.

10.    Releases of Liens.  Except as otherwise provided in the Plan or this Confirmation Order, upon the Effective Date, any Lien, mortgage, deed of trust and other security interest against the property of any Debtor shall be deemed cancelled, terminated, released, discharged and extinguished and all right, title, and interest of any holder of such Lien, mortgage, deed of trust, financing statement and other security interest, including any rights to

any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns. The Debtors, the Reorganized Debtors or their designees are authorized to make such filings or releases as necessary to effectuate the provisions of this paragraph. Nothing in this Confirmation Order shall affect the obligations of the Second Lien Lenders to the Second Lien Agent under section 9.6 of the Second Lien Credit Agreement.

11.    Retained Assets.  To the extent that the succession to assets of the Debtors by the Reorganized Debtors pursuant to the Plan are deemed to constitute "transfers" of property, such transfers of property to the Reorganized Debtors (a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest the Reorganized Debtors with good title to such property, free and clear of all Liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Confirmation Order, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) do not and shall not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, by laws affecting successor or transferee liability.

12.    Notice of Confirmation Date and Effective Date.

(a)    Notice of Entry of Confirmation Order.  Within five (5) Business Days after the Confirmation Date, the Debtors shall mail to all parties in interest in these Chapter 11 Cases notice of (i) the entry of this Confirmation Order and (ii) the last date to file (A) requests for payment of Administrative Expense Claims pursuant to section 2.1 of the Plan and Fee Claims pursuant to section 2.2 of the Plan, and (B) Claims arising from the rejection of any executory contracts and unexpired leases pursuant to section 9.5 of the Plan.

(b)     Notice of Effective Date.  Within five (5) Business Days after the Effective Date, the Debtors shall mail to all parties in interest in these Chapter 11 Cases notice of the occurrence of the Effective Date.

13.     Administrative Expense Claims.

(a)     Filing.  All holders of Administrative Expense Claims arising from the Petition Date through the Effective Date, other than Professional Persons holding Fee Claims or the claims of the Exit Agent, the Agents or the Second Lien Lead Investors for fees and expenses, shall file with the Court a request for payment of such Claims within thirty (30) days after the Effective Date.  Any such request shall be served on the Debtors, their counsel and counsel to the Second Lien Lead Investors and shall, at a minimum, set forth (i) the name of the holder of the Administrative Expense Claim, (ii) the amount of the Administrative Expense Claim, and (iii) the basis for the Administrative Expense Claim.  A failure to file any such request in a timely fashion shall result in the discharge of such Administrative Expense Claim and its holder shall be forever barred from asserting such Administrative Expense Claim against the Debtors.

(b)     Allowance.  An Administrative Expense Claim for which a request for payment has been timely filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is thirty (30) days after such Administrative Expense Claim is filed.  If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of this Court.

(c)     Payment.   Except  to  the  extent  that  a  holder  of  an  Allowed Administrative Expense Claim requests a different treatment of such Administrative Expense

27

Claim, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full satisfaction of such Administrative Expense Claim, Cash in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of (i) the Effective Date or (ii) ten (10) days after entry of a Court order allowing such Administrative Expense Claim.

14. <u>Fee Claims</u>. Every Professional Person holding a Fee Claim that has not previously been the subject of a final fee application and accompanying Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is thirty (30) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable rules and regulations contained in the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The last date to object to any final fee application shall be the twenty-fourth (24th) day after such fee application has been filed with the Bankruptcy Court. All final fee applications shall be set for hearing on the same day, as the Court's calendar permits, after consultation with counsel to the Debtors. Allowed Fee Claims shall be paid in full in Cash by the Debtors on the later of (A) the Effective Date or (B) ten (10) days after entry of a Court order allowing such Fee Claim.

15. <u>Record Date for Distributions</u>. The Distribution Record Date shall be March 22, 2010. The Reorganized Debtors and the Disbursing Agent shall have no obligation to recognize any transfer of any Equity Interest or indebtedness under the First Lien Credit Agreement or the Second Lien Credit Agreement after the Distribution Record Date and shall be entitled instead to recognize for all purposes under the Plan and this Confirmation Order, including to effect distributions under the Plan, only those record holders stated on the transfer ledgers or registers maintained by the Debtors and the Agents as of the close of business on the Distribution Record Date.

16.     <u>Unclaimed Distributions</u>.   Any distributions under the Plan that are unclaimed at the expiration of one hundred eighty (180) days after the Effective Date shall revert to the Reorganized Debtors and the Claim or Equity Interest of any holder with respect to such property or interest in property shall be discharged and forever barred, notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

17.     <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.

