Article VI *RECORD DATES* ........................................................................................... 7

Article VII *OWNERSHIP OF STOCK* ........................................................................... 7

   7.1    *Stock Certificates; Uncertificated Shares* ................................................... 7
   7.2    *Transfer of Stock* ............................................................................................. 7
   7.3    *Lost Certificates* .............................................................................................. 8
   7.4    *Transfer Agent and Registrar* ....................................................................... 8

Article VIII *AUTHORITY TO TRANSFER AND VOTE SECURITIES* ...................... 8

Article IX *INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS* .. 8

   9.1    *Right to Indemnification* ................................................................................. 8
   9.2    *Advancement of Expenses* ............................................................................... 9
   9.3    *Right of Claimant to Bring Suit* ..................................................................... 9
   9.4    *Provisions Nonexclusive* .................................................................................. 9
   9.5    *Insurance* .......................................................................................................... 10
   9.6    *Survival of Rights* ............................................................................................ 10
   9.7    *Settlement of Claims* ....................................................................................... 10
   9.8    *Effect of Amendment* ....................................................................................... 10
   9.9    *Subrogation* ...................................................................................................... 10
   9.10  *No Duplication of Payments* ........................................................................... 10

Article X *CORPORATE SEAL* ....................................................................................... 10

DAL:761781.1

# ARTICLE I

## OFFICES

The registered office of NextMedia Northern Colorado, Inc. (the "Company") shall be in Wilmington, Delaware. The Company may also have offices at any other place, within or without the State of Delaware, as the Board of Directors of the Company (the "Board of Directors") may determine or the business of the Company may require.

# ARTICLE II

## STOCKHOLDERS

2.1     *Annual Meetings*.  The annual meeting of the stockholders of the Company, for the election of directors and the transaction of other business properly before the meeting, shall be held on such date and at such place, either within or without the State of Delaware, as may be designated from time to time by the Chairman of the Board, the President, the Chief Executive Officer, if any, or the Board of Directors and specified in the notice of the meeting.

2.2     *Special Meetings*.  Special meetings of the stockholders of the Company, for any purpose or purposes, may be called by the Chairman of the Board, the President, the Chief Executive Officer, if any, or the Board of Directors and shall be called by the Chairman of the Board or Secretary at the request in writing of stockholders owning a majority in amount of the entire capital stock of the Company issued and outstanding and entitled to vote at the meeting. Such request shall state the purpose or purposes of the proposed meeting. Each special meeting shall be held at the principal office of the Company during regular business hours, unless otherwise determined by the Chairman of the Board, the President and Chief Executive Officer, or the Board of Directors and specified in the notice of the meeting. The business to be transacted at any special meeting shall be limited to the purpose or purposes, as specified in the notice of the meeting, for which the meeting is called.

2.3     *Notice of Meetings*.  Except as otherwise provided by law, not less than ten nor more than sixty days before any meeting of the stockholders, written notice of the meeting shall be given stating the place, date, and hour of the meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called. The notice may be given by personal delivery, by United States mail, or via electronic transmission (as defined in Section 232(c) of the Delaware General Corporation Law), including without limitation via facsimile transmission or electronic mail. If mailed, notice is given when deposited in the mail, postage prepaid, directed to the stockholder at such stockholder's address as it appears on the records of the Company. If sent via facsimile transmission, notice is given when directed to a number at which the stockholder has consented to receive notice. If sent via electronic mail, notice is given when directed to an electronic mail address at which the stockholder has consented to receive notice. If sent by any other form of electronic transmission, notice is given when directed to the stockholder. Notice of the place, date, hour, and purpose of any meeting of the stockholders may be waived in writing by the stockholder entitled to notice, whether before or after the holding of the meeting. Attendance by a stockholder at a meeting, in person or by proxy, shall constitute a waiver of notice of the meeting, unless the stockholder attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

2.4　*Quorum; Adjournment.* The holders of stock entitled to exercise a majority of the voting power of the Company, present in person or by proxy, shall constitute a quorum at any meeting of the stockholders, except as otherwise provided by statute. The stockholders present at a duly called or convened meeting at which a quorum is present may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum, provided that any action (other than adjournment) is approved by at least a majority of the voting power required to constitute a quorum. Whether or not a quorum is present, the holders of a majority of the voting power represented at the meeting may adjourn the meeting from time to time, and thereupon any business may be transacted which might have been transacted at the original meeting. Notice of adjournment need not be given if the time and place to which the meeting is adjourned are announced at the meeting. If the adjournment is for more than thirty days, or if after the adjournment a new record date is fixed for the adjourned meeting, notice of the adjourned meeting must be given to each stockholder of record entitled to vote at the meeting.

2.5　*Vote at Meetings.* When a quorum is present at any meeting of the stockholders, the vote of the holders of a majority of the voting power present in person or represented by proxy shall decide any question properly before the meeting, unless a different vote is required by the Certificate of Incorporation of the Company, as amended from time to time (the "Certificate of Incorporation").

2.6　*Action Without a Meeting.* Any action required or permitted to be taken at any annual or special meeting of stockholders of the Company may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action to be taken, is signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all stockholders entitled to vote thereon were present and voted. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing.

## ARTICLE III

### *DIRECTORS*

3.1　*Election; Vacancies; Number.*

a.　Directors of the Company shall be elected at each annual meeting of stockholders or at a special meeting of stockholders called for the purpose of electing directors. Each director shall hold office until his or her successor is elected and qualified or until his or her earlier removal or resignation.

b.　Vacancies and newly created directorships resulting from any increase in the authorized number of directors may be filled by the stockholders holding the majority of the voting power, or by a majority of the directors then in office, although less than a quorum, or by a sole remaining director. Each director elected in accordance with this subsection (b) shall hold office for the unexpired portion of the term of the director whose place shall be vacant, and until his or her successor shall have been duly elected and qualified. A vacancy in the Board of Directors shall be deemed to exist under this subsection (b) in the case of the death, resignation or removal of any

2

director, or if the stockholders fail, at any meeting of stockholders at which directors are to be elected, to elect the number of directors then constituting the whole Board of Directors.

c.　　The number of directors which shall constitute the whole Board of Directors shall be not less than one and not more than ten. The first Board of Directors shall consist of two directors. Thereafter, within the limits specified above, the number of directors shall be determined by resolution of the Board of Directors or by the stockholders at the annual meeting or at a special meeting called for the purpose of electing directors. If at any time the Company has no directors in office, then any officer or stockholder of the Company may call a special meeting of stockholders for the purpose of electing directors.

