**Exhibit A**

**TRUST AGREEMENT**

**BY AND AMONG**

**NEXTMEDIA OPERATING, INC. & NM LICENSING, LLC**

**AND**

**THE MILE HIGH STATION TRUST, LLC**

**[CLOSING DATE]**

**FORM OF TRUST AGREEMENT**

DSMDB-2772391v05

# TABLE OF CONTENTS

**Page**

Recitals: ................................................................................................................1

1.  Creation and Purpose of Mile High Station Trust .................................................2

2.  Assignment and Management of Station Assets........................................................2

3.  Closing ................................................................................................................5

4.  Disposition of Station Assets by Trustee.................................................................6

5.  Management and Other Actions by Trustee ...........................................................7

6.  Financial Matters ..............................................................................................11

7.  Limitations on NextMedia .................................................................................12

8.  Trustee Responsibilities......................................................................................12

9.  Replacement of Trustee .....................................................................................13

10. Termination and Distribution of Proceeds from Sale of Station Assets .................13

11. Communications ................................................................................................14

12. Miscellaneous ...................................................................................................15

13. Tax Matters .......................................................................................................16

# TRUST AGREEMENT

THIS TRUST AGREEMENT (the "Trust Agreement"), dated as of [the Closing Date], is by and among NextMedia Operating, Inc., a Delaware corporation ("Operating"), NM Licensing, LLC, a Delaware limited liability company ("Licensing," and together with Operating, "NextMedia"), and The Mile High Station Trust, LLC, a Delaware limited liability company, as trustee (the "Trustee").

## Recitals

NextMedia and certain affiliated entities (collectively, the "Debtors") each filed a Chapter 11 petition on December 21, 2009 with the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") (In re: NextMedia Group, Inc., et al, Case No. 09-14463(PJW)). On December 21, 2009, Licensing filed an FCC Form 316 application seeking the consent of the Federal Communications Commission (the "FCC") to the assignment of its broadcast licenses to NM Licensing LLC Debtor-in-Possession ("Licensing DIP") as a debtor-in-possession, which the FCC granted on December 28, 2009. On January 27, 2010, Licensing DIP filed an FCC Form 314 application (FCC File No. BALH-20100127AER), seeking FCC consent to the assignment of its broadcast licenses to Licensing pursuant to the Debtors' Modified Amended Chapter 11 Plan of Reorganization (as subsequently modified, the "Plan") (the "Restructuring Application"). The Bankruptcy Court confirmed the Plan on March 22, 2010. On April ___, 2010, the Debtors modified the Plan to incorporate this Trust Agreement and such modification was approved by the Bankruptcy Court on April __, 2010.

Prior to filing for bankruptcy, NextMedia held attributable interests in radio stations in the Chicago, IL and the Greenville-New Bern-Jacksonville, NC markets (the "Metros") in excess of the number permitted under the FCC's local radio ownership rule, which took effect in September 2004. NextMedia informed the FCC that, in order to come into compliance with the FCC's local radio ownership rules, NextMedia intended to divest its interests in the following stations (the "Stations") located in the Metros:

| Call Sign | City of License |
|-----------|-----------------|
| WZSR(FM) | Woodstock, IL |
| WWYW(FM) | Dundee, IL |
| WSSM(FM) | Havelock, NC |

NextMedia desires to engage the Trustee as a trustee pursuant to a trust agreement that will comport with applicable FCC rules and policies (the "FCC Rules") and thereby reduce the number of radio stations in which NextMedia holds an attributable interest in the Metros. The Trustee has agreed to serve as a trustee for the purpose of selling the Stations to a third party (or parties), or to reconvey the Stations to NextMedia and to operate the Stations pending the consummation of such sale(s) or reconveyances pursuant to the terms herein. Elliot B. Evers (the "Member") is the sole member of the Trustee.

Accordingly, the parties agree as follows:

**1.      Creation and Purpose of Mile High Station Trust.**

**(a)**      A trust in respect of the Station Assets (as defined below) is hereby created and established (the "Mile High Station Trust"), and the Trustee hereby agrees to serve as trustee thereunder.

**(b)**      The purpose of the Mile High Station Trust is to vest legal title and control of the Station Assets in the Trustee for the purpose of facilitating a sale or sales or reconveyance of each Station by the Trustee, and the provisions of this Trust Agreement shall be interpreted to effectuate such purpose.

**(c)**      NextMedia is the beneficiary of the Mile High Station Trust.

**(d)**      The term of this Trust Agreement (the "Term") shall commence on the date hereof and shall expire on the first date on which both of the following have occurred: (i) all of the Station Assets held by the Mile High Station Trust have been assigned to a third party or to NextMedia in accordance with the terms and conditions of this Trust Agreement, and (ii) the date all expenses and other liabilities incurred by the Trustee in fulfilling its obligations under this Trust Agreement have been paid to the Trustee by NextMedia. The Mile High Station Trust is irrevocable as to each Station held by the Mile High Station Trust until:

**(i)**      such time as the Trustee causes each of the Stations either (x) subject to the prior approval of the FCC, to be sold to a third-party buyer (or buyers) pursuant to a separate written agreement(s) in accordance with the terms of this Trust Agreement; or (y) to be assigned to NextMedia in the event (A) NextMedia divests itself of sufficient attributable interests in radio stations in the Metros, or (B) there is a change in the FCC's local radio ownership rules that would permit NextMedia to hold an attributable interest in one or more of the Stations under the FCC's Rules, in which case the Trustee may, subject to any required prior approval of the FCC, promptly assign the relevant FCC Licenses (defined below) and other Station Assets relating to the Stations back to NextMedia; and

**(ii)**      all obligations of the Trustee under this Trust Agreement and any agreement to sell the Station Assets to third party buyers have been fully performed or waived.

