IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NEXTMEDIA GROUP, INC., *et al.*, | § | Case No. 09-14463 (PJW) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | **Hearing Date: April 22, 2010 at 11:00 a.m. (EDT)** |
| | § | **Objection Deadline: April 15, 2010 at 4:00 p.m. (EDT)** |

**DEBTORS' MOTION TO (I) APPROVE CERTAIN IMMATERIAL MODIFICATIONS TO MODIFIED AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION AND (II) MODIFY CONFIRMATION ORDER TO CONFIRM PLAN AS MODIFIED**

NextMedia Group, Inc. and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "Debtors" or the "Company"),[1] in support of their Motion (the "Motion") to (i) Approve Certain Immaterial Modifications to the Modified Amended Joint Chapter 11 Plan of Reorganization and (ii) Modify Confirmation Order to Confirm Plan as Modified, respectfully represent:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## INTRODUCTION

3. On December 21, 2009 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of their taxpayer identification numbers, are: NextMedia Group, Inc. ("NM Group") (0791), NextMedia Investors LLC ("NM Investors") (9403), NextMedia Operating, Inc. ("NM OpCo") (5397), NM Licensing LLC (5396), NextMedia Outdoor, Inc. (5398), NM Texas, Inc. ("NM Texas") (4229), NextMedia Northern Colorado, Inc. (8422), NextMedia Franchising, Inc. ("NM Franchising") (9913) and NextMedia Outdoor, LLC ("Outdoor LLC") (9700). The Debtors' corporate headquarters are located at 6312 S. Fiddler's Green Circle, #205E, Greenwood Village, Colorado 80111.

4. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their properties as debtors in possession. The Debtors' cases are being jointly administered.

5. No official committee, trustee or examiner has been appointed.

6. On March 22, 2010, the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Modified Amended Joint Chapter 11 Plan of Reorganization* (the "Confirmation Order") (Docket No. 299). Attached as Exhibit "A" to the Confirmation Order is the confirmed version of the Debtors' Modified Amended Joint Chapter 11 Plan of Reorganization (the "Plan").

7. As stated on the record at the confirmation hearing on March 22, 2010, the Debtors have been informed that the FCC staff will not grant the Debtors' request for a waiver with respect to the Debtors' Grandfathered Stations.[2] As a result, the Debtors will establish a trust, in compliance with applicable FCC rules and regulations (the "FCC Trust"), for the divestiture of certain of such Grandfathered Stations. Certain non-material modifications must therefore be made to the Plan in order to reflect the establishment of the FCC Trust and the transfer to the FCC Trust of certain of the Debtors' Grandfathered Stations and related assets. The proposed modifications (and the incorporation of the FCC Trust structure generally) will not have any economic impact on the Debtors and will not affect the treatment of, or distributions to, the Debtors' stakeholders under the Plan.

8. The Debtors therefore request, pursuant to section 1127(b) of the Bankruptcy Code, that the Court approve the immaterial modifications to the Plan reflected in Exhibit "B"

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Modified Plan.

attached hereto and deem the Confirmation Order to confirm the Plan as modified (the "Modified Plan").[3]

**RELIEF REQUESTED**

9. By this Motion, the Debtors respectfully request entry of an order approving the proposed non-material modifications to the Plan attached as Exhibit "B" and deeming the Confirmation Order to confirm the Modified Plan, pursuant to section 1127(b) of the Bankruptcy Code.

**APPLICABLE AUTHORITY**

10. Section 1127(b) of the Bankruptcy Code allows a plan proponent to modify a chapter 11 plan "at any time after confirmation of such plan and before substantial consummation of such plan," as long as the plan as modified satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the modification is warranted under the circumstances. 11 U.S.C. § 1127(b). "Substantial consummation" is defined in section 1101(2) of the Bankruptcy Code to mean:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2); *see also Antiquities of Nev., Inc. v. Bala Cynwyd Corp. (In re Antiquities of Nev., Inc.)*, 173 B.R. 926, 929 (B.A.P. 9th Cir. 1994); *Jorgensen v. Federal Land Bank of Spokane (In re Jorgensen)*, 66 B.R. 104, 107 (B.A.P. 9th Cir. 1986); *In re Stevenson*, 148 B.R. 592, 596 (D. Idaho 1992); *In re H&L Developers, Inc.*, 178 B.R. 77, 80 (Bankr. E.D. Pa 1994);

---

[3] Attached hereto as Exhibit "D" is a blackline document comparing the Plan to the Modified Plan.