(a)     <u>General</u>.  Pursuant to section 9.1 of the Plan, except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each Debtor is hereby deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned, or rejected by the Debtor pursuant to an order of the Court entered on or before the Effective Date, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Effective Date or (iv) is set forth in schedule 9.1 to the Plan as an executory contract or unexpired lease to be rejected.   This Confirmation Order shall constitute approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of the assumption or rejection of executory contracts and unexpired leases as described above upon the occurrence of the Effective Date.  Such assumption or rejection shall be legal, valid, and binding upon the applicable Reorganized Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies the requirements of section 365 of the Bankruptcy Code including, without limitation, section 365(d)(4).

(b)     <u>Bar Date for Rejection Damage Claims</u>.  All Claims arising out of the rejection of executory contracts or unexpired leases pursuant to the Plan must be filed with

the Court and served upon the applicable Debtor and its counsel no later than thirty (30) days after the earlier of (i) the date of entry of a Court order (including this Confirmation Order) approving such rejection or (ii) the Effective Date; *provided, however*, that any Claim arising out of the rejection of an executory contract or unexpired lease that is filed after the Effective Date of the Plan shall be served on the Reorganized Debtors. Any rejection Claims not filed within such time shall be forever barred from assertion against the Debtors, the Reorganized Debtors, their Estates and their property, shall be unenforceable and shall be discharged.

(c) <u>Cure of Defaults</u>. Any monetary amounts by which any executory contract or unexpired lease to be assumed under the Plan are in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors upon assumption thereof. If there is a dispute regarding the nature or amount of any such Cure, then Cure shall occur following the entry of a final order of this Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

18. <u>General Authorization</u>. Pursuant to sections 1142(a) and (b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law, and any other comparable or similar provision of the business corporation laws of any other State, each of the Debtors and the Reorganized Debtors is hereby authorized and empowered to, and shall, take such actions and perform such other acts as may be reasonably necessary or appropriate to comply with or implement the Plan including, but not limited to (i) entry into the New Employment Agreements, (ii) entry into the Exit Financing, including the Exit Financing Documents (defined below) and the payment of fees, expenses and indemnification obligations contemplated thereby, (iii) entry into the Equity Investment Documents and consummation of the Equity Investment, (iv) selection of the directors and officers of the Reorganized Debtors, (v)

the distribution of New NextMedia Common Stock (and warrants, as applicable), (iv) the adoption of the Management Incentive Plan, and (vi) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by any holders of Equity Interests or New NextMedia Common Stock, the managing members, directors or officers of the Debtors or the Reorganized Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors. Such authorizations and approvals shall be effective notwithstanding any requirements under non-bankruptcy law.

19. <u>Plan Supplement</u>. The documents contained in the Plan Supplement and any amendments, modifications and supplements thereto, the Plan Documents and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referenced therein), and the execution, delivery, and performance thereof and thereunder by the Debtors are authorized and approved including, but not limited to the New NextMedia Governing Documents, the Exit Financing Documents, the Employment Agreements, the Subscription Agreement, the New Shareholders Agreement, the Registration Rights Agreement, the Warrant Agreement and the Management Incentive Plan. Without need for further order or authorization of the Bankruptcy Court, the

RLF1 3551545v.1

Debtors and the Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement or the Plan Documents that do not materially modify the terms of such documents and are consistent with the Plan and this Confirmation Order.

20. <u>Exit Financing</u>. The Exit Financing is hereby approved. Each of the Debtors and the Reorganized Debtors are authorized to execute, deliver, enter into, file, or record all documents necessary or appropriate to enter into and perform all obligations under the Exit Financing, including, but not limited to, the Exit Financing Letter or Letters (collectively, the "<u>Exit Financing Documents</u>") and to take such other actions as may be necessary or appropriate to effectuate the Exit Financing arrangements, and perform all of their obligations related thereto, including, without limitation, payment of fees, expenses and indemnification obligations incurred under the Exit Financing Documents (including without limitation, under the Exit Financing Letter or Letters) or otherwise associated with any Exit Financing, with all such fees, expenses and indemnification obligations to be treated as administrative expenses under sections 503(b) and 507(a)(2) of the Bankruptcy Code. Each of the Debtors' and the Reorganized Debtors' entry into the Exit Financing Letter or Letters and the other Exit Financing Documents, and the incurrence of the indebtedness thereunder on or as soon as reasonably practicable following the Effective Date, are hereby authorized and approved without the need for any further corporate action or further order of this Court and without any further action by holders of Claims or Equity Interests. The Exit Financing Documents (including, without limitation, the Exit Financing Letter or Letters) shall constitute valid, legal, binding and authorized obligations of each of the Debtors and the Reorganized Debtors, enforceable in accordance with their terms. On the Effective Date, all of the liens and security interests to be granted in accordance with the

Exit Financing shall be deemed to be approved and shall be valid, legal, binding and enforceable liens on the collateral granted thereunder.