3.2　　*Resignations and Removals*

a.　　Any director may resign at any time by delivering his or her written resignation to the Secretary, such resignation to specify whether it will be effective at a particular time upon receipt by the Secretary or at the pleasure of the Board of Directors. If no such specification is made, such resignation shall be deemed effective at the pleasure of the Board of Directors. When one or more directors shall resign from the Board of Directors, effective at a future date, stockholders holding a majority of the voting power (voting their shares in accordance with the provisions of Article II), or a majority of the directors then in office, including those who have so resigned, shall have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office for the unexpired portion of the term of the director whose place shall be vacated until his or her successor shall have been duly elected and qualified.

b.　　Except as provided in Section 141 of the Delaware General Corporation Law, at a special meeting of stockholders called for the purpose and in the manner provided in Article II of these Bylaws, the Board of Directors, or any individual director, may be removed from office, with or without cause, and a new director or directors may be elected by the affirmative vote of the holders of a majority of the outstanding shares of the Company entitled to vote at an election of directors.

3.3　　*Organization Meeting.*　Immediately after each annual meeting of the stockholders, the newly elected directors shall hold an organization meeting for the purpose of electing officers and transacting any other business. Notice of the organization meeting need not be given.

3.4　　*Regular Meetings.*　Regular meetings of the Board of Directors may be held at such times and places as may be determined by the Board of Directors and upon such notice, if any, as shall be so provided. Unless otherwise indicated in the notice of a regular meeting, any business may be transacted at that regular meeting.

3.5　　*Special Meetings.*　Special meetings of the Board of Directors may be held at any time and place upon call by the Chairman of the Board, the President and Chief Executive Officer, or by a majority of the directors. Written notice of the time and place of each special meeting shall be given to each director either by personal delivery or by mail, facsimile transmission or electronic mail at least four days before the meeting, which notice need not specify the purposes of the meeting, except that attendance of any director at any special meeting without protesting, prior to or at the commencement of the meeting, the lack of proper notice shall be deemed to be a waiver by

3

him or her of notice of the meeting and except that notice of a special meeting may be waived in writing, either before or after the holding of the meeting, by any director, which writing shall be filed with or entered upon the records of the Company. Unless otherwise indicated in the notice of a special meeting, any business may be transacted at that special meeting.

3.6 *Quorum; Adjournment.* A quorum of the Board of Directors at an organization, regular, or special meeting shall consist of a majority of the total number of directors fixed from time to time in accordance with Section 3.1 of these Bylaws, except that a majority of the directors present at a meeting duly held, whether or not a quorum is present, may adjourn the meeting from time to time. If any meeting is adjourned, notice of adjournment need not be given if the time and place to which the meeting is adjourned are fixed and announced at the meeting. At each meeting of the Board of Directors at which a quorum is present, all questions and business shall be determined by a majority vote of those present except as otherwise expressly provided in these Bylaws.

3.7 *Committees.* The Board of Directors may, by resolution passed by a majority of the whole Board of Directors, designate one or more committees, each committee consisting of one or more directors of the Company. The Board of Directors may designate one or more directors as alternative members of any committee, to replace any absent or disqualified member at any meeting of the committee. Each member and each alternate shall hold office during the pleasure of the Board of Directors. Any committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Company, and may authorize the seal of the Company to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to (a) amending the Certificate of Incorporation (except that a committee may, to the extent authorized in the resolution or resolutions providing for the issuance of shares of stock adopted by the Board of Directors as provided by law, fix any of the preferences or rights of such shares relating to dividends, redemption, dissolution, any distribution of assets of the Company, or the conversion into, or the exchange of such shares for, shares of any other class or classes or any other series of the same or any other class or classes of stock of the Company), (b) adopting an agreement of merger or consolidation, (c) recommending to the stockholders the sale, lease or exchange of all or substantially all of the Company's property and assets, (d) recommending to the stockholders a dissolution of the Company or a revocation of a dissolution, or (e) adopting, amending or repealing these Bylaws; and, unless the resolution, these Bylaws, or the Certificate of Incorporation expressly so provides, no such committee shall have the power or authority to declare a dividend, to authorize the issuance of stock, or to adopt a certificate of ownership and merger. Unless otherwise ordered by the Board of Directors, any committee may prescribe its own rules for calling and holding meetings and its own method of procedure.

3.8 *Action Without a Meeting.* Any action required or permitted to be taken at a meeting of the Board of Directors, or by any committee designated by the Board of Directors, may be taken without a meeting if all members of the Board of Directors or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board of Directors or committee.

3.9 *Participation by Conference Telephone.* Members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors or committee by means of conference telephone or similar communications equipment by

DAL:761781.1

means of which all persons participating in the meeting can hear each other, and such participation shall constitute presence in person at the meeting.

3.10    *Chairman of the Board.* The Board of Directors may elect a Chairman of the Board. The Chairman of the Board, if any, shall preside at all meetings of stockholders and of the Board of Directors and shall have such further authority and perform such other duties as may be determined by the Board of Directors.

## ARTICLE IV

### *OFFICERS*

4.1    *Election and Designation of Officers.* The Board of Directors shall elect a President, a Treasurer, and a Secretary and, in its discretion, may elect a Chief Executive Officer, one or more Vice Presidents, one or more Assistant Secretaries, one or more Assistant Treasurers, and such other officers as it may deem necessary.

4.2    *Term of Office; Removal; Vacancies.* Each officer of the Company shall hold office until the next organization meeting of the Board of Directors and until his or her successor is elected and qualified or until his or her earlier resignation or removal. The Board of Directors may remove any officer at any time with or without cause by a majority vote of the directors then in office. Any vacancy in any office may be filled by the Board of Directors.