**2.      Assignment and Management of Station Assets.**

**(a)**      On the Closing Date (as defined herein), NextMedia shall convey, transfer, assign, and deliver to the Trustee, and the Trustee shall acquire and assume from NextMedia, all of NextMedia's right, title and interest in and to all of the following assets owned or held by NextMedia and used exclusively in the operation of the Stations including those set forth in **Annex**

DSMDB-2772391v05

**1** hereto (the "Station Assets") subject to the existing liabilities and liens with respect thereto, as of the date of the Closing:

        **(i)** all licenses and other authorizations issued by the FCC (the "FCC Licenses") used solely in the operation of the Stations, including the Stations' call letters, along with any applications pending before the FCC for the renewal or modification thereof, all of which are identified on *Schedule 2(a)(i)* annexed hereto;

        **(ii)** all equipment, furniture, fixtures and other items of tangible personal property used solely in the operation of the Stations (the "Personal Property"), the material items of which are identified on *Schedule 2(a)(ii)* annexed hereto;

        **(iii)** all real property owned or leased by NextMedia and used solely in the operation of the Stations (the "Real Property"), the descriptions of which are identified on *Schedule 2(a)(iii)* annexed hereto;

        **(iv)** except as otherwise expressly set forth herein, all documents in the Stations' public inspection files, all FCC logs, and all other records pertaining to the Stations;

        **(v)** all technical information and engineering data, news and advertising studies, consulting reports, and marketing and demographic data in the possession of NextMedia and used solely in the operation of the Stations;

        **(vi)** all owned computer software and programs used solely in the operation of the Stations along with all licenses for any computer software and programs used solely in the operation of the Stations, the material items of which are identified on *Schedule 2(a)(vii)* annexed hereto;

        **(vii)** all of NextMedia's rights and obligations in contracts, agreements, leases, licenses, commitments and understandings, written or oral, related solely to the operation of the Stations (collectively, the "Assumed Contracts"), the material items of which (those including payments of $5,000 or more each year) are identified on *Schedule 2(a)(viii)* hereto (but with the understanding that this Trust Agreement is not an Assumed Contract);

        **(viii)** all of NextMedia's right, title and interest in and to all transferable municipal, state and federal permits, licenses, waivers and authorizations used solely in the operation of the Stations (other than FCC Licenses), along with any pending applications for the renewal or modification thereof, all of which are identified in *Schedule 2(a)(ix)* annexed hereto;

        **(ix)** the intellectual property of NextMedia used solely in the operation of the Stations (the "Station IP"), the material items of which are identified on *Schedule 2(a)(x)* annexed hereto, but excluding any intellectual property included in the Excluded Assets;

(x)     all prepaid expenses of NextMedia relating solely to the Stations and the deposits relating solely to the Stations; and

(xi)     all of NextMedia's rights under manufacturers' and vendors' warranties relating to items included in the Station Assets and all similar rights against third parties relating to items included in the Station Assets to the extent contractually assignable.

(b)     Notwithstanding Section 2(a) hereof, NextMedia shall not convey, transfer, assign, and deliver, and the Trustee shall not acquire and assume, any of the following assets (the "Excluded Assets"), all of which shall be retained by NextMedia:

(i)     any and all assets used or useful in the operation of other radio stations owned by NextMedia in the Metros, and all assets of NextMedia other than those assets of NextMedia which are used solely in the operation of the Stations;

(ii)     books and records that pertain to the organization, existence or capitalization of NextMedia or NextMedia's operation of the Stations, except as expressly included in Section 2(a) of this Agreement;

(iii)     duplicate copies of all books and records of the Stations which are expressly included in Section 2(a), but only to the extent necessary to enable NextMedia to file tax returns and reports;

(iv)     all claims, rights and interests of NextMedia in and to any refunds for taxes paid in respect of the Stations for periods ending on or prior to the Closing Date.

(v)     all pension, profit sharing or cash or deferred (Section 401(k)) plans and trusts and any other employee benefit plan or arrangement;

(vi)     all of NextMedia's rights and obligations under or interest in contracts, agreements, leases, licenses, commitments and understandings, written or oral, except for the Assumed Contracts;

(vii)     all causes of action arising prior to the Closing Date;

(viii)     except as expressly set forth herein, insurance policies relating to the Stations and the rights to proceeds thereunder;

(ix)     all accounts receivables arising from operation of the Stations (including any appropriate apportionment of accounts receivables generated from the joint sale of time on the Stations and one or more other stations owned and operated by NextMedia in the Metros) prior to the Closing; and

4

(x)     all of NextMedia's intellectual property other than the Station IP.

(c)     To the extent that any of the Excluded Assets are also used or are useful in the conduct of the business and operation of the Stations as of the Closing Date (the "Shared Assets"), then, during the Term of this Trust Agreement, NextMedia shall make arrangements on or before the Closing, as are reasonably necessary, to provide for the Trustee's continued use of the Shared Assets by the Stations without any cost to the Trustee.