*In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 303 (Bankr. W.D. Pa. 1989). Courts have found that if unforeseen circumstances render a confirmed plan unworkable, modification may be granted. *Resolution Trust Corp. v. Best. Prods. Co. (In re Best Prods. Co.)*, 177 B.R. 791, 802 (S.D.N.Y. 1995); *see also In re Dam Road Mini Storage*, 156 B.R. 270, 271 (Bankr. S.D. Cal. 1993); *In re Modern Steel Treating Co.*, 130 B.R. 60, 65 (Bankr. N.D. Ill. 1991).

11. In addition, the proposed modification must comply with the disclosure requirements set forth in section 1125 of the Bankruptcy Code. 11 U.S.C. § 1127(c). As courts have noted, however, such disclosure requirements do not mandate resolicitation of the plan where the proposed modifications are not material. *See Cellular Information Systems*, 171 B.R. at 929 n.6 ("I find that such changes are nonmaterial modifications which do not require resolicitation of the respective impaired classes of creditors and equity security holders"); *see also In re G-I Holdings, Inc.*, 420 B.R. 216, 255 (D.N.J. 2009) (citing *New Power Co.*, 438 F.3d at 1118). Indeed, further disclosure is only necessary when the proposed modification materially and adversely impacts a claimant's treatment. *See In re Best Prods.*, 177 B.R. at 802 (noting that the key inquiry was whether the modification materially altered the plan so that a claimant's treatment was adversely affected).

12. A proposed plan modification will be considered material "if it so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." *Id.* at 824.

13. The Modified Plan provides for the establishment of an FCC divestiture trust, into which certain of the Debtors' Grandfathered Stations will be transferred on the Effective Date. Under section 202(b) of the Telecommunications Act of 1996, Pub. L. 104-104, 110 Stat. 110, which directed the FCC to "revise section 73.3555(a) of its regulations (47 C.F.R. 73.3555)," the

RLF1 3556900v.1

number of radio stations that may be owned and operated by the same ultimate entity in each local radio market in the country is limited (the "Local Radio Ownership Rule"). Effective in 2004, the FCC changed the methodology it used to define local radio markets, thus causing the number of radio stations owned and operated by the Debtors in the Chicago, IL and Greenville-New Bern -Jacksonville, NC markets (the "Markets") to exceed the limits imposed by the Local Radio Ownership Rule. However, the FCC "grandfathered" the Debtors' radio ownership in the Markets, thereby allowing the Debtors to maintain all of their stations.

14. Due to the change of control occurring under the Plan, however, the Reorganized Debtors must either (i) obtain a waiver of the Local Radio Ownership Rule (permitting the Reorganized Debtors retain their grandfathered local radio combinations) or, absent a waiver (ii) divest certain of their stations in the Markets to come into compliance with the limits imposed by the Local Radio Ownership Rule.

15. In light of the FCC's refusal to grant a waiver, the Debtors must divest themselves of a total of three (3) stations in the Markets to come into compliance with the Local Radio Ownership Rule. Given the choices and mechanisms available to the Debtors under the FCC's policies and rules, the Debtors have chosen to establish a divestiture trust into which three (3) of the Grandfathered Stations will be transferred, as the Debtors believe that is the best way to maximize the value of the enterprise.

16. On and prior to the Petition Date, the principal constituents in these cases — the First Lien Lenders, the Second Lien Lenders, and the Second Lien Lead Investors — were fully aware that the FCC could deny the requested grandfather waiver, and that the Debtors might be required to divest certain Grandfathered Stations. This understanding was manifested by, among other things, the timeline set forth in the Restructuring Agreement for the various stages of FCC

approval of the transactions contemplated by the Plan, which excluded from the definition of "Initial Approval" an order concerning the Grandfathered Stations (thus acknowledging that the FCC could deny the waiver request and require that separate action be taken with respect to such stations), and the carve-out of the required disposal of the Grandfathered Stations from the definition of "material adverse effect" in the New Term Loan term sheet.

17. Now, with the FCC's refusal to grant the requested waiver for the Grandfathered Stations, the contingency that the parties have acknowledged has come to pass. Under the Modified Plan, three (3) of the Debtors' Grandfathered Stations will be transferred to the FCC Trust, which shall be created on or after the Effective Date. The FCC Trustee will take office on or after the Effective Date and shall, in accordance with the terms of the FCC Trust Agreement, operate the Grandfathered Stations and attempt to sell the same for the benefit of NextMedia Operating, Inc. and NextMedia Licensing, LLC, the grantors of the FCC Trust and the beneficiaries thereof. The modifications to the Plan (as reflected in the Modified Plan) are warranted by – and indeed required – due to a change in circumstances; the refusal to grant the waiver request and the resulting need to implement the trust structure. *See In re Best Prods.*, 177 B.R. at 802. Moreover, because the Reorganized Debtors will not, absent an FCC waiver for the Grandfathered Stations, be able to own the Grandfathered Stations upon emergence from chapter 11, the Plan cannot as a practical matter become effective without the modifications proposed hereby.