21. <u>Equity Investment</u>. The Equity Investment is hereby approved. The Reorganized Debtors are authorized to execute, deliver, enter into file, or record the Equity Investment Documents and to take such other actions as may be necessary to effectuate the Equity Investment and the Equity Investment Documents, and perform all obligations contemplated thereby. Upon entry into the Equity Investment Documents, such documents shall be valid, binding, and enforceable in accordance with their terms and shall not be in conflict with any federal or state law.

22. <u>Management Incentive Plan and New Employment Agreements</u>. Adoption of the Management Incentive Plan and entry into the New Employment Agreements by the Reorganized Debtors is hereby authorized and approved.

23. <u>Directors and Officers of Reorganized Debtors</u>. The appointment of the initial directors of the Reorganized Debtors as disclosed at or prior to the Confirmation Hearing is hereby approved without the need for any other consent or approval. The initial directors of the Reorganized Debtors shall be considered to have taken office at a point in time immediately following the Effective Date.

24. <u>Authorization of New NextMedia Common Stock</u>. Pursuant to section 6.4 of the Plan, Reorganized NM Group is hereby authorized to issue the New NextMedia Common Stock on or as soon as reasonably practicable following the Effective Date, without the need for any further corporate action, action by any other party, or further order of the Court.

25. <u>Securities Laws Exemption</u>. In accordance with section 1145(a) of the Bankruptcy Code, the offer and sale under the Plan of New NextMedia Common Stock will be

exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder, and under applicable state securities laws.

26.   <u>Payment of Statutory Fees</u>.   Each of the Debtors and the Reorganized Debtors, as applicable, shall pay any and all fees pursuant to 28 U.S.C. § 1930(a)(6) until the Chapter 11 Cases are converted, dismissed or closed.  The Debtors and the Reorganized Debtors, as applicable, shall also make any and all reports pursuant to Bankruptcy Rule 2015(a) as may be required by the U.S. Trustee.

27.   <u>Governmental Approvals Not Required.</u>   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan Documents, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

28.   <u>Filing and Recording</u>.   This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Equity Interests existing prior to such date have been unconditionally released, discharged, and terminated, except as otherwise provided in the Plan, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument.

34

Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan Documents and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

29.     <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  All sale transactions consummated by the Debtors and approved by the Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

30.     <u>Discharge of the Debtors</u>.  Pursuant to section 11.2 of the Plan, except as otherwise provided in the Plan, upon the Effective Date, and in consideration of the distributions to be made under the Plan, each holder (as well as any trustees or agents on behalf of each

holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date, regardless of whether or not (i) a proof of Claim or Equity Interest has been filed, (ii) such Claim or Equity Interest was Allowed, or (iii) the holder of such Claim or Equity Interest has voted to accept or reject the Plan. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Reorganized Debtors.

      31.    <u>Exculpation</u>. Pursuant to section 11.3 of the Plan, the Disbursing Agent, the DIP Lenders, the Second Lien Lead Investors, the Agents, the Exit Agent, the Prepetition Lenders, and each of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys, or agents, or any of their successors or assigns, shall not have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of approval of the Disclosure Statement, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be deemed to have acted in good faith in connection therewith and entitled to the protections of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein or in the

Plan, no party shall be exculpated from any liability based upon gross negligence or willful misconduct.

32. <u>Releases by Debtors</u>. Pursuant to section 11.4 of the Plan, on the Effective Date, effective as of the Confirmation Date, the Debtors shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, in law, equity or otherwise, including any claims, causes of action or remedies under Chapter 5 of the Bankruptcy Code or other applicable law, which they have or may have against any of their respective members, managers, officers or directors, the DIP Lenders, the Second Lien Lead Investors, the Agents, the Exit Agent or the Prepetition Lenders, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates, funds, and representatives and their respective property.