4.3    *President.* The President shall have general supervision, direction and control over the business and affairs of the Company and the officers, employees and agents of the Company, subject to the overall control of the Board of Directors. The President may execute all authorized deeds, mortgages, bonds, contracts and other obligations in the name of the Company and shall have such further authority and shall perform such other duties as may be determined by the Board of Directors.

4.4    *Vice Presidents.* Each Vice President shall have such powers and duties as may be assigned to him or her by the Board of Directors, the Chairman of the Board, or the President, and (in order of their seniority as determined by the Board of Directors or, in the absence of such determination, as determined by the length of time they have held the office of Vice President) shall exercise the powers of the President during that officer's absence or inability to act. As between the Company and third parties, any action taken by a Vice President in the performance of the duties of the President shall be conclusive evidence of the absence or inability to act of the President at the time such action was taken.

4.5    *Treasurer.* The Treasurer shall control, audit and arrange the financial affairs of the Company, consistent with the responsibilities delegated to him or her by the President. The Treasurer will receive, deposit and have in charge all money, bills, notes, bonds, securities of other corporations, and similar property belonging to the Company and shall do with this property as the Board of Directors may from time to time determine. The Treasurer shall keep accurate financial accounts and hold them open for the inspection and examination of the directors, and shall have such further authority and shall perform such other duties as may be determined by the Board of Directors.

DAL:761781.1

4.6 *Secretary.* The Secretary shall keep the minutes of meetings of the stockholders and of the Board of Directors. The Secretary shall keep such books as may be required by the Board of Directors, shall give notices of meetings of the stockholders and of the Board of Directors required by law or by these Bylaws or otherwise, and shall have such further authority and shall perform such other duties as may be determined by the Board of Directors.

4.7 *Other Officers.* The Assistant Secretaries, and Assistant Treasurers, if any, and any other officers whom the Board of Directors may elect shall have such further authority and perform such duties as may be determined by the Board of Directors.

4.8 *Delegation of Authority and Duties.* The Board of Directors is authorized to delegate the authority and duties of any officer to any other officer and generally to control the action of the officers and require the performance of duties in addition to those mentioned herein.

## ARTICLE V

## COMPENSATION OF AND TRANSACTIONS WITH DIRECTORS, OFFICERS AND EMPLOYEES

5.1 *Directors and Members of Committees.* Members of the Board of Directors and members of any committee of the Board of Directors shall, as such, receive such compensation as may be determined by or pursuant to authority conferred by the Board of Directors or any committee of the Board of Directors, which compensation may be in different amounts for various members of the Board of Directors or any committee. No member of the Board of Directors and no member of any committee of the Board of Directors shall be disqualified from being counted in the determination of a quorum or from acting at any meeting of the Board of Directors or of a committee of the Board of Directors by reason of the fact that matters affecting his or her own compensation as a director or member of a committee of the Board of Directors are to be determined.

5.2 *Officers and Employees.* The compensation of officers and employees of the Company, or the method of fixing their compensation, shall be determined by or pursuant to authority conferred by the Board of Directors or any committee of the Board of Directors. Compensation may include pension, disability, and death benefits, may be by way of fixed salary, on the basis of earnings of the Company, any combination thereof, or otherwise, as may be determined or authorized from time to time by the Board of Directors or any committee of the Board of Directors.

5.3 *Transactions with Directors or Officers.* No contract or transaction between the Company and any of its directors or officers, or between the Company and any other corporation, partnership, association, or other organization in which any of its directors or officers is a director or officer, or has a financial interest, shall be void or voidable solely for this reason, or solely because the director or officer is present at or participates in the meeting of the Board of Directors or committee which authorizes the contract or transaction, or solely because any such director's or officer's vote is counted for such purpose, if: (a) the material facts as to the director's or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Directors or the committee, and the Board of Directors or committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors, even

6

though the disinterested directors be less than a quorum; or (b) the material facts as to the director's or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the stockholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the stockholders; or (c) the contract or transaction is fair as to the Company as of the time it is authorized, approved or ratified, by the Board of Directors, a committee thereof, or the stockholders. Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or of a committee which authorizes the contract or transaction.

## ARTICLE VI

### *RECORD DATES*

In order that the Company may determine the stockholders entitled to notice of, or to vote at, any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors shall fix, in advance, a record date, which shall not be more than sixty nor less than ten days before the date of such meeting, nor more than sixty days prior to any other action. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting, provided, however, that the Board of Directors shall fix a new record date for the adjourned meeting.

## ARTICLE VII

### *OWNERSHIP OF STOCK*

7.1     *Stock Certificates; Uncertificated Shares.*  The shares of the Company may, but shall not be required to, be represented by certificates.  To the extent that the shares are certificated, each holder of stock shall be entitled to have a certificate signed by, or in the name of, the Company by the Chairman or Vice-Chairman of the Board of Directors, or a President or Vice-President, and by the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary of the Company representing the number of shares registered in certificate form. Any or all of the signatures on any such certificate may be a facsimile. In case any officer, transfer agent, or registrar who has signed or whose facsimile signature has been placed upon any such certificate shall have ceased to be such officer, transfer agent or, registrar before such certificate is issued, it may be issued by the Company with the same effect as if he were such officer, transfer agent, or registrar at the date of issue.

7.2     *Transfer of Stock.*  Stock of the Company shall be transferable upon the books of the Company by the holders thereof, in person or by a duly authorized agent, and with regard to certificated shares, upon surrender and cancellation of certificates for a like number of shares of the same class or series or, in the case of uncertificated shares, upon receipt of an instruction to transfer, in either case with a duly executed assignment, and power of transfer endorsed thereon or attached thereto, and with such proof of the authenticity of the signatures to such assignment and power of transfer as the Company or its agents may reasonably require.

7.3    *Lost Certificates.*    The Company may issue a new certificate of stock or uncertificated shares in place of any certificate previously issued by it, alleged to have been lost, stolen, or destroyed, and the Company may require the owner of the lost, stolen, or destroyed certificate, or his or her legal representative, to give the Company a bond sufficient to indemnify it against any claim that may be made against it on account of the alleged loss, theft, or destruction of any such certificate or the issuance of such new certificate or uncertificated shares.