(d)     Subject to the provisions of Section 6(d) hereof, the Trustee shall assume and be solely responsible for the payment, performance and discharge of all of NextMedia's liabilities, obligations, and duties under or in respect of the FCC Licenses, the Assumed Contracts, and the other Station Assets after the Closing (the "Station Liabilities"). Except as expressly provided in this Trust Agreement, the Trustee shall not be liable for and shall not assume any liabilities, obligations, or duties of NextMedia (whether known or unknown, matured or unmatured, or fixed or contingent), including any liabilities for claims that relate to the operation of the Stations or the holding of the Station Assets prior to Closing (regardless of whether any claim is asserted before or after Closing).

**3.     Closing.**

(a)     The consummation of the assignment of the Station Assets to, and the assumption of the Station Liabilities by, the Trustee (the "Closing") shall occur simultaneously with the closing of the Restructuring Application, or within five (5) days after the FCC has granted its consent to the assignment of the FCC Licenses from Licensing to the Trustee, whichever is later (the "Closing Date").

(b)     The obligations of NextMedia and the Trustee to consummate the assignment of the Station Assets to the Trustee are subject to the prior satisfaction or waiver of the following conditions:

(i)     there shall not be in effect any statute, government regulation, or order by a court or governmental authority of competent jurisdiction which restrains or prohibits the transactions contemplated hereby;

(ii)     there shall not be in existence any lawsuit, action, investigation, or other proceeding pending before any court or governmental authority of competent jurisdiction to prohibit the transactions contemplated by this Trust Agreement;

(iii)     the FCC shall have granted its consent to the assignment contemplated by this Trust Agreement without imposing any condition materially adverse to the Trustee, NextMedia or to the operation of the Stations; and

(iv)     the Bankruptcy Court shall have approved the Plan subject to FCC approval of the Trust Agreement and the transactions contemplated herein.

5

(v)     NextMedia shall have obtained all material third-party consents required by the Assumed Contracts to enable the Trustee to enjoy all of the rights and privileges, and be bound by all of the obligations, under such Assumed Contracts, but, if any required third-party consent has not been obtained, this condition shall be satisfied if NextMedia makes other arrangements that would enable the Trustee to obtain the benefits of such Assumed Contract or NextMedia, in its Plan provides for the assignment of such contracts.

4.      **Disposition of Station Assets by Trustee.**

(a)     Except as otherwise expressly set forth in this Trust Agreement, the Trustee shall have the power, authority and obligation to consummate a sale or sales of each of the Stations as soon as reasonably practicable after the Closing pursuant to the conditions contained herein and at prices that render to NextMedia the maximum value reasonably attainable for the Station Assets; provided, that each such sale is conditioned upon the payment of the entire purchase price in cash at closing.

(b)     The Trustee shall have the power and authority to hire any attorneys or other agents reasonably necessary in the Trustee's sole discretion to assist in the sale of the Station Assets, including Media Venture Partners, LLC ("Broker"), notwithstanding that the Trustee is an affiliate of Broker.  The Trustee is authorized to pay Broker the fee set forth on **Annex 2** of this Trust Agreement upon consummation of any Sale Agreement (defined below).  Such professionals or agents shall be accountable solely to the Trustee.

(c)     To the extent consistent with the Trustee's obligations hereunder, the Trustee shall use its good faith and commercially reasonable efforts to enter into a binding agreement or agreements (each, a "Sale Agreement") in a form consistent with standard practices in the industry for similar transactions, which shall include, without limitation, customary representations, warranties, indemnifications and limitations on liability.  Any such Sale Agreement shall provide that the Station Assets are to be assigned and otherwise conveyed free and clear of any and all liens, security interests, and encumbrances (collectively, "Liens") of any kind or nature, except those expressly permitted by the Sale Agreement.

(d)     Notwithstanding any other provision to the contrary in this Trust Agreement:

(i)     NextMedia shall have the right (w) to establish a minimum purchase price for the sale of each Station as set forth on **Annex 3** hereto, which shall be paid by wire transfer of immediately available federal funds at the closing, (x) to require that each third-party buyer assume all of the liabilities relating to the Station Assets associated with the Station(s) it is acquiring which accrue after the consummation of such sale, and (y) to establish a date by which any sale must be consummated; and

(ii)     If, prior to the execution of any Sale Agreement, NextMedia notifies the Trustee that NextMedia may hold the FCC Licenses for any Station consistent with FCC Rules, the Trustee, in its discretion, may execute an assignment application to secure any required FCC approval, cooperate with NextMedia at

6

NextMedia's cost in the diligent prosecution of such application, and after obtaining any required prior FCC approval, shall promptly assign and otherwise convey the Station Assets relating to such Station (including the FCC Licenses) to NextMedia.

(e)     The Trustee shall submit and diligently prosecute appropriate applications to such governmental authorities as any such Sale Agreement requires, including to the FCC requesting approval to assign the FCC Licenses.

(f)     In the event that NextMedia has entered into an agreement to sell the Station Assets to an unaffiliated third party (an "Existing Sale Agreement") but such sale has not been consummated prior to the Closing, NextMedia shall assign its rights under such Existing Sale Agreement to the Trustee at the Closing and the Trustee shall thereafter assume the obligations of NextMedia thereunder.