18. The form of FCC Trust Agreement has been filed simultaneously herewith as a supplement to the Plan Supplement (Docket No. 320), and is also attached hereto as Exhibit "C" for the Court's convenience. The Debtors request that Court — subject to applicable FCC approval — approve the form of FCC Trust Agreement, the formation of the FCC Trust and

6

RLF1 3556900v.2

consummation of the FCC Trust transactions as set forth in the FCC Trust Agreement and in the Modified Plan. On April 1, 2010, the Debtors filed the appropriate application with the FCC seeking FCC approval of the FCC Trust Agreement and the transactions contemplated thereby, subject to this Court's approval of same as it relates to Plan confirmation.

19. The Modified Plan contains the following modifications:[4]

- New definition of "Grandfathered Stations" and conforming changes to the definition of "FCC Approval";
- New definition for "FCC Trust," "FCC Trust Agreement" and "FCC Trustee";
- New definition of "Treasury Regulations";
- New section 6.10, providing for the creation and implementation of the FCC Trust; and
- New section 9.1(c), providing that the Debtors' executory contracts and unexpired leases used exclusivity in the operation of the Grandfathered Stations shall be assigned to the FCC Trust on the Effective Date.

20. The above modifications are not material, do not adversely affect creditors and interest holders, and will not in any way impact creditor or shareholder recoveries. *See In re American Solar Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988) (finding that a plan modification was not material where it resulted in dilution of less than one percent of equity holders' recoveries); *see also In re Best Prods.*, 177 B.R. at 802 (finding that a plan modification was not material where it did not adversely affect a claimant's treatment). Indeed, no creditor recoveries will be impacted in any way, and for all tax and enterprise value purposes, the Grandfathered Stations placed into the FCC Trust will be deemed the Debtors' assets. As such, the proposed modifications do not materially or adversely affect any holder of a Claim or Equity Interest in any way and there is no need for resolicitation. *See In re American Solar*, 90 B.R. at

---

[4] The summary of the modifications discussed herein is qualified in its entirety by reference to the actual modifications contained in the Modified Plan.

824 (modification that is not material is, "by definition, one which will not affect an investor's voting decision," and thus, "additional disclosure would serve no purpose").

21.     In addition, "substantial consummation" of the Plan has not occurred as (i) no distributions have occurred and (ii) no transfers of property proposed by the Plan have occurred, and thus pre-consummation modification of the Plan is appropriate under section 1127(b). *See In re Antiquities Nev.*, 173 B.R. at 929.

## NOTICE

22.     Notice of this Motion has been provided to the office of the United States Trustee for the District of Delaware, the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, counsel to the First Lien Agent and the Second Lien Agent, counsel to the Second Lien Lead Investors, the counter-parties to executory contracts and unexpired leases to be assigned to the FCC Trust, and those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no other or further notice need be provided.

*[Remainder of Page Left Intentionally Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit "A", (i) granting the relief requested herein and (ii) granting such other and further relief as may be just and proper.

Respectfully submitted this 5th day of April, 2010.

> RICHARDS, LAYTON & FINGER, P.A.
>
> By: /s/ *signature*
> Paul N. Heath (Bar No. 3704)
> Michael J. Merchant (Bar No. 3854)
> Chun I. Jang (Bar No. 4790)
> Robert C. Maddox (Bar No. 5356)
>
> One Rodney Square
> 920 N. King Street
> Wilmington, DE 19801
> Telephone: (302) 651-7700
> Facsimile: (302) 651-7701
> heath@rlf.com
> merchant@rlf.com
> jang@rlf.com
> maddox@rlf.com
>
> --and--
>
> ANDREWS KURTH LLP
> Jason S. Brookner (admitted *pro hac vice*)
> Texas State Bar No. 24033684
> Monica S. Blacker (admitted *pro hac vice*)
> Texas State Bar No. 00796534
>
> 1717 Main Street, Suite 3700
> Dallas, Texas 75201
> Telephone: (214) 659-4400
> Facsimile: (214) 659-4401
>
> **ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**