33. ***Third Party Releases***. Pursuant to section 11.5 of the Plan, ***upon the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, and except for the right to enforce the Plan, all Persons who have voted to accept the Plan or who are entitled, directly or indirectly, to receive a distribution thereunder, shall be deemed to forever release, waive and discharge the Debtors, the Reorganized Debtors, the DIP Lenders, the Second Lien Lead Investors, the Agents, the Exit Agents, the Prepetition Lenders, the members of the Debtors' respective boards of directors and boards of managers, and each of their respective constituents, principals, managers, officers, directors, employees, agents, representatives, attorneys, professionals, advisors, affiliates, funds, successors, predecessors,***

*and assigns of and from any and all Liens, claims, obligations, suits, judgments, damages, rights, remedies, causes of action, liabilities, encumbrances, security interests, Equity Interests or charges of any nature or description whatsoever relating to the Debtors, the Chapter 11 Cases or affecting property of the Debtors' Estates, whether known or unknown, discovered or undiscovered, scheduled or unscheduled, fixed, unliquidated or disputed, matured or unmatured, contingent or noncontingent, senior or subordinated, whether assertable directly or derivatively by, through, or related to the Debtors, against successors or assigns of the Debtors and the individuals and entities listed above, whether at law, in equity or otherwise, based upon any condition, event, act, omission, occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in any way arising out of, relating to or connected with the operation of the Debtors' businesses or the Chapter 11 Cases, all regardless of whether (a) a proof of Claim or Equity Interest has been filed or is deemed to have been filed, (b) such Claim or Equity Interest is Allowed or (c) the holder of such Claim or Equity Interest has voted to accept or reject the Plan, except for willful misconduct or gross negligence; provided, however, that nothing in this section shall be deemed to be, or act as a bar or injunction with respect to, the FCC's enforcement of its regulatory authority under applicable FCC rules and regulations.*

      34. <u>Injunction and Stay</u>.

      (a) *Except as otherwise expressly provided herein or in the Plan, all Persons or entities who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or*

*Equity Interest against any Reorganized Debtor or other entity released, discharged or exculpated under the Plan and this Confirmation Order, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor or any party released under the Plan or this Confirmation Order with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor, or against the property or interests in property of any Reorganized Debtor, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Reorganized Debtor, or against the property or interests in property of any Reorganized Debtor with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to section 11.5 of the Plan.*

(b)     Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising under or entered during the Debtors' Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

35.     <u>Preservation of Claims and Rights of Action</u>.  Pursuant to sections 6.6 and 11.8 of the Plan:

(a)     Except as otherwise provided in the Plan, this Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may, without the need for any further Court approval, enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the

Debtors or their Estates may hold against any Person or entity. The Reorganized Debtors or their successor(s) may pursue such retained Claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their successor(s) who hold such rights.

(b)     Except as otherwise provided in this Confirmation Order or in the Plan, including sections 11.4, 11.5 and 11.6 of the Plan, as of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, Claim, and demand whatsoever, whether known or unknown, in law, equity, or otherwise (collectively, "Causes of Action") accruing to the Debtors shall become assets of, and shall vest in, the Reorganized Debtors, and the Reorganized Debtors shall have the authority to commence and prosecute such Causes of Action for the benefit of the Debtors, the Reorganized Debtors or the Estates. After the Effective Date, the Reorganized Debtors shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon, or dismiss all such Causes of Action without Court approval.

(c)     In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of this Confirmation Order shall constitute the Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

36.     Modification of the Plan. Pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims and Equity Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified on March 18, 2010. No holder of a Claim or Equity Interest may

40

change its vote as a consequence of such modification. After the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims or Equity Interests under the Plan, with the consent of the Second Lien Lead Investors, the Debtors or the Reorganized Debtors may institute proceedings in this Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or this Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. A holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

37. Conditions to Effective Date. The Plan shall not become effective unless and until the conditions set forth in Article X of the Plan have been satisfied or waived pursuant to section 10.2 of the Plan.

38. Authorization to Consummate Plan. Notwithstanding Bankruptcy Rule 3020(e), but subject to Article X of the Plan, the Debtors are authorized to consummate the Plan upon entry of this Confirmation Order. The Debtors are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, Uniform Commercial Code financing statements, trust agreements, mortgages, indentures, security agreements, and bills of sale and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Plan, all transactions contemplated by the Plan, and all other agreements related thereto.

39. Effect of Failure of Conditions to Effective Date. In the event the conditions precedent specified in section 10.2 of the Plan have not been satisfied or waived in the manner set forth therein and in section 10.3 of the Plan, then (i) this Confirmation Order shall be

vacated and of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Debtors and all holders of Claims against and Equity Interests in the Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unaffected by the Plan; (iv) nothing contained in the Plan or this Confirmation Order shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors; and (v) the Plan shall be deemed withdrawn.