7.4    *Transfer Agent and Registrar.*    The Board of Directors may appoint, or revoke the appointment of, transfer agents and registrars and may require all certificates for shares to bear the signatures of the transfer agents and registrars, or any of them.

## ARTICLE VIII

### *AUTHORITY TO TRANSFER AND VOTE SECURITIES*

The Chairman of the Board, the Vice Chairman of the Board, the President, any Vice President, the Secretary and the Treasurer of the Company, and each such officer, are authorized to sign the name of the Company and to perform all acts necessary to effect a sale, transfer, assignment, or other disposition of any shares, bonds, other evidences of indebtedness or obligations, subscription rights, warrants, or other securities of another corporation owned by the Company and to issue the necessary powers of attorney; and each such officer is authorized, on behalf of the Company, to vote the securities, to appoint proxies with respect thereto, to execute consents, waivers, and releases with respect thereto, or to cause any such action to be taken.

## ARTICLE IX

### *INDEMNIFICATION OF DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS*

9.1    *Right to Indemnification.*    Except as otherwise provided by law, each person who was or is made a party or is threatened to be made a party to, or is involved (as a party, witness or otherwise), in any threatened, pending or completed action, suit, arbitration, alternative dispute mechanism, inquiry, administrative or legislative hearing, investigation or any other actual, threatened or completed proceeding, including any and all appeals, whether civil, criminal, administrative or investigative (a "Proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director, officer, employee or agent of the Company (including service with respect to employee benefit plans) or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, or other enterprise, whether the basis of the Proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent (an "Agent"), shall be indemnified and held harmless by the Company to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended or interpreted (but, in the case of any such amendment or interpretation, only to the extent that such amendment or interpretation permits the Company to provide broader indemnification rights than were permitted prior thereto), against all expenses, damages, liabilities and losses (including attorneys' fees, judgments, fines, amounts paid or to be paid in settlement; excise taxes, charges, or penalties arising under the Employee Retirement Income Security Act of 1974, as amended; and any interest, assessments, or other

8

charges imposed thereon, and any federal, state, local or foreign taxes imposed on any Agent as a result of the actual or deemed receipt of any payments under this Article IX) reasonably incurred or suffered by such Agent in connection with any Proceeding; provided, however, that, except as to actions to enforce indemnification rights pursuant to Section 9.3 of these Bylaws, the Company shall indemnify any Agent seeking indemnification in connection with a Proceeding (or part thereof) initiated by such Agent only if the Proceeding (or part thereof) was authorized by the Board of Directors. The right to indemnification conferred in this Article IX shall be a contract right.

9.2    *Advancement of Expenses.*    Expenses (including attorneys' fees and expenses) incurred by a director or officer of the Company, acting in his or her capacity as such, in defending a Proceeding shall be paid by the Company in advance of the final disposition of such Proceeding, provided, however, that if required by the Delaware General Corporation Law, as amended, such expenses shall be advanced only upon delivery to the Company of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he or she is not entitled to be indemnified by the Company as authorized under this Article IX or otherwise. Expenses incurred by other Agents (or by the directors or officers of the Company not acting in their capacity as such, including service with respect to employee benefit plans) may be advanced upon such terms and conditions as the Board of Directors deems appropriate. Any obligation to reimburse the Company for any advancement of such expenses shall be unsecured and no interest shall be charged thereon.

9.3    *Right of Claimant to Bring Suit.*    If a claim under Sections 9.1 or 9.2 of these Bylaws is not paid in full by the Company within thirty days after a written claim has been received by the Company, the claimant made at any time thereafter bring suit, in a court of competent jurisdiction in the State of Delaware, against the Company to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall be entitled to be also paid the expense (including attorneys' fees) of prosecuting such claim. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending a Proceeding in advance of its final disposition where the required undertaking has been tendered to the Company) that the claimant has not met the standards of conduct that make it permissible under the Delaware General Corporation Law for the Company to indemnify the claimant for the amount claimed. The burden of proving such a defense shall be on the Company. Neither the failure of the Company (including the Board of Directors or the Company's independent legal counsel or stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper under the circumstances because he or she has met the applicable standard of conduct set forth in the Delaware General Corporation Law, nor an actual determination by the Company (including the Board of Directors or the Company's independent legal counsel or stockholders) that the claimant had not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

9.4    *Provisions Nonexclusive.*    The rights conferred on any person by this Article IX shall not be exclusive of any other rights that such person may have or hereafter acquire under any statute, provision of the Certificate of Incorporation, vote of stockholders or disinterested directors of the Company, or otherwise, both as to action in an official capacity and as to action in another capacity while holding such office. To the extent that any provision of the Certificate of Incorporation, agreement, or vote of the stockholders or disinterested directors is inconsistent with these Bylaws, the provision, agreement, or vote shall take precedent.

9.5     *Insurance.*  The Company may purchase and maintain insurance to protect itself and any Agent against any claims for indemnification, whether or not the Company would have the power to indemnify the Agent under applicable law or the provisions of this Article IX.

9.6     *Survival of Rights.*  The rights provided by this Article IX shall continue as to a person who has ceased to be an Agent and shall inure to the benefit of the heirs, executors and administrators of such person.

9.7     *Settlement of Claims.*  The Company shall not be liable to indemnify any Agent under this Article IX for (a) any amounts paid in settlement of any action or claim effected without the Company's written consent, which consent shall not be unreasonably withheld, or (b) any judicial award if the Company was not given a reasonable and timely opportunity, at its expense, to participate in the defense of such action.

9.8     *Effect of Amendment.*  Any amendment, repeal, or modification of this Article IX shall not adversely affect any right or protection of any Agent existing at the time of such amendment, repeal, or modification.

9.9     *Subrogation.*  In the event of payment under this Article IX, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of the Agent, who shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the Company effectively to bring suit to enforce such rights.

9.10    *No Duplication of Payments.*  The Company shall not be liable under this Article IX to make any payment in connection with any claim made against the Agent to the extent the Agent has otherwise actually received payment (under any insurance policy, agreement, vote or otherwise) of the amounts otherwise indemnifiable hereunder.

## ARTICLE X

### *CORPORATE SEAL*

If a corporate seal is required to be imprinted on or attached, applied, or affixed to an instrument by embossment, engraving, stamping, printing, typing, adhesion, or other means, the impression of the seal on the instrument shall be circular in form and shall contain the name of the Company and the words "corporate seal."

DAL:761781.1

# Exhibit 1-E

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## OF

## NEXTMEDIA GROUP, INC.

The undersigned, Steven Dinetz, hereby certifies that:

1.  He is the duly elected and acting President and Chief Executive Officer of NextMedia Group, Inc., a Delaware corporation.

2.  The date of filing of the Corporation's original Certificate of Incorporation is February 29, 2000.

3.  This Amended and Restated Certificate of Incorporation, which is being carried out pursuant to an order of a court having jurisdiction under title 11 of the United States Code, restates, integrates and amends the Certificate of Incorporation of the Corporation to read in its entirety as follows:

## ARTICLE I

The name of this corporation is NextMedia Group, Inc. (the "Corporation").

## ARTICLE II

The address of the Corporation's registered office in the State of Delaware is 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801. The name of its registered agent at such address is The Corporation Trust Company.

## ARTICLE III

The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law and to have and exercise all the powers conferred by the laws of Delaware upon corporations formed under the Delaware General Corporation Law.

## ARTICLE IV

The Corporation is authorized to issue two classes of stock to be designated, respectively, "Class A Common Stock" and "Class B Common Stock." Class A Common Stock may be issued in two series to be designated, respectively, as "Class A-1 Voting Common Stock" and "Class A-2 Limited Voting Common Stock." Class B Common Stock may be issued in two series to be designated, respectively, as "Class B-1 Voting Common Stock" and "Class B-2 Limited Voting Common Stock." Class A-1 Voting Common Stock and Class B-1 Voting Common Stock are collectively referred to as "Voting Common Stock" and Class A-2 Limited Voting Common Stock and Class B-2 Limited Voting Common Stock are collectively referred to

as "Limited Voting Common Stock." Class A Common Stock and Class B Common Stock are collectively referred to as the "Common Stock." The total number of shares which the Corporation is authorized to issue is _____ (_____) shares, each with a par value of $0.01 per share. _____ (_____) shares shall be Class A-1 Voting Common Stock, _____ (_____) shares shall be Class A-2 Limited Voting Common Stock, _____ (_____) shares shall be Class B-1 Voting Common Stock and _____ (_____) shares shall be Class B-2 Limited Voting Common Stock. The rights, preferences, privileges and restrictions granted to and imposed on the Common Stock are set forth below in this Article IV.

       **1.**    **Dividend Provisions.** The holders of Common Stock shall be entitled to receive, when and as declared by the Board of Directors, out of any assets of the Corporation legally available therefor, such dividends as may be declared from time to time by the Board of Directors, subject to such dividends being paid first to the holders of Class B Common Stock until the preferences set forth in Section 2(a)(i) are satisfied, being paid second to the holders of Class A Common Stock until the preferences set forth in Section 2(a)(ii) are satisfied, and finally being paid to the holders of Common Stock in accordance with Section 2(b).

       **2.**    **Liquidation.**

          (a)    Preferences.

              (i)    Class B Common Stock. In the event of any liquidation, dissolution or winding up of the Corporation, either voluntary or involuntary, the holders of Class B Common Stock shall be entitled to receive, prior to and in preference of any distribution of the assets or surplus funds of the Corporation to the holders of the Class A Common Stock, an amount equal to $10.00 per share (as adjusted for stock splits, stock dividends, reclassifications or the like) for each outstanding share of Class B Common Stock then held by them *less* an amount equal to the aggregate dividends paid for each outstanding share of Class B Common Stock. If, upon the occurrence of such event, the assets and funds thus distributed among the holders of the Class B Common Stock shall be insufficient to permit the payment to such holders of the full aforesaid preferential amounts, then the entire assets and funds of the Corporation legally available for distribution shall be distributed ratably among the holders of the Class B Common Stock in proportion to the preferential amount each such holder is otherwise entitled to receive.

              (ii)    Class A Common Stock. In the event of any liquidation, dissolution or winding up of the Corporation, either voluntary or involuntary, and after payment to the holders of the Class B Common Stock of the amounts to which they are entitled pursuant to Section 2(a)(i), the holders of Class A Common Stock shall be entitled to receive, prior to and in preference of any distribution of the assets or surplus funds of the Corporation to the holders of Class B Common Stock, an amount equal to $10.00 per share (as adjusted for stock splits, stock dividends, reclassifications or the like) for each outstanding share of Class A Common Stock then held by them *less* an amount equal to the aggregate dividends paid for each outstanding share of Class A Common Stock. If, upon the occurrence of such event, the assets and funds thus distributed among the holders of the Class A Common Stock shall be insufficient

DAL:759740.4

to permit the payment to such holders of the full aforesaid preferential amounts, then the entire assets and funds of the Corporation legally available for distribution shall be distributed ratably among the holders of the Class A Common Stock in proportion to the preferential amount each such holder is otherwise entitled to receive.

(b)     <u>Remaining Assets</u>. Upon the completion of the distributions required by <u>Section 2(a)</u>, the remaining assets of the Corporation available for distribution shall be distributed among the holders of the Class A Common Stock and the Class B Common Stock pro rata based on the number of shares of Common Stock held by each.

(c)     <u>Certain Acquisitions</u>.

(i)     <u>Deemed Liquidation</u>. For purposes of this <u>Section 2</u>, any Change of Control as agreed in the Stockholders Agreement shall be deemed to be a liquidation, dissolution or winding up of the Corporation.

(ii)     <u>Valuation of Consideration</u>. In the event of any liquidation, dissolution or winding up of the Corporation, including a deemed liquidation as described in <u>Section 2(c)(i)</u>, if the consideration distributed by the Corporation to its stockholders is other than cash, its value will be deemed its fair market value as reasonably determined in good faith by the Board of Directors. Any securities shall be valued as follows:

(A)     Securities not subject to investment letter or other similar restrictions on free marketability:

(1)     If traded on a securities exchange, the closing price of such securities on the composite tape of the principal national securities exchange on which such securities are listed or admitted to trading, or, if no sale of securities has been reported on the composite tape of any national securities exchange, then the immediately preceding date on which sales of such securities have been so reported shall be used; and

(2)     If there is no active public market, the value shall be the fair market value thereof, as determined in good faith by the Board of Directors, using a reasonable application of any fair and reasonable method selected in the Board of Directors' discretion.

(B)     The method of valuation of securities subject to investment letter or other restrictions on free marketability (other than restrictions arising solely by virtue of a stockholder's status as an Affiliate or former Affiliate) shall be to make an appropriate discount from the market value determined in <u>Section 2(c)(ii)(A)</u> to reflect the approximate fair market value thereof, as determined in good faith by the Board of Directors, using a reasonable application of any fair and reasonable method selected in the Board of Directors' discretion.

(iii) Notice     of Transaction. The Corporation shall give each holder of record of Common Stock written notice of such impending transaction not later than ten (10) days prior to the stockholders' meeting called to approve such transaction, or ten (10) days prior to the closing of such transaction, whichever is earlier, and shall also notify such holders in writing of the final approval of such transaction.

**3. Conversion.** Voting Common Stock can be converted into Limited Voting Common Stock, and Limited Voting Common Stock may be converted into Voting Common Stock, as follows:

(a) <u>Elective Conversion of Common Stock</u>. Limited Voting Common Stock shall be convertible into Voting Common Stock (and vice versa) of the same class of Common Stock ("<u>Class</u>") at the request of the holder thereof, which request shall be made at the sole and absolute discretion of such holder and not subject to any rights of consent or approval of any other Person, including, without limitation, the Corporation; <u>provided</u> that prior to every such elective conversion, the stockholder requesting conversion shall certify, to the reasonable satisfaction of the Corporation, that such conversion, individually and when considered in the aggregate with the ownership of Common Stock by other stockholders, shall not cause a violation of the FCC Requirements by such holder requesting conversion or the Corporation and shall not subject the Corporation to any FCC Limitation, and the Corporation shall co-operate with and provide all information reasonably requested by such stockholder in order for the stockholder to make such certification; <u>provided</u> <u>further</u> that if, as a result of such conversion, compliance with the FCC Requirements would require the prior approval of the FCC, such conversion shall not occur until such approval has been obtained from the FCC and the Corporation and the relevant holder shall use commercially reasonable efforts to obtain any required FCC approval.

(b) <u>Required Conversion of Common Stock</u>. If the Corporation makes a determination in good faith, after consultation with any Person, that such Person's (including any stockholder's) current or proposed ownership and/or exercise of any rights of ownership with respect to Common Stock and/or Common Stock Equivalents held or proposed to be held by such stockholder, as applicable (each, an "<u>Equity Event</u>"), individually and when considered in the aggregate with the ownership of Common Stock and/or Common Stock Equivalents by other stockholders (a) results or is reasonably likely to result in a violation by the stockholder or such Person of an FCC Requirement (including such violations of FCC Requirements resulting from a Transfer of Common Stock and/or Common Stock Equivalent by another Person, including another stockholder); (b) results or is reasonably likely to result in a violation by the Corporation of an FCC Requirement; or (c) will or is reasonably likely to subject the Corporation to an FCC Limitation, then the Corporation may require that such stockholder or such Person (even if such stockholder or Person did not initiate, would not benefit from, and would otherwise be unaffected by such Equity Event) to undertake one of the following conversions reasonably determined by the Corporation to mitigate clauses (a)-(c) above, as applicable: (i) exchange all or a portion of the shares of Voting Common Stock held by such stockholder for an equal number of shares of Limited Voting Common Stock of the same Class, or receive in lieu of all or a portion of the shares of Voting Common Stock proposed to be held by such stockholder an equal number of shares of Limited Voting Common Stock of the same Class; and/or (ii) convert all or a portion of the shares of Voting Common Stock or Limited Voting Common Stock held, or proposed to be held, by such stockholder into Warrants ((i) and (ii) each, a "<u>Required</u> <u>Conversion</u>"); <u>provided</u> that such Required Conversion (y) is imposed by the Corporation upon similarly situated stockholders or Persons in a substantially similar manner and (z) has minimum effect on the interests in the Corporation of the Person or stockholder subject to the Required Conversion (individually and relative to other holders of Common Stock and Common Stock Equivalents), in each case (y) and (z), that is reasonably feasible without materially adversely

4

affecting the objectives of the Corporation in requiring such Required Conversion, and provided further that if the Required Conversion requires the prior approval of the FCC, the Required Conversion shall not occur until such approval has been obtained from the FCC and the Corporation and the relevant stockholder shall use commercially reasonable efforts to obtain any required FCC approval; provided further that each such required conversion, individually and when considered in the aggregate with the ownership of Common Stock by other stockholders, shall not cause a violation of the FCC Requirements by such stockholder or the Corporation and shall not subject the Corporation to any FCC Limitation.

(c)     Mechanics of Conversion.  Before any holder of Common Stock shall be entitled to convert the same into shares of the other series of such Class, such holder shall surrender the certificate or certificates therefor, if any, duly endorsed, to the office of the Corporation or of any transfer agent for the Corporation and shall give written notice to the Corporation at its principal corporate office, of the election to convert the same and shall state therein the name or names in which the certificate or certificates, if any, for such shares of Common Stock are to be issued; provided, however, that the applicable outstanding shares of Common Stock shall be converted automatically upon notice being sent by the Corporation to the Persons subject to a Required Conversion without any further action by the holders of such shares and whether or not the certificates representing such shares are surrendered to the Corporation or its transfer agent; provided further, however, that the Corporation shall not be obligated to issue certificates evidencing the converted shares of Common Stock issuable upon such Required Conversion unless either the certificates evidencing such converted shares of Common Stock are delivered to the Corporation or its transfer agent as provided above, or the holder notifies the Corporation or its transfer agent that such certificates have been lost, stolen or destroyed and executes an agreement reasonably satisfactory to the Corporation to indemnify the Corporation from any loss incurred by it in connection with such certificates. On the date of the occurrence of a Required Conversion, the converted holder shall be deemed to be the holder of record of the applicable shares of Common Stock issuable upon such conversion, notwithstanding that the certificates representing such converted shares of Common Stock shall not have been surrendered at the office of the Corporation, that notice from the Corporation shall not have been received by such holder or that the certificates evidencing such new shares of Common Stock shall not then be actually delivered to such holder.  The Corporation shall, as soon as practicable after such delivery, or after such agreement and indemnification, issue and deliver at such office to such converted holder or to the nominee or nominees of such holder, a certificate or certificates for the number of shares of Common Stock to which such holder shall be entitled as aforesaid.

Conversions not in connection with a Required Conversion shall be deemed to have been made immediately prior to the close of business on the date of surrender of the shares of Common Stock for conversion, or if the holder thereof notifies the Corporation or its transfer agent that such certificates have been lost, stolen or destroyed and executes an agreement reasonably satisfactory to the Corporation to indemnify the Corporation from any loss incurred by it in connection with such certificates, upon receipt of such agreement and indemnification, and the Person or Persons entitled to receive the shares of Common Stock issuable upon such conversion shall be deemed for all purposes as the record holder or holders of such shares of converted Common Stock as of such date. In the case of a conversion not in connection with a Required Conversion, the Corporation shall, as soon as practicable after such delivery, or after

5

such agreement and indemnification, issue and deliver at such office to such holder of Common Stock, or to the nominee or nominees of such holder, a certificate or certificates for the number of shares of converted Common Stock to which such holder shall be entitled as aforesaid, plus, if the holder is converting less than all shares of Common Stock subject to a single certificate, a new certificate for the number of shares of Common Stock not converted.

(d) <u>Reservation of Stock Issuable Upon Conversion</u>. The Corporation will at all times reserve and keep available, from its authorized and unissued Common Stock solely for issuance and delivery upon the conversion of outstanding shares of Common Stock, such number of shares of the applicable series of Common Stock as from time to time shall be issuable upon the exercise in full of all outstanding shares of Common Stock. The Corporation shall, from time to time, take all steps necessary to increase the authorized number of applicable series of its shares of Common Stock if at any time the authorized number of applicable shares of Common Stock remaining unissued would otherwise be insufficient to allow delivery of all the applicable series of shares of Common Stock then deliverable upon the conversion in full of all outstanding shares of Common Stock.

4. <u>**Voting Rights.**</u>

(a) <u>Voting Common Stock</u>. The holder of each share of Voting Common Stock shall have the right to one vote per share of Voting Common Stock, and shall be entitled to notice of any stockholders' meeting in accordance with Section 2(c) or otherwise in accordance with the by-laws of the Corporation, and shall be entitled to vote upon such matters and in such manner as may be provided by law. The number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of shares of stock of the Corporation entitled to vote representing a majority of the votes represented by all outstanding shares of stock of the Corporation entitled to vote, irrespective of the provisions of Section 242(b)(2) of the Delaware General Corporation Law.

(b) <u>Limited Voting Common Stock</u>. Unless otherwise expressly required by law or this Amended and Restated Certificate of Incorporation and subject to the by-laws of the Corporation, the holders of shares of Limited Voting Common Stock shall not be entitled to vote any shares of Limited Voting Common Stock with respect to any matter submitted to a vote of the stockholders. Notwithstanding the foregoing and subject to the by-laws of the Corporation, if and only if any of the following actions are submitted to a vote of the stockholders, each holder of Limited Voting Common Stock shall be entitled to vote any or all of the shares of Limited Voting Common Stock beneficially owned or held of record by such stockholder, together with the holders of the Voting Common Stock as a single class:

(i) an initial public offering, except pursuant to a stockholder's demand registration rights;

(ii) a sale of all or substantially all of the assets of the Corporation (including by way of sale of the stock or the assets of its subsidiaries) or a merger or a consolidation of the Corporation, whether in a single transaction or a series of related transactions;

6

(iii)any y authorization, creation (by way of reclassification, merger, consolidation or otherwise) or issuance of any equity securities of the Corporation, other than (a) pursuant to any employee option plans, (b) the issuance of any equity securities as consideration in a merger or acquisition that does not require approval hereunder, or (c) any conversion of Voting Common Stock to Limited Voting Common Stock or vice versa or any conversion of Common Stock into Warrants or any exercise of Warrants;

(iv) the sale of the radio station operating business or outdoor advertising business of the Corporation;

(v) except as required by applicable law, any amendment, repeal or alteration of the certificate of incorporation or by-laws, or the organizational documents of the Corporation, whether by or in connection with a merger or consolidation or otherwise;

(vi) any increase or decrease in the size of the Board of Directors, except to the extent permitted by Section 2.1(b) of the Stockholders Agreement; and

(vii) any plan of liquidation, dissolution or wind-up of the Corporation.

5.      **Warrants**.  Common Stock shall be convertible into warrants to purchase such shares of Common Stock ("Warrants"), at the request of the holder thereof, which request shall be made at the sole and absolute discretion of such holder and not subject to any rights of consent or approval of any other Person, including, without limitation, the Corporation and which conversion shall be subject to the by-laws of the Corporation, the provisions of the related warrant agreements and the provisions hereof; provided that prior to every such elective conversion, the stockholder shall certify, to the reasonable satisfaction of the Corporation, that such conversion, individually and when considered in the aggregate with the ownership of Common Stock by other stockholders, shall not cause a violation of the FCC Requirements by such stockholder or the Corporation and shall not subject the Corporation to any FCC Limitation, and the Corporation shall co-operate with and provide all information reasonably requested by such stockholder in order for the stockholder to make such certification; provided further that if, as a result of such conversion, compliance with the FCC Requirements would require the prior approval of the FCC, such conversion shall not occur until such approval has been obtained from the FCC and the Corporation and the relevant stockholder shall use commercially reasonable efforts to obtain any required FCC approval.  Common Stock shall also be convertible into Warrants following a Required Conversion in accordance with Section 3(b).  The Warrants shall grant the holder thereof the right to purchase the same number of shares of Common Stock into which such holder converted at an exercise price equal to $0.01 per share of Common Stock, subject to such other customary adjustments and other terms and conditions as may be agreed between the holder and the Corporation; provided, that for any such exercise of a Warrant for Common Stock, the Warrant shall require the warrant holder to certify, to the reasonable satisfaction of the Corporation, that such exercise, individually and when considered in the aggregate with the ownership of Common Stock by other stockholders, shall comply with the FCC Requirements and shall not subject the Corporation to any FCC Limitation; provided further that if compliance with the FCC Requirements requires the prior approval of the FCC, no conversion shall occur until such approval has been obtained from the FCC and the Corporation shall use commercially reasonable efforts to obtain any required FCC approval.

7

**6. Subdivisions, Stock Splits, Combinations and Reverse Stock Splits.** The Corporation shall not increase the number of shares of Common Stock outstanding by a subdivision or split-up of shares of Common Stock or decrease the number of shares of Common Stock outstanding by a combination or reverse stock split of the outstanding shares of Common Stock unless such increase or decrease in the shares of Common Stock is carried out for each Class (including each series of each Class) having shares outstanding.

7. **Certain Definitions.** The following terms shall have the following respective meanings:

"Affiliate" (a) shall mean, with respect to any Person, any Person that directly or indirectly controls, is controlled by or is under common control with, such Person or any Immediate Family Member of such Person; and (b) shall also include, with respect to any Person who is an individual, a trust, the beneficiaries of which, or a corporation or partnership, the stockholders or limited or general partners of which, include only such individual and/or such individual's Immediate Family Members. For purposes of this definition, the term "control" (including the correlative terms "controlling", "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"Common Stock Equivalents" shall mean any warrants, rights, calls, options or other securities exchangeable or exercisable for, or convertible into, Common Stock.

"FCC" shall mean the U.S. Federal Communications Commission and any successor Governmental Authority performing functions similar to those performed by the Federal Communications Commission on the date of filing this Amended and Restated Certificate of Incorporation.

"FCC Limitation" shall mean a material limitation on or impairment of any business activities or proposed business activities of the Corporation, to which the Corporation would not otherwise be subject and which results from the application of the FCC Requirements; provided that a stockholder's ownership or acquisition of an attributable interest in a Media Property shall not be deemed to cause an FCC Limitation merely because, under the FCC Requirements, such attributable interest may restrict or limit the Corporation from newly acquiring an attributable interest in another Media Property following the date of filing of this Amended and Restated Certificate of Incorporation, until and unless the Corporation has entered into a definitive agreement with a third party for the acquisition of an attributable interest in such other Media Property, at which time such restriction or limitation shall constitute an FCC Limitation.

"FCC Requirements" shall mean any requirement of the Communications Act of 1934, as amended, or the implementing published rules, regulations and policies of the FCC, including but not limited to foreign and media ownership restrictions.

"Governmental Authority" shall mean any government, any state or other political subdivision thereof, and any entity exercising executive, legislative, judicial, regulatory or

8

administrative functions of or pertaining to government, including, but not limited to, the FCC.

"Immediate Family Member" shall mean, with respect to any Person, a spouse, parent, child, grandchild or sibling of such Person.

"Media Property" shall mean a Person that is, or directly or indirectly holds an attributable interest in, a radio or television broadcast license issued by the FCC (other than an FCC license held by the Corporation or its Affiliate on the date of filing of this Amended and Restated Certificate of Incorporation) or daily English-language newspaper.

"Person" shall mean any individual, corporation, partnership, limited liability company, trust, joint stock company, business trust, unincorporated association, joint venture, Governmental Authority or other entity of any nature whatsoever.

"Stockholders Agreement" shall mean the Stockholders Agreement dated as of [ ], by and among the Corporation and the stockholders named therein as the same may be amended, supplemented or otherwise modified from time to time.

"Transfer" shall mean any transfer, sale, offer, assignment, exchange, distribution, mortgage, pledge, hypothecation or other disposition; provided that a conversion of Voting Common Stock to Limited Voting Common Stock, or of Limited Voting Common Stock to Voting Common Stock or of Common Stock to Warrants or the exercise of any Common Stock Equivalent shall not be considered to be a Transfer.

## ARTICLE V

The Board of Directors of the Corporation is expressly authorized to make, alter or repeal the by-laws of the Corporation.

## ARTICLE VI

Notwithstanding any other provision contained herein, the Corporation shall not issue any nonvoting equity securities (other than the issuance of Warrants) and shall comply, to the extent applicable, with Section 1123(a)(6) of the United States Bankruptcy Code, as amended (other than, to the extent in conflict, the issuance of Warrants). This Article VI may be amended or repealed by the affirmative vote of a majority of the outstanding stock entitled to vote thereon in accordance with Section 242 of the Delaware General Corporation law.

## ARTICLE VII

(A)     To the fullest extent permitted by the Delaware General Corporation Law, as the same exists or as may hereafter be amended, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.

(B)     Neither any amendment nor repeal of this Article VII, nor the adoption of any provision of the Corporation's Certificate of Incorporation inconsistent with this Article VII,

9

shall eliminate or reduce the effect of this <u>Article VII</u> in respect of any matter occurring, or any action or proceeding accruing or arising or that, but for this <u>Article VII</u>, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

## ARTICLE VIII

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in the manner now or thereafter prescribed by statute, and all rights conferred upon the stockholders herein are granted subject to this reservation.

\* \* \*

DAL:759740.4

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be signed by Steven Dinetz, its President and Chief Executive Officer, effective as of _____, 2010.

**NEXTMEDIA GROUP, INC.**

By:_____
    Steven Dinetz
    President and Chief Executive Officer