(g)     The Trustee shall maintain records of all efforts undertaken to sell the Station Assets until it consummates the sale of all of the Station Assets. The Trustee shall provide NextMedia with monthly reports setting forth the Trustee's efforts to sell the Station Assets as contemplated by this Trust Agreement. Such reports shall be designated confidential (except that NextMedia may provide copies of such reports to its lenders (collectively, the "Lenders") under that certain [Credit Agreement] dated as of _____, 2010), shall include the name, address and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, was contacted, or made an inquiry about acquiring any interest in the Station Assets, and shall describe in detail each contact with any such person during that period. If the Trustee is unable to consummate the sale of all of the Stations within six (6) months from the Closing Date, the Trustee shall promptly provide NextMedia and its Lenders with a confidential report setting forth in reasonable detail (i) any supplement to the prior reports concerning the Trustee's efforts to sell the Station Assets; (ii) the reasons, in the Trustee's judgment, why the required sales have not been consummated; and (iii) the Trustee's recommendations for consummating the required sales without further delay.

(h)     At least five (5) business days prior to the execution of a Sale Agreement, the Trustee shall deliver to NextMedia a copy of such agreement, together with all attachments thereto. The Trustee shall notify NextMedia promptly of the parties' execution of the Sale Agreement and shall, within two (2) business days after its execution, provide a copy of the executed Sale Agreement and all related agreements (such as an escrow agreement), along with all schedules, exhibits, and other attachments thereto.

5.     **Management and Other Actions by Trustee.**

(a)     During the Term of this Trust Agreement, the right to manage the business of any Station held in the Mile High Station Trust shall be solely vested in the Trustee, subject to the following conditions:

(i)     The Trustee shall have absolute and complete control over the operations of the Stations pending the sale or other disposition of the Station Assets, and no person other than the Trustee or managers designated by the Trustee shall

7

have any authority with respect to the management of any Station or the Station Assets for so long as this Trust Agreement is in effect. The Trustee shall have no beneficial interest in the Station Assets and the Mile High Trust.

(ii)     The Trustee shall operate the Stations as separate, independent, ongoing, economically viable and active competitors to NextMedia, subject to Section 2(c) hereof, and the Trustee shall ensure that the management of the Stations is kept separate and apart from, and not influenced by, NextMedia. The Trustee shall use commercially reasonable efforts to maintain and increase sales of advertising time and to maintain promotional advertising, sales, marketing and merchandising support of the Stations at levels equal to or greater than those existing during the period prior to Closing.

(iii)     The Trustee shall conduct the operations of the Stations in material compliance with the Communications Act of 1934, as amended (the "Act"), and FCC Rules. Within fifteen (15) days of the end of each calendar month during the Term of this Agreement, the Trustee shall provide to NextMedia or its designee monthly financial reports consisting of unaudited balance sheets of the Stations and related statements of operations and cash flows for the month and the three-month period then ended and any other financial information reasonably requested by NextMedia so that NextMedia can meet its financial reporting requirements.

(iv)     Any employee hired by the Trustee who is not employed at the Stations as of the Closing Date shall not be a shareholder, member, partner, director, officer, or employee of NextMedia or its affiliates, and may not have any business or familial relationship (as defined in the FCC Rules) with NextMedia or with any member, shareholder, partner, director, officer, or employee of NextMedia or its affiliates.

(v)     The Trustee shall cause any employee hired by it (including any person previously employed by NextMedia whom the Trustee elects to retain) to execute and deliver to the Trustee an agreement, in form and substance acceptable to the Trustee, pursuant to which such employee agrees to (x) comply with the FCC Rules and the terms of this Trust Agreement, including without limitation those governing communications regarding Station operations among such employee and NextMedia or its members, shareholders, partners, directors, officers, employees, and affiliates, and (y) to preserve the confidentiality of all information such employee may acquire regarding the management and operation of the Stations during the Term of this Agreement.

(b)     After the Closing, the Trustee will be entitled to hire those individuals employed exclusively by the Stations (the "Station Employees") on the same terms and conditions as such employees were employed by NextMedia; provided, that the Trustee is not required to provide such employees with any medical, pension, insurance or other employee benefit plans, programs or arrangements. To the extent that NextMedia provides the Station Employees with group medical, group insurance and/or pension plan benefits on or after the Closing Date through

8

plans maintained by NextMedia for its employees, the Trustee shall, within such reasonable time as deemed necessary or appropriate by NextMedia, provide to NextMedia or its designee such reports, data or other information as NextMedia or its designee shall require for purposes of administering such plans or satisfying any reporting or other requirements as may be required by law or any governmental agency. In no event shall the Trustee or the Mile High Station Trust be responsible for any liabilities or obligations relating to or arising under any of NextMedia's employee benefit plans, programs or arrangements, whether such liabilities or obligations arise, or relate to a period, prior or subsequent to the Closing Date of this Trust Agreement, except for liabilities or obligations caused by the Trustee's gross negligence, willful misconduct or material beach of this Trust Agreement. All liabilities or obligations that relate to or arise under any of NextMedia's employee benefit plans, programs or arrangements, except for liabilities or obligations caused by the Trustee's gross negligence, willful misconduct or material beach of this Trust Agreement, shall remain the sole and complete responsibility of NextMedia and shall be subject to the indemnification provided herein or in Section 6(d) of this Trust Agreement. The Trustee shall terminate the employment of the Station Employees upon the termination of this Trust Agreement; provided, that NextMedia shall indemnify the Trustee for any and all expenses and other liabilities incurred thereby, including severance payments, COBRA obligations, and accrued vacations (with payments for such indemnification to be made within thirty (30) days of any request therefor).

(c)    The Trustee shall not offer employment to or hire any of the employees of NextMedia whose employment relates in whole or in part to the business and operations of other stations owned and operated by NextMedia or its affiliates in either of the Metros (the "Cluster Employees"). To the extent that any of the Cluster Employees provide services that are reasonably necessary for the conduct of the business and operation of a Station as of the Closing Date (such services, the "Shared Employee Services"), then NextMedia shall make such Shared Employee Services available to the Trustee in conjunction with the Trustee's operation of the Stations during the Term of this Trust Agreement. With respect to those Cluster Employees who perform Shared Employee Services, (i) when performing services for a Station, such employees shall report to and be supervised solely by the Trustee, (ii) when performing services for other radio stations owned by NextMedia, such employees shall report to and be supervised solely by NextMedia, and (iii) such employees shall be given instructions by the parties to conduct themselves accordingly. Nothing herein creates an employment relationship between the Trustee and employees of NextMedia.

(d)    Except as expressly provided in this Trust Agreement, the Trustee shall not, in its capacity as trustee of the Mile High Station Trust, (i) incur any debt or guarantee any obligation in favor of any other person, (ii) engage in any business other than as necessary in the Trustee's reasonable opinion to meet its fiduciary duties with respect to the operation of the Stations, or (iii) enter into any agreement to do any of the acts prohibited by (i) and (ii) above, or enter into any merger, consolidation, or similar transaction or engage in any reclassification or similar transaction.

(e)    The Trustee shall have exclusive control over the operation and management of the Stations, shall conduct the operations of the Stations in the ordinary course of business consistent with past operations of the Stations, and, to the extent possible, shall maintain the status quo of such operations as currently conducted with a view to maximizing the value to be received by NextMedia subject in any event to the Trustee's obligations as a fiduciary of NextMedia and

9

obligations under the Act and FCC Rules. Without limiting the generality of the foregoing, during the Term of this Trust Agreement, except as contemplated by this Trust Agreement, the Trustee shall not:

(i)     fail to use all commercially reasonable efforts to preserve intact the present business organization of the Stations and each Station's relationships with its customers, suppliers and others having business dealings with it;

(ii)     fail to use commercially reasonable efforts to maintain the Station Assets in their current condition, except for ordinary wear and tear;

(iii)     except for amendments of employment agreements in the ordinary course of business consistent with past practices of the Stations, materially amend any material contract or default in any material respect (or take or omit to take any action that, with or without the giving of notice or passage of time, would constitute a material default) under any material contract or, except in the ordinary course of business consistent with past practices of the Stations, enter into any new material contract;

(iv)     sell (whether by merger, consolidation, or the sale of an equity interest or assets), lease, or dispose of the Station Assets except pursuant to a Sale Agreement (including an Existing Sale Agreement) permitted under this Trust Agreement;

(v)     knowingly allow the imposition of any Liens of any kind or nature on the Station Assets;

(vi)     enter into, or enter into negotiations or discussions with any person other than a purchaser under a Sale Agreement or an Existing Sale Agreement with respect to, any local marketing agreement, time brokerage agreement, joint sales agreement, or any other similar agreement;

(vii)     fail to use commercially reasonable efforts to maintain the ability of the Stations to operate at maximum power and full coverage at all times; or

(viii)     agree to or make any commitment, orally or in writing, to do any of the foregoing or to take any actions prohibited by this Trust Agreement.

(f)     The Trustee shall have any and all such further powers and shall take such further actions (including, but not limited to, taking legal action) as may be necessary to fulfill the Trustee's obligations under this Trust Agreement.

10

6.    **Financial Matters.**

(a)    In consideration of its services hereunder, the Trustee shall be entitled to receive the fee set forth in **Annex 4** hereto (the "Trustee Fee") commencing on the Closing Date and ending on the date that the Mile High Station Trust terminates.

(b)    To the extent that the Stations generate cash accumulations in excess of the Stations' actual and projected expenses as determined by the Trustee in its sole discretion ("Excess Cash Flow"), such Excess Cash Flow shall be remitted to NextMedia monthly, subject to the Trustee's reasonable determination.

(c)    To the extent that the Trustee determines in its sole discretion that the operation of the Stations consistent with past practice, or that payment of charges and other expenses under this Trust Agreement requires funds in excess of the actual or expected cash flow of the Stations (as diminished by any prior remittances of Excess Cash Flow pursuant to Section 6(b)), NextMedia shall provide to the Trustee a line of credit in an amount sufficient to cover all such expenses, which line of credit shall be repayable only from Excess Cash Flow. NextMedia shall not communicate directly or indirectly with the Trustee about, or participate with the Trustee in making, any decision to draw on the line of credit or as to when or how the funds will be used. The Trustee may draw on the line of credit by making a written draft for a specific amount of funds or may make a request for checks to cover expenses incurred with respect to the operation of the Stations. NextMedia shall, within ten (10) calendar days of receipt of such draft or request, provide such funds or checks to the Trustee in the amounts requested.

(d)    NextMedia shall reimburse and indemnify the Trustee against all claims, costs of defense of claims (including reasonable attorneys' fees and disbursements and taxes, if any, related to the Mile High Station Trust, the operation of the Stations, or the Station Assets), expenses and liabilities incurred by the Trustee in connection with the performance of its duties and the enforcement of its rights under this Trust Agreement, except those incurred as a result of the Trustee's gross negligence, willful misconduct or material breach of this Trust Agreement. The Trustee shall give prompt written notice to NextMedia of any demand, suit, claim or assertion of liability by third parties or other circumstances that could give rise to an indemnification obligation hereunder against the Trustee, but a failure to give or a delay in giving such notice shall not affect Trustee's right to indemnification and NextMedia's obligation to indemnify as set forth in this Trust Agreement, except to the extent NextMedia's ability to remedy, contest, defend or settle with respect to such claim is thereby prejudiced. NextMedia shall have the right to undertake, by counsel or other representatives of its own choosing, the defense or opposition to any such claim. The Trustee shall not settle or compromise any such claim or consent to entry of any judgment without NextMedia's written consent. Payments to the Trustee pursuant to this Section 6(d) shall be made within 20 days of receipt of an invoice or bill from the Trustee together with appropriate supporting documentation. The obligations of NextMedia to the Trustee under this Section 6(d) shall survive the resignation, dissolution or insolvency of the Trustee, the death or incapacity of its Member and the termination of this Trust Agreement.

(e)    Prior to the Closing Date, NextMedia shall obtain policies of insurance, or procure the amendment of or riders to existing policies of insurance, to provide insurance coverage

11

related to the Station Assets under policies currently held by NextMedia. All such policies shall name the Trustee as an additional insured and shall not be canceled or amended without thirty (30) days prior written notice to the Trustee. The Trustee is hereby authorized to make payment of all premiums, and pay all deductibles and excesses, related to such policies of insurance in the same manner as any other expense in the ordinary course of business of the Stations.

7. **Limitations on NextMedia.** NextMedia shall not take any action to jeopardize the Trustee's sale of the Station Assets and shall use commercially reasonable efforts to assist the Trustee in accomplishing the required sales, including fully cooperating with the Trustee in obtaining all regulatory approvals. The Trustee and NextMedia shall permit prospective purchasers of the Station Assets to have access to personnel of the Stations, to make such inspection of the Stations' physical facilities as may be reasonable, and to inspect any and all financial, operational and other documents and information as may be customary and relevant to the sales of the Station Assets. To facilitate the sales of the Station Assets, the Trustee may request in writing from NextMedia such reasonable and customary representations and warranties, consents, information, covenants and indemnities (which may be directly provided by NextMedia to a buyer, as negotiated and determined by the Trustee) regarding such sales, and such requests shall not be unreasonably delayed or denied.

8. **Trustee Responsibilities.**

**(a)** The Trustee shall devote such time to the operation of the Stations and the Mile High Station Trust as is necessary, appropriate, or advisable in the fulfillment of its obligations and the exercise of its fiduciary duties hereunder.

**(b)** The Trustee is expressly authorized to incur and pay from the Station Assets held in trust all reasonable expenses, disbursements, and advances incurred or made by the Trustee in the performance of its duties hereunder (including reasonable fees, expenses and disbursements of its counsel), which the Trustee in good faith deems necessary, proper, or advisable in the performance of its duties under this Trust Agreement.

**(c)** The Trustee shall be entitled to rely in good faith upon any order, judgment, certification, demand, notice, instrument or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any fact stated therein or the propriety or validity or the service thereof. The Trustee may act in reliance upon any instrument or signature believed by it or its Member in good faith to be genuine and may assume that any person purporting to give receipt or advice or make any statement or execute any document in connection with the provisions hereof has been duly authorized to do so. The Trustee may act pursuant to the advice of counsel with respect to any matter relating to this Trust Agreement and shall not be liable for any action taken or omitted in good faith in accordance with such advice. The Trustee's counsel and advisors shall be independent of, and have no relationship with, NextMedia.

**(d)** Neither the Trustee nor its Member(s) nor any successor trustee designated pursuant to Section 9 hereof shall be a cognizable stockholder, member, partner, officer, employee, or director, of NextMedia or their respective affiliates, and may not have any business or familial relationship (as defined in the FCC Rules) with any officer, employee, director, member,

12

cognizable stockholder, partner or affiliate of NextMedia. Neither the Trustee nor its Member(s) shall serve as an officer, employee, or director of NextMedia, their affiliates, or their successor companies.

## 9. Replacement of Trustee.

(a)     The rights and duties of the Trustee hereunder shall terminate upon the Trustee's dissolution or insolvency or upon the death or incapacity of its Member(s), and no interest in a Sale Agreement or the Station Assets directly or indirectly held by the Trustee nor any of the rights and duties of a dissolved or insolvent Trustee or its deceased or incapacitated Member(s) may be transferred by will, devise, succession or in any manner except as provided in this Trust Agreement. Notwithstanding the foregoing, the heirs, administrators, executors or other representatives of an incapacitated or deceased Member of the Trustee shall have the obligation to assign the Trustee's rights and obligations under a Sale Agreement or any Existing Sale Agreement to one or more successor trustees designated by NextMedia pursuant to this Section 9.

(b)     The Trustee may resign by giving not less than 60 days prior written notice of resignation to NextMedia; provided, that no such resignation shall become effective unless and until a successor trustee has been appointed, such appointment has received all necessary approval from the FCC, and any order granting such approval has become final (meaning an order that is no longer subject to reconsideration or review by the FCC or a court of competent jurisdiction because all time periods under applicable law and FCC Rules providing for the same have expired without any such request for reconsideration or review having been requested or initiated). NextMedia shall cooperate fully in the prompt appointment of a successor trustee and shall not unreasonably interfere with or delay the effectiveness of such resignation.

(c)     In the event of the Trustee's resignation, the dissolution or insolvency of the Trustee, or the death or incapacity of the Member(s) of the Trustee, the Trustee shall be succeeded, subject to such prior approval of the FCC as may be required, by a successor trustee chosen by NextMedia. Any successor trustee shall succeed to all of the rights and obligations of the Trustee replaced hereunder and shall be deemed the Trustee for purposes of this Trust Agreement upon execution by such successor Trustee of a counterpart of this Trust Agreement (with such modifications as are necessary to effect such succession).

## 10. Termination and Distribution of Proceeds from Sale of Station Assets.

(a)     This Trust Agreement and the Mile High Station Trust created hereby shall terminate automatically, and be of no further force and effect on the first date upon which all of the following shall have occurred: (i) consummation of the sale of all of the Station Assets to a third party (or parties) and/or reconveyance of the Station Assets to NextMedia, and (ii) NextMedia's payment to the Trustee of all expenses and other liabilities incurred by Trustee during the performance of its obligations under this Trust Agreement; in each case as contemplated by this Trust Agreement.

(b)     Upon consummation of a sale of the Station Assets, the Trustee shall (i) use the proceeds thereof to pay all remaining and unpaid expenses or liabilities incurred pursuant to

DSMDB-2772391v05

this Trust Agreement (and, as the case may be, set aside such portion of the proceeds as may be necessary to pay expenses and liabilities which have not yet been billed), and (ii) promptly distribute the remainder of such proceeds to NextMedia or its designee (including an assignment of any uncollected accounts receivable).

**11. Communications.**

      **(a)** Except as otherwise provided in this Trust Agreement, during the Term of this Trust Agreement, neither NextMedia nor any of its officers, directors, employees, stockholders, members, partners or affiliates shall communicate with the Trustee regarding the operation or management of the Stations.

      **(b)** NextMedia and the Trustee may communicate with each other only with respect to (i) the mechanics and procedures of implementing any sale of Station Assets (but not concerning the management and operation of the Stations) and (ii) providing reports to NextMedia concerning the implementation of the Mile High Station Trust.

      **(c)** Any communications between NextMedia and the Trustee permitted by this section shall be evidenced in writing and shall be retained by both parties for inspection upon request by the FCC.

      **(d)** All notices and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given (i) if transmitted by facsimile (with written confirmation of receipt), (ii) if personally delivered, upon delivery or refusal of delivery, or (iii) if sent by overnight courier, upon delivery or refusal of delivery. All notices, or other communications required or permitted hereunder shall be addressed to the respective party to whom such notice, consent, waiver, or other communication relates at the following addresses, and facsimile numbers:

| | |
|---|---|
| If to NextMedia: | NextMedia Group, Inc.<br>6312 S. Fiddlers Green Cir. #205E<br>Greenwood Village, CO 80111<br>Attn: Mr. Steven Dinetz<br>Fax: (303) 694-4940 |
| with a copy (which shall<br>not constitute notice) to: | Leibowitz & Associates<br>4400 Biscayne Blvd., Suite 880<br>Miami, FL 33137<br>Attn: Matthew L. Leibowitz<br>Phone: (305) 530-1322<br>Fax: (305) 530-9417 |

14

If to the Trustee:                             The Mile High Station Trust, LLC, as Trustee
c/o Media Venture Partners, LLC
244 Jackson Street
Fourth Floor
San Francisco, CA 94111
Attn:  Mr. Elliot B. Evers
Phone: 415-391-4877
Fax: 415-391-4912

with a copy (which shall
not constitute notice) to:               Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC  20006
Attn:  Andrew S. Kersting
Phone:  (202) 420-3631
Fax:  (202) 420-2201

Any party by written notice to the other parties pursuant to this section may change the address or the persons to whom notices or copies thereof shall be directed.

### 12.     Miscellaneous.

(a)     This Trust Agreement (which term shall be deemed to include the annexes, exhibits, and schedules hereto and the other certificates, documents, and instruments delivered hereunder), constitutes the entire agreement among the parties hereto and supersedes all prior and contemporaneous agreements, or understandings with respect to the subject matter hereof.  This Trust Agreement may not be amended except by an instrument in writing executed by each of the parties hereto.

(b)     This Trust Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective permitted successors and permitted assigns, and nothing in this Trust Agreement, express or implied, is intended to confer upon any other person any rights or remedies of any nature whatsoever under or by reason of this Trust Agreement.  Except as otherwise expressly permitted herein, no party may assign its rights or obligations hereunder without the prior written consent of the other parties.

(c)     If any term or other provision of this Trust Agreement is held to be invalid, illegal, or unenforceable by any court or governmental authority of competent jurisdiction, all other provisions of this Trust Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated herein are not affected in any manner materially adverse to any party.  Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the parties shall negotiate in good faith to modify this Trust Agreement to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated herein are consummated as originally contemplated to the fullest extent possible.

DSMDB-2772391v05

**(d)** The headings of the sections of this Trust Agreement are solely for convenience of reference and shall not affect the construction or interpretation of this Trust Agreement. Unless otherwise stated, references in this Trust Agreement to sections, subsections, annexes, exhibits, schedules, and other subdivisions refer to the corresponding sections, subsections, annexes, exhibits, schedules, and other subdivisions of this Trust Agreement. The words "this Trust Agreement," "herein," "hereby," "hereunder," "hereof," and words of similar import, refer to this Trust Agreement as a whole and not to any particular subdivision unless expressly so limited. The word "or" is not exclusive, and the word "including" (in its various forms) means "including without limitation." Pronouns in the masculine, feminine, or neuter genders shall be construed to state and include any other gender.

**(e)** This Trust Agreement, the rights and obligations of the parties hereto, and any claims and disputes relating thereto, shall be governed by and construed in accordance with the laws of the State of Colorado (not including the choice of law rules thereof) and to the extent applicable, Title 11 of the United States Code. The exclusive forum for the resolution of any disputes arising hereunder shall be the federal or state courts located in Denver, Colorado, and each party irrevocably waives the reference of an inconvenient forum to the maintenance of any such action or proceeding. THE TRUSTEE AND NEXTMEDIA HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING IN ANY WAY TO THIS TRUST AGREEMENT, INCLUDING ANY COUNTERCLAIM MADE IN SUCH ACTION OR PROCEEDING, AND AGREE THAT ANY SUCH ACTION OR PROCEEDING SHALL BE DECIDED SOLELY BY A JUDGE.

**(f)** This Trust Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute a single instrument, and shall become effective when one or more counterparts have been signed and delivered by each of the parties hereto, it being understood that all parties need not sign the same counterpart. Facsimile and other electronically-delivered signatures are sufficient to make this Trust Agreement effective.

**(g)** NextMedia hereby represents and warrants to the Trustee that the Station Assets are being conveyed to the Trustee free and clear of all Liens of any kind whatsoever, including without limitation, any Liens held by NextMedia's Lenders.

**13.** **Tax Matters.** It is the intention of the parties hereto that the Trust shall be disregarded as an entity separate from Operating for federal, state and local income tax purposes, and that all of its assets shall be treated for tax purposes as directly owned by Operating and any successor thereto by merger or otherwise. The parties hereto agree that all relevant federal, state and local income tax reporting shall be consistent with the foregoing. The Trustee shall not make an election pursuant to Treasury Regulations Section 301.7701-3(c) to classify the Mile High Station Trust as an "association," as defined in Treasury Regulations Section 301.7701-3(a), for federal income tax purposes, or any similar election for state or local tax purposes.

*[remainder of page intentionally left blank; signature page follows]*

16

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement, on the date first written above.

**THE MILE HIGH STATION TRUST, LLC, AS TRUSTEE**

By: _____
       Elliot B. Evers
       Chief Executive Officer

**NEXTMEDIA OPERATING, INC**

By: _____
       Name
       Title

**NM LICENSING, LLC**

By: _____
       Name
       Title

# ANNEX 1

## Schedule of Station Assets

(Attached)

<u>**Schedule 2(a)(i) – FCC Licenses**</u>

# Schedule 2(a)(ii) – Personal Property

## Schedule 2(a)(iii) – Real Property

<u>**Schedule 2(a)(vii) – Computer Software**</u>

**<u>Schedule 2(a)(viii) — Assumed Contracts</u>**

## Schedule 2(a)(ix) – Other Governmental Authorizations

# Schedule 2(a)(x) – Intellectual Property

**ANNEX 2**

(a)     Pursuant to Section 4(b) of the Trust Agreement, the Trustee may execute an agreement to retain Media Venture Partners, LLC ("Broker") to act as a broker for the sale of the Station Assets, and if Broker in fact brokers the sale of WZSR or WWYW, then the Trustee shall pay Broker a brokerage fee of five percent (5%) of the first One Million Dollars ($1,000,000) and one percent (1%) of the remaining balance of the Sale Price for any such Station; provided, that Broker shall be entitled to a minimum fee of One Hundred Thousand Dollars ($100,000) per transaction. The parties acknowledge that there is a prior understanding between NextMedia and Broker that the brokerage fee on the sale of WSSM will not be subject to the $100,000 minimum specified above, but shall be Twenty Thousand Dollars ($20,000). Any brokerage fee shall be (i) payable only if the sale is consummated and (ii) paid in cash or other immediately available funds simultaneously with the consummation of the sale of the Station to which such brokerage fee applies. The term "Sale Price" means any and all consideration paid or payable to the Trustee or NextMedia for the sale of the Station Assets relating to such Station, including, but not limited to, cash, securities, promissory notes, property, "earn outs," covenants not to compete, and consulting agreements. If the sale is structured as a series of related transactions, then the total dollar value of all such transactions shall be added together for purposes of determining the Sale Price. If a single third-party buyer purchases more than one Station, the Sale Price for each of the Stations will be aggregated and the fee due to Broker will be calculated as if the Sale Price of all of the Stations purchased by the third-party buyer were the Sale Price of a single Station and the sale of those Stations qualifies as a single transaction.

(b)     For the avoidance of doubt, the Trustee is not authorized to retain Broker, nor shall Broker be entitled to any fee, in connection with the reconveyance of any Station Assets to NextMedia or any of its affiliates pursuant to this Trust Agreement, nor for any sale of a Station pursuant to an Existing Sale Agreement.  It is understood and agreed that the letter of intent dated February 26, 2010, between NextMedia and Educational Media Foundation providing for the sale of WSSM is not an Existing Sale Agreement.

DSMDB-2772391v05

# ANNEX 3

The minimum purchase price for the sale of each Station shall be as set forth below:

| Call Sign | Minimum Purchase Price |
|-----------|------------------------|
| WZSR(FM)  | $_____            |
| WWYW(FM)  | $_____            |
| WSSM(FM)  | $_____            |

## ANNEX 4

The Trustee Fee shall be an amount payable monthly equal to the product of (i) $3,000 *times* (ii) the number of Metros in which the Stations then held in the Mile High Station Trust are located. NextMedia shall pay the Trustee Fee on a calendar month basis, prorated for any partial months and shall take into account the sale or other disposition of a Station pursuant to this Trust Agreement during any calendar month. Payment will be due by the 20th day of each month for the immediately preceding month. In the event the 20th day of the month falls on a Saturday, Sunday or legal holiday, payment shall be made on the immediately following business day.