40. <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under section 1101 of the Bankruptcy Code.

41. <u>Retention of Jurisdiction</u>. Upon the Effective Date, the Bankruptcy Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

42. <u>Ordinary Course</u>. From and after the Confirmation Date, and subject to any FCC approval that may be required, the Debtors are authorized to and may enter into all transactions including, but not limited to, the retention of professionals, and pay and fees and expenses incurred thereby and in connection therewith, in the ordinary course of business, without the need for Bankruptcy Court approval. Moreover, from and after the Confirmation Date, the Debtors and the Reorganized Debtors are authorized to, and may enter into, all transactions necessary or appropriate to implement the Exit Financing, including, but not limited to, the payment of any fees, expenses or indemnification obligations incurred thereby and in connection therewith, which shall be entitled to administrative priority and which shall be

42

binding on the Debtors or the Reorganized Debtors without the need for Bankruptcy Court approval.

43. <u>Governing Law</u>.

(a) Except to the extent that the Bankruptcy Code or other federal law is applicable, including but not limited to the Communications Act of 1934, as amended, and the written rules, regulations and policies promulgated by the FCC, or to the extent an exhibit to the Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws that would require application of the laws of another jurisdiction.

(b) Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the Reorganized Debtors shall comply with the Communications Act of 1934, as amended, and the written rules, regulations and orders promulgated thereunder by the FCC. No transfer of control to the Reorganized Debtors of any federal license issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such transfer of control pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority over the transfer of control to the Reorganized Debtors including, but not limited to, imposing any regulatory conditions on such transfer, are fully preserved and nothing in the Plan or this Confirmation Order shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

44. <u>Severability</u>. If the Court determines that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Debtors may

modify the Plan in accordance with the terms of this Confirmation Order and section 13.5 of the Plan so that such provision shall not be applicable to the holder of any Claim or Equity Interest. Any such determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provisions of the Plan; or (ii) require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Court.

45. <u>Conflicts Between Confirmation Order and Plan</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference. The provisions of the Plan Documents and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that in the event of any inconsistency among the Plan, the Plan Documents, the Disclosure Statement, any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and this Confirmation Order, the Confirmation Order shall govern. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the rights of all parties under the Restructuring Agreement are expressly preserved and nothing herein shall modify, or shall be deemed to have modified, the Restructuring Agreement in any respect. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of the Bankruptcy Court.

46. <u>Continued Effect of First Lien Cash Collateral Order</u>. Notwithstanding anything to the contrary contained herein and notwithstanding section 1144 of the Bankruptcy Code or Bankruptcy Rule 9024, this Confirmation Order is without prejudice to the rights of the

44

First Lien Agent and the First Lien Lenders under that certain *Final Order Authorizing and Approving (A) The Use of First Lien Lenders' Cash Collateral and the Grant of Adequate Protection Pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (B) Modification of the Automatic Stay Under Section 362 of the Bankruptcy Code* entered by the Court on January 22, 2010 [Docket No. 119] (the "Cash Collateral Order") (which Cash Collateral Order shall remain in full force and effect until the Effective Date), including without limitation the right to terminate the Debtors' authorization to use cash collateral as provided therein, or to seek other relief from the Court upon the occurrence of a Cash Collateral Termination Date (as defined in the Cash Collateral Order) that is consistent with and in accordance with the Cash Collateral Order, even if such requested relief may be inconsistent with or require a modification of this Confirmation Order. The Debtors' rights under the Cash Collateral Order are similarly preserved.

47.     Status Conference Regarding Effective Date. Notwithstanding anything to the contrary contained herein, and notwithstanding section 1144 of the Bankruptcy Code or Bankruptcy Rule 9024, in the event that the Effective Date has not occurred within 180 days following the entry of this Confirmation Order, the Court shall convene a further hearing on September 17, 2010 to assess the Debtors' progress towards achieving the Effective Date and consummation of the Plan, at which time the First Lien Agent and/or any First Lien Lender may be heard on any issue, including without limitation, a request for relief from, or modification to, this Confirmation Order. All of the Debtors' rights with respect to any requested relief are preserved.

48.    <u>Immediate Effect of Order</u>.  Notwithstanding Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062 or otherwise, the Confirmation Order shall take effect on the date hereof.

Dated: March 22 2010
           Wilmington, Delaware

